IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
ARKANSAS

CENTRAL DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 7 2022

F   TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

| | |
|---|---|
| **JACKIE WILLIAMS SIMPSON, REPRESENTATIVE DENISE ENNETT, WANDA KING, CHARLES E. BOLDEN, SENATOR LINDA CHESTERFIELD, and DR. ANIKA WHITFIELD**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ASA HUTCHINSON, in his official capacity as Governor of the State of Arkansas; and JOHN THURSTON, in his official capacity as the Arkansas Secretary of State, and the STATE OF ARKANSAS,**<br><br>**Defendants.** | **CIVIL ACTION**<br><br>Case No: 4:22cv213-JM<br><br><br>**REQUEST FOR THREE-JUDGE PANEL (28 U.S.C. §2284)**<br><br><br><br><br><br>This case assigned to District Judge _Moody_<br>and to Magistrate Judge _Kearney_ |

## COMPLAINT

### *Introduction*

1. Plaintiffs bring this action to challenge the Arkansas Congressional

Redistricting Plan as embodied in Acts 1114 and 1116 of the 93rd General

Assembly of Arkansas on the ground that they violate Article I of the United States

Constitution; the First Amendment, the Equal Protection provision of the

Fourteenth Amendment, and the Fifteenth Amendment to the U.S. Constitution;

Section 2 of the voting Rights Act of 1965, 52 U.S.C. § 10301; and Article 2,

Section 3 of the Constitution of the State of Arkansas.

## Parties

### The Plaintiffs:

2.  The United States Supreme Court has stated that the achievement of the

Act's laudable goal could be severely hampered if each citizen were required to

depend solely on litigation instituted at the discretion of the Attorney General.

*Allen v. State Bd. of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

Thus, this action is brought by the Plaintiffs named below who reside in the

election districts that are the subject of the racial-gerrymander claims alleged

herein, and have standing to challenge legislation which created that district.

*Shaw v. Hunt*, 116 S.Ct. 1894, 517 U.S. 899, 135 L.Ed.2d 207 (1996).

3.  The Plaintiff, **Jackie Williams Simpson**, is a Black citizen of the United

States of America, and of the State of Arkansas. Plaintiff Simpson resides and is

registered to vote in Pulaski County, Arkansas, in an area that has been and

continues to be located in the Second Congressional District of Arkansas.

However, as a result of the State's 2021 Congressional Redistricting of the Second

District, she has been separated from thousands of her friends, churchgoers and

others with congenial political and social views, which diminishes or nullifies her

2

own views and vote insofar as affecting the results of elections in the Second Congressional District.

4. The Plaintiff, **Denise Ennett,** is a Black citizen of the United States, of the City of Little Rock, and the State of Arkansas. She lives and votes in what was and continues to be the Second Congressional District of Arkansas, and is currently a duly-elected and serving State Representative elected in an area originally located in the Second Congressional District that now is split between the Second and Fourth congressional districts. However, as a result of the State's 2021 Congressional Redistricting of the Second District, she has been separated from thousands of her friends, churchgoers and others with congenial political and social views, which diminishes or nullifies her own views and vote insofar as affecting the results of elections in the Second Congressional District.

5. The Plaintiff, **Wanda King,** is a Black citizen of the United States, the State of Arkansas and Pulaski County, who lives and votes in Scott in Pulaski County on the north side of the Arkansas River. She was formerly a resident of and voter in the Second Congressional District but now lives and votes in the First Congressional District, separated from her friends and colleagues in Pulaski County and the Second Congressional District that represents her larger community in Congress, and will now be detached from the rest of her larger community and whose voice and influence on the congressional representative for

3

her city, county and schools will be terminated.

6.  The Plaintiff, **Linda Chesterfield**, is a Black citizen of the United States, the State of Arkansas and Pulaski County, who lives south of Little Rock in what was formerly the Second Congressional District but is now the Fourth Congressional District. She is a duly elected and serving State Senator, whose senatorial district now lies in the First, Second, and Fourth Congressional Districts. Parts of her original senatorial district are now detached from the rest of her larger community and whose voice and influence on the congressional representative for her city, county and schools will be terminated.

7.  The Plaintiff, **Dr. Anika Whitfield,** is a Black citizen of the United States, the State of Arkansas and Pulaski County, who lives in the City of Little Rock in the Second Congressional District of Arkansas. She is a podiatrist, an ordained Baptist minister, and co-chair of Grassroots Arkansas, the Arkansas Poor People's Campaign and other organizations whose members and interests are now spread among three congressional districts. As a result, the strength of Dr. Whitfield and her organizations' influence on federal policies has been purposefully muted by the removal of a large segment of the community to districts and populations that are different geographically and socially.

8.  The Plaintiff, **Charles E. Bolden** is a Black citizen of the United States, the State of Arkansas and Pulaski County, who lives in the City of

4

Jacksonville in the Second Congressional District of Arkansas.   He is active in politics, public service, and in community organizations and activities. He and the organizations with which he is affiliated find, as a result of the 2021 Congressional Reorganization, that their members and interests are now spread among three congressional districts, and that the strength of his and his organizations' influence on federal policies has been purposefully muted by the removal of a large segment of the formerly cohesive community to districts and populations far removed geographically and socially.

## The Defendants

9.      Defendant **Asa Hutchinson** is the duly elected and serving Governor of the State of Arkansas, and is named herein in his official capacity. Governor Hutchinson is Arkansas's chief executive official and is responsible for administering and enforcing the state's laws and Constitution, including those related to elections, and including the rights of citizens of the State to vote and to equal protection of the laws.

10.      Defendant **John Thurston** is the Arkansas Secretary of State and is named in his official capacity. Secretary Thurston is Arkansas's chief election official and is responsible for administering and overseeing the state's elections and implementing election laws and regulations, including Arkansas's

congressional plan.

11.     The **State of Arkansas** is a governmental entity, and one of the fifty (50) states of the United States of America. As such, it is subject to the Constitution and laws of the United States, including the 13th, 14th and 15th Amendments to the Constitution of the United States, and the Federal Voting Rights Act. The General Assembly of the State, which is the legislative branch of the government of the State of Arkansas, has the responsibility within the State to apportion the State's allotted number of members of the U.S. House of Representatives throughout the State, and, in performing that act, adopted Act 1114 and Act 1116 of 2021.

## Jurisdiction and Venue

12.     28 U.S.C. § 1343 provides:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
> * * *
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

This Court has jurisdiction over this action pursuant to 42 U.S.C. §§1983 and 1988, and 28 U.S.C. §§1331, 1343(a)(3) and (4), and 1357.

13.     This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

6

14.    Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims described herein occurred in this District.

15.    Pursuant to 28 U.S.C. §2284, a district court of three judges shall be convened when an action is filed challenging the constitutionality of the apportionment of congressional districts. Plaintiffs request such a three-judge panel.

## FACTUAL BACKGROUND

16.    Ark. Code Ann. § 7-2-101 establishes that Arkansas is divided into four (4) congressional districts and the responsibility for the delineation of congressional districts of substantially equal population is given to the Arkansas General Assembly. United States Census data is utilized to determine the population of Arkansas and its distribution across the state.

17.    The Arkansas General Assembly, which had recessed at the conclusion of other business in its Regular Session in the spring of 2021, reconvened on September 29, 2021, to take up congressional redistricting, as required by law after each decennial census.

18.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution has been interpreted by the United States Supreme Court to require the States to draw legislative districts so that each district is the

7

same size in population as the others, as nearly as is practicable.

19.     Judicial examinations of Congressional redistricting under Article 1, Section 2 of the US Constitution question whether a reapportionment follows the "One person-One vote rule" established in *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481(1964) which provided:

> We hold that, construed in its historical context, the command of Art I, § 2 that Representatives be chosen "by the People of the several States" means that, *as nearly as is practicable*, one man's vote in a congressional election is to be worth as much as another's. *Wesberry v. Sanders*, 376 U.S. 1, at 7-8 (1964). ... While it may not be possible to draw congressional districts with mathematical precision, that is no excuse for ignoring our Constitution's plain objective of making equal representation for equal numbers of people the fundamental goal for the House of Representatives. That is the high standard of justice and common sense which the Founders set for us.

20.     In determining and evaluating apportionment of the voters of the state, the State must show that any population deviation is justified by some compelling governmental rationale. The courts have consistently noted that the goal is for a district to be as equal in population to all other districts as practicable.  However, in doing so, the States cannot prejudice the constitutional rights of minority groups.

**Traditional Redistricting Principles**

21.     In determining a reapportionment plan, state legislatures have evolved generally accepted principles that have been approved by judicial opinions. Those principles are:

8

(a) *Compactness*: Having the minimum distance between all the parts of a constituency (a circle, square or a hexagon is the most compact district).

(b) *Contiguity*: All parts of a district being connected at some point with the rest of the district.

(c) *Preservation of counties and other political subdivisions*: This refers to not crossing county, city, or town, boundaries when drawing districts.

(d) *Preservation of communities of interest*: Geographical areas, such as neighborhoods of a city or regions of a state, where the residents have common political interests that do not necessarily coincide with the boundaries of a political subdivision, such as a city or county.

(e) Avoiding pairing incumbents: This refers to avoiding districts that would create contests between incumbents.

(f) Compliance with the Equal Protection Clause of the Fourteenth Amendment means that mapmakers cannot draw districts based solely or primarily on race. The U.S. Supreme Court has held that districts should not be defined exclusively by race, although it is permissible to take race into account while drawing district boundaries. There are

9

exceptions for drawing or adjusting a district based on racial

considerations in order to avoid a violation of the Voting Rights Act.

Lawmakers/Mapmakers cannot discriminate against minorities by

diluting their voting power among multiple congressional districts.

(g) Compliance with the Voting Rights Act of 1965 (VRA): In addition to

equal population as the primary goal and the Fourth Amendment's

prohibition against intentional discrimination, *the VRA prohibits any*

*practice or procedure that has a discriminatory effect on racial or*

*language minorities.* (Plaintiffs' emphasis)

### The Arkansas 2021 Redistricting Plan

22.    The 2020 Census showed that the total population of Arkansas was

3,011,524, and, divided among four (4) congressional districts, the ideal population

of each district would be 752,881. The Arkansas General Assembly determined

that Congressional Districts Two and Three had increased in population over those

in the 2010 Census, and thus the geographic area of those districts would need to

shrink, and that the populations in Districts One and Four had diminished, and thus

the geographic area of those Districts needed to expand to bring their respective

populations into close conformity with the "one-person, one-vote" principle

delineated by the U.S. Supreme Court in *Wesberry v. Sanders*.

10

23.     After reconvening in session on September 29, 2021 to take up congressional redistricting, the Arkansas General Assembly considered seventeen (17) bills or plans that were introduced in the House of Representatives, and ten (10) bills or plans that were introduced in the State Senate.  This Legislature also prepared maps of the boundaries of each Congressional District proposed by the respective bills.

24.     For the lawmakers' guidance before the redistricting session began, the General Assembly's Bureau of Legislative Research prepared data on the existing congressional districts along with a summary of the legal obligations the lawmakers were required to meet. The Bureau also warned the legislators that, if a lawsuit challenging their work were filed, the staff would be required, in the event of discovery, to supply plaintiffs and the court all correspondence, including emails and text messages, regarding their work on the bills. That warning was as follows:

### Confidentiality

•      The confidentiality you are accustomed to in the drafting and research process may not be available in a court challenge.

•      Comments or written documents you provide to staff, your colleagues, or other state officials may be discoverable in the event of a legal challenge.

•      This could include emails, text messages, conversations with staff, or other information related to the mapping process.

•      However, as stated above, absent any litigation on the matter, Bureau staff will continue to keep your drafts confidential and not be

11

shared without your approval.

25.     On October 7, 2021, the Arkansas General Assembly enacted House Bill No. 1982 and Senate Bill No. 743, with accompanying maps of the Congressional districts described in HB 1982 and SB 743. Those were identical bills that became, respectively, Act 1114 and Act 1116 of the 93rd General Assembly. A copy of Act 1114 is attached hereto as **Exhibit No. 1** to this Complaint, and a copy of the maps accompanying Act 1114 are attached hereto as **Exhibit No. 2** to this Complaint. A copy of Act 1116 is attached hereto as **Exhibit No. 3** to this Complaint, and a copy of the maps accompanying Act 1116 are attached hereto as **Exhibit No. 4** to this Complaint. Unless referred to individually herein, both Acts shall be referred to as "Acts 1114/1116."

26.     The new redistricting acts differed little geographically from the districts formulated by the General Assembly and signed by Governor Mike Beebe in 2011, *with one major exception*. Acts 1114/1116 deleted from the Second District a large block of southern and eastern Pulaski County that is populated primarily by Blacks, and then divided that population between the First and Fourth Districts. The result was that approximately 23,000 persons, the vast majority of whom are Black, formerly in the Second Congressional District in the southern and eastern portions of Pulaski County and of the cities of Little Rock and North Little Rock and their school districts were dispersed between the First and Fourth

Congressional Districts, both of which are largely rural and in which Black voters are scattered in sparsely populated farming communities and small cities in east Arkansas, or in small communities and towns in south and southwest Arkansas. A map showing the breakup or "cracking" of a portion of the Second Congressional District into the First and Fourth Congressional Districts is attached to this Complaint as **Exhibit No. 5.**

27.     To adjust for the loss of that population of approximately 23,000 persons from the Second District, the Bills added the whole of Cleburne County to the Second District's extreme northern border. Cleburne County, named for the Confederate General Patrick Cleburne, has only 69 Black residents in a population of 24,711 persons, according to the official 2020 census. Cleburne County ranked 70th of Arkansas's 75 counties in the diversity of its population, according to the U.S. census, while Pulaski County ranked first in the diversity of its population. Small changes were made in the boundaries of the other three congressional districts to accommodate the changes to the southern and northern boundaries of the Second District in order to give that district substantially more White voters and substantially fewer Black voters.

28.     No rationale or explanation for the "carving out" of the areas of eastern and southern Pulaski County into Congressional Districts One and Four, respectively, and adoption of this Reapportionment Plan (referred to herein as "the

2021 Plan") was provided by the sponsors of the bills or the General Assembly,

other than that it was to equalize the number of voters in each District. However,

there were other Plans proposed that achieved that purpose without splitting the

heavily Black populated areas of Congressional District Two, and many others that

can be easily devised to accomplish the population goals while achieving

compactness and preserving and improving communities of interest.

29.     When SB743 and HB1982 reached the desk of Governor Asa

Hutchinson, he announced that he refused to sign either Bill into law because he

had serious reservations that the changes made in the Bills violated Section 2 of the

Voting Rights Act, stating:

> I am concerned about the impact of the redistricting plan on minority
> populations. While the percentage of minority populations for three of
> the four congressional districts do not differ that much from the
> current percentages, the removal of minority areas in Pulaski County
> into two different congressional districts does raise concerns.

30.     Nevertheless, in deference to the legislators who sponsored and voted

for the bills, he stated that he would allow them to become law without his

signature rather than vetoing them, stating: "This will enable those who wish to

challenge the redistricting plan in court to do so."

31.     On January 14, 2022, the congressional redistricting plan and maps

approved by the Arkansas General Assembly in HB 1982 and SB 743 and

unsigned by the Governor went into effect ninety days after adjournment *sine die*

14

of the General Assembly, and became Acts 1114 and 1116.

32.     The Black vote in Congressional District Two has, in recent years,
become highly influential in congressional elections. In the general election for
Second District congressman in November 2020, Joyce Elliott, a Black educator
and State Senator from Senate District 31 (constituting a portion of Pulaski
County), received 44.6 percent of the votes to the incumbent congressman banker
French Hill's 55.3 percent. The Second District is the only electorally competitive
congressional district in the state for Blacks, and the cohesive Black voting
population and other ethnic minorities and their policy concerns have been a major
consideration for congressional candidates of both parties. As a result of Acts
1114/1116, those minorities and their interests on national policies, such as
education, health care, economic and social issues, are no longer a significant
consideration for the congressman representing the district.

33.     This dilution of minority voting power taken from the Second District
as a result of the 2021 congressional redistricting is a setback for the 800,000
people of ethnic and racial minorities in Arkansas, who until the enactment of Acts
1114/1116, had some hope that their interests in such national policies as
education, health care, earnings and wages, and social justice could find some
representation in Washington through at least one member of Congress. That right
of all minorities, including those who cannot vote, such as immigrants, was

15

protected by the Fourteenth Amendment and the language of Section 2 of the Voting Rights, but it is now marginalized by Acts 1114/1116.

34.    In enacting Acts 1114/1116, and allowing them to become law, the State of Arkansas has placed illegal and unconstitutional barriers to the legitimate and natural growth of the state's Black population to translate to increased political influence at the federal level.

35.    The 2020 census data make clear that minority voters in Arkansas are sufficiently numerous and geographically compact in one geographic area of Arkansas that they could prevail in congressional elections. Historical data from recent elections, including those in the Second Congressional District and the presidential elections of 2008 and 2012, when the Democratic nominee was a Black man, illustrate that claim. One such area is that portion of Congressional District Two that was divided between the First and Fourth Congressional Districts as described above. That geographic area is historically and currently occupied by Black citizens who have historically been and continue to be a cohesive, mutually-supportive community who frequently vote in the same way for candidates for political and other public offices, and on issues of mutual interest.

36.    Census data, including the 2020 Census, demonstrates that Pulaski County and its immediate surroundings have a racial, social, geographic, and economic nexus with southeast Arkansas so that a rational division of the state into

four congressional districts would link Pulaski County to that region of the state, particularly to neighboring Jefferson County. Several congressional redistricting bills that were introduced, by members of both parties, at the redistricting session reflect a natural division that is both geographically, racially and economically cohesive and compact, and also numerically proportional in population. The bills transfer other areas of more homogenized populations to created congressional districts of equal populations without fracturing the predominantly Black and Hispanic populations of southern Pulaski County. Attached as **Exhibits 6, 7, 8, 9, 10, and 11** are SB727 by Sens. Tucker, Elliott and Chesterfield, SB728 by Sens. Elliott, Chesterfield, Tucker and Ingram, SB720 by Sen. Johnson, SB729 by Sen. Johnson, HB1978 by Rep. Love, HB1980 by Reps. V. Flowers, Murdock and Hodges, which are examples of the easiness with which the goals of population equality, compactness and the preservation of voting interests can be achieved, all without violating the Voting Rights Act or the Constitution.

The most simple and rational plan would be to detach White County on the Second District's extreme north (population 76,822) and move it to the First District, which needs more population and is the county's geographical and natural partner; detach Perry County (population 10,019) and move it to the mountainous Fourth District, its natural partner; from the south attach Jefferson County (population 67,260, mostly African American) to the Second District, its partner

17

geographically and in community interests. See **Exhibit 12** (Total Population: Arkansas By County 2020); **Exhibit 13** (White Alone Population, Number and Percent of County Total Population); **Exhibit 14** (Black Alone Population, Number and Percent of County Total Population).  Only small changes would be needed elsewhere in the old district boundaries to achieve population conformity in all four districts. African Americans would have more than an even chance of electing one of their choice to Congress, a clear purpose of the Voting Rights Act and of relevant court opinions. The Second District would have a population, according to the 2020 census, of 749,810, almost exactly the desired population of one of the two growing congressional districts.

Although none of these bills or plans produce a majority minority district where Blacks would be *assured* of a member of Congress of their race, all would give them the promise of electing a congressman of their choice. Recent elections, including those in the Second Congressional District, suggest strongly that many Whites will support and vote for a Black candidate, and a racial majority is not required for that to happen.

37.     The effect of the division of the Black population in the southern area of Pulaski County under Acts 1114/1116 is to divide, or "crack," the Black voters, so that the impact of Black voting will be spread among three districts, rather than concentrated in one (the Second Congressional District), to discourage the

incentive of the Black voters of the area to vote, and to reduce the significance of their votes.

38.     This majority-Black community can be preserved and allow Black voters to have the opportunity to elect candidates of their choice, and yet allow the State to achieve balanced, proportional congressional districts without dividing such community into three Congressional Districts.

39.     The Hon. Frank Scott, Mayor of the City of Little Rock, and himself a Black and evidence of the electability of Black citizens in central Arkansas, said of the "cracking" of the Black voters in the southern portion of Little Rock and Pulaski County from the Second District to the First and Fourth Districts:

> I am deeply concerned about the gerrymandering along racial lines
> happening in our community, which was designed to dilute the voices
> of the residents of Little Rock. This plan sent to the Governor today
> for his signature separates the communities south of I-30 from the rest
> of the city, and those neighborhoods are predominantly Black and
> Hispanic. It is essential that we respect communities of interest in
> districting, and there is no more fundamental community of interest
> than a city like Little Rock. Additionally, it is illogical to split
> Arkansas' capital city into two congressional districts. I am hopeful
> our state's judicial system will correct this flawed attempt at
> redrawing the boundaries."

### The 2020 Census

40.     According to the results of the 2020 Census, between 2010 and 2020, Arkansas's population increased by approximately 95,000 people. As a result of this population growth, the state has a current population of approximately

19

3,011,524 people, and will retain four (4) seats in the U.S. House of

Representatives.

41.    The population growth during this period is attributable in part to an

increase in Arkansas's minority population and immigration. The 2020 census

results indicate that Arkansas's Black population now comprises approximately

15.1 percent of Arkansas's total population (See Exhibit 14), many of which are

located in Pulaski County and in the south and southeast portions of Arkansas.

Meanwhile, Arkansas's white population remained relatively stable at 70.2 percent

over the past decade (See Exhibit 13). In total, Arkansas's minority population

now comprises approximately 30 percent of the state's total population, including

all minorities.  The main areas of population growth were in Northwest Arkansas

(Congressional District 3), and central Arkansas (Congressional District 2).


### Applicable Law

42.    The right to vote, and the concept of "one person, one vote" is the

cornerstone of our democracy. An apportionment of congressional seats which

'contracts the value of some votes and expands that of others' is unconstitutional,

since 'the Federal Constitution intends that when qualified voters elect members of

Congress each vote be given as much weight as any other vote. The constitutional

prescription for election of members of the House of Representatives 'by the

People,' construed in its historical context, 'means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's. *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964),

43.    There are numerous constitutional provisions and statutes that assure and protect that right. Article I of the United States Constitution provides in relevant part that "The House of Representatives shall be composed of Members chosen every second Year by the People of the several States," and preserves inviolate the right of "the People" to elect their Representatives, barring the States from enacting election laws and procedures that "dictate electoral outcomes" or "favor or disfavor a class of candidates." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833–34, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995).

44.    Similarly, the First Amendment to the U.S. Constitution, providing that "Congress shall make no law * * * abridging the freedom of speech," prohibits election regulations and procedures that "restrict the speech of some elements of our society in order to enhance the relative voice of others." *Buckley v. Valeo*, 424 U.S. 1, 48–49, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (*per curiam*).

45.    The Equal Protection Clause of the 14th Amendment to the U.S. Constitution, provides in relevant part that:

> … No State shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall any

21

State … deny to any person within its jurisdiction the equal protection of the laws.

46.     The 14th Amendment embodies the foundational constitutional principle that the State must govern "impartially"—that "the State should treat its voters as standing in the same position, regardless of their political beliefs or party affiliation." *Davis v. Bandemer*, 478 U.S. 109, 166, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986).

47.     Partisan gerrymandering — "the drawing of legislative district lines to subordinate adherents of one political party and entrench a rival party in power," *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, —— U.S. —— –, 135 S.Ct. 2652, 2658, 192 L.Ed.2d 704 (2015) — strikes at the heart of this foundational constitutional principle. By definition, partisan gerrymandering amounts to an effort to dictate electoral outcomes by favoring candidates of one party and disfavoring candidates of another. *Thornton*, 514 U.S. at 833–34, 115 S.Ct. 1842.

48.     The 15th Amendment to the U.S. Constitution also protects the rights of minorities to vote and to have those votes counted on an equal basis by providing "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

49. The Federal Voting Rights Act, of 1965, 52 U.S.C. § 10301, was enacted expressly for the purpose of remedying attempts to deprive minorities of, not only their right to vote, but to have their votes counted in an equal measure and importance as that of other voters.

50. Section 2(a) of the Voting Rights Act ("VRA") provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2), as provided in subsection (b).

51. Included in the Section 2 prohibition of practices that deny the exercise of the right to vote is *vote dilution. Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) ("*Gingles*"), such as has occurred with Acts 1114/1116.

52. Finally, Article 2, Section 3 of the Constitution of the State of Arkansas provides:

The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition.

53.    The procedure for establishing violations of the foregoing Constitutional and statutory provisions is embodied in Section 2(b) of the VRA, describing the evidence required to establish a violation of Section 2(a) of the Act.

23

That Section 2(b) provides:

> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided,* That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population."
> Codified as 52 U.S.C. § 10301(b).

54.     A violation of Section 2 of the VRA is thus established if "it is shown that the political processes leading to nomination or election" in the jurisdiction "are not equally open to participation by members of a [minority group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 10301(b). The intent behind the "political processes" in question is not relevant; it is the result of the voting qualification, or prerequisite to voting, or standard, practice, or procedure in denying the minority group's opportunity to participate and to elect representatives of their choice that is the issue.

55.     One such "less opportunity to participate in the election process and to elect representatives of their choice" can result from "cracking" or "packing" minority voters. To illustrate, the dilution of Black voting strength "may be caused

24

by the dispersal of blacks into districts in which they constitute an ineffective

minority of voters" – cracking – "or from the concentration of blacks into districts

where they constitute an excessive majority"—packing. *Thornburg v. Gingles*, 478

U.S. 30, 46 n.11 (1986).

56.    The Senate Report on the 1982 amendments to the Voting Rights Act

identified several nonexclusive factors that courts should consider when determining

if, under the totality of circumstances in a jurisdiction, the operation of the

challenged electoral device results in a violation of Section 2. *See, Cottier v. City

of Martin,* 551 F.3d 733 (8th Cir. 2008); *Bone Shirt v. Hazeltine,* 461 F.3d 1011 (8th

Cir. 2006).

57.    These "Senate Report Factors" include:

(a)    the history of official voting-related discrimination in the state
or political subdivision;

(b) the extent to which voting in the elections of the state or political
subdivision is racially polarized;

(c) the extent to which the state or political subdivision has used
voting practices or procedures that tend to enhance the opportunity for
discrimination against the minority group, such as unusually large
election districts, majority-vote requirements, or prohibitions against
bullet-voting;

(d) the exclusion of members of the minority group from candidate-
slating processes;

(e) the extent to which minority group members bear the effects of
discrimination in areas such as education, employment, and health,
which hinder their ability to participate effectively in the political

process;

(f) the use of overt or subtle racial appeals in political campaigns; and,

(g) the extent to which members of the minority group have been elected to public office in the jurisdiction.

58.     The Senate Report itself and the cases interpreting it have made clear that "there is no requirement that any particular number of factors be proved, or that a majority of them point one way or the other." *Whitfield v. Democratic Party of State of Ark.*, 890 F.2d 1423 (8th Cir., 1989) (in concurrence by Bright, J.)

## APPLICATION OF FACTS TO LEGAL AUTHORITY "SENATE REPORT FACTORS" PER *GINGLES*

59.     The length of time and the severity of the history of racial discrimination that has occurred in Arkansas was noted in opinions written by the Hon. Richard S. Arnold, the late Chief Judge of the U.S. Court of Appeals for the Eighth Circuit, and an Arkansas native. Judge Arnold wrote the opinions for three-judge District Courts assembled to hear claims of VRA violations in *Smith v. Clinton*, 687 F. Supp. 1310, 1317 (E.D. Ark. 1988) and *Jeffers v. Clinton*, 730 F.Supp. 196 (E.D. Ark. 1989). Judge Arnold wrote:

> The Court takes *judicial notice* that there is a history of racial discrimination in the electoral process in Arkansas. See *Perkins v. City of West Helena,* 675 F.2d 201, 211 (8th Cir.), *aff'd mem.,* 459 U.S. 801, 103 S.Ct. 33, 74 L.Ed.2d 47 (1982). We do not believe that this history of discrimination, which affects the exercise of the right to

26

vote in all elections under state law, must be proved anew in each case under the Voting Rights Act.

We further find that the history of discrimination has adversely affected opportunities for black citizens in health, education, and employment. (footnote omitted) The hangover from this history necessarily inhibits full participation in the political process.

*Smith v. Clinton*, 687 F. Supp. 1310, 1317 (E.D. Ark. 1988)

60.     Courts may differ on whether something as significant, long-standing, varied and subtle as racial discrimination may be judicially noticed. Furthermore, time blurs the memory, and many people alive today were born after these events and are not acutely aware of them. Therefore, some recitation of examples of such past and on-going discrimination is important.

61.     Arkansas's past discrimination against its Black citizens, including its numerous attempts to deny Black voters an equal opportunity to participate in the political process, is extensive and well documented. The consequences of the state's historic discrimination persist to this day as well, as Black Arkansans continue to experience socioeconomic hardship and marginalization.

### *Violence and Discrimination As An Exercise of White Supremacy*

62.     In the years following the Civil War, lynching was a common means of white supremacists maintaining authority over Blacks. The number of lynchings perpetrated against blacks increased in the 1890s, when Jim Crow segregation statutes were implemented. Indeed, lynching remained a part of life in Arkansas as

the state moved into the twentieth century. The ratio of black victims compared to whites rose steadily, peaking in the 1920s. The nature and methods of lynchings also became more gruesome and terrifying. A March 1904 lynching in St. Charles (Arkansas County) represented a particularly horrific example, in which thirteen black victims were murdered in a four-day frenzy of violence.

63.    Although some scholars alleged that Jim Crow laws actually reduced lynching by separating black and white groups, and thus limiting the potential for interpersonal violence, the more modern scholarly interpretation of this relationship holds that Jim Crow statutes actually facilitated racial violence by reducing the political power of African Americans; this explains the increase of lynching, especially anti-black lynching, in the 1890s. In addition, newspaper accounts of lynching at the time were rife with tropes that served to dehumanize the victim or exaggerate the dignity of the mob that perpetrated the murder, among other things. (Source: *Encyclopedia of Arkansas History and Culture*, Feb. 19, 2022)

64.    Lynching was sanctioned by some Arkansas leaders and public officials, who inflamed racial passions as a means of achieving their own political or economic ends. Former governor Jeff Davis (who was born in Sevier County in 1862 and served as attorney general and then as governor of the state from 1901 to 1907) was quite willing to defend the practice of lynching. When President

28

Theodore Roosevelt visited Arkansas in 1905, Davis famously remarked, "[W]e have come to a parting of the way with the Negro. If the brutal criminals of that race…lay unholy hands upon our fair daughters, nature is so riven and shocked that the dire compact produces a social cataclysm." Thus lynching represented not only a way of asserting white supremacy but also a political tool wielded by demagogues. (Source: Encyclopedia of Arkansas, February 19, 2022).

65.    On the evening of September 30, 1919, the notorious Elaine Massacre erupted, which marked the deadliest racial episode in Arkansas history. The lynchings and murders that occurred in Elaine arose out of white fear and distrust of a black union organization in Phillips County. A shooting at a church in Hoop Spur (Phillips County) sparked the conflict; the presence of about 100 sharecroppers attending a meeting of the Progressive Farmers and Household Union of America quickly spurred massive violence by whites against blacks throughout the county. Although the exact death toll remains unknown, historians have estimated that hundreds of black citizens were killed, while five whites died in the incident. (*Ibid.*)

66.    Lynching of Blacks did not stop despite the active opposition of Governor Thomas C. McRae and the persistent work of many churchwomen. Indeed, the 1920s embraced two of the most sadistic examples of lynching to be found in Arkansas history, or in American history.

67.     On January 26, 1921, Henry Lowry, a Black man who lived in Nodena (Mississippi County) fled the state after killing a White plantation owner in an argument at settlement time. Caught in Texas, Lowry was extradited to Arkansas. A mob from Arkansas stopped the train just outside of Memphis, and took Lowery by car to Nodena. The widely reported execution was described by the *Memphis Press*:

> With the negro chained to a log, members of the mob placed a small pile of leaves around his feet. Gasoline was then poured on the leaves, and the carrying out of the death sentence was under way. Inch by inch the negro was fairly cooked to death. Every few minutes fresh leaves were tossed on the funeral pyre until the blaze had passed the negro's waist. As the flames were eating away his abdomen, a member of the mob stepped forward and saturated his body with gasoline. It was then only a few minutes until the negro had been reduced to ashes.

68.     Six years later, perhaps the most notorious isolated lynching in Arkansas history occurred. On May 4, 1927, thirty-seven-year-old black Little Rock resident John Carter was accused of striking a local white woman and her daughter and asking for whiskey. This followed close upon the earlier killing of a young white woman in Little Rock, although not by Carter. Enraged whites scoured the area in search of Carter. He was found late in the day, hanged from a telephone pole, and repeatedly shot. Later, his body was burned and dragged through the streets of Little Rock to the corner of 9th and Broadway streets—the heart of the city's black community and five blocks south of the present location of

the Richard S. Arnold Federal Courthouse – where a pyre was built from pews ripped from a nearby Black church and Carter's body was burned there before a large, celebrating crowd. (See **Exhibit No. 15**- copy of *Arkansas Gazette* front page, May 5, 1927 edition.)  An all-White Grand Jury conducted a brief investigation, but no one was ever arrested for any of the crimes against Carter. (*Ibid.*)[1]

69.     Discrimination bordering on violence was common in Arkansas. On March 5, 1959, twenty-one boys burned to death inside a dilapidated dormitory at the Negro Boys Industrial School at Wrightsville, twelve miles south of Little Rock. They were locked inside for the night with no adult around when a fire, apparently caused by ancient wiring, broke out before dawn. A few stronger children managed to break windows and pry through bars to escape. State officials, including the board appointed by governors to monitor the little school, had repeatedly ignored reports of the dangerous conditions at the school, which bore no comparison to the training school for White boys at Alexander. The training

---

[1] Four blocks in the other direction on Broadway from the Federal Courthouse, at the Robinson Concert Hall, the Arkansas Symphony Orchestra gave a momentous concert on February 26, 2022, featuring *Ethiopia's Shadow in America* by the great American classical composer Florence Price, a Black woman, Little Rock native and music teacher at Shorter College, who wrote the piece in 1932. Five years earlier, she and her husband, who lived a short distance from where Carter's body was violated and incinerated, packed their belongings and, like many other Blacks, fled Arkansas to Chicago, where her musical career blossomed.

school, which housed youngsters who were abandoned or had gotten into minor

scrapes, was little more than a slave farm where boys worked in the fields,

received little education, slept in squalor and drank from a fetid well.

70.     Police in Arkansas have arrested pickets and boycotters of businesses

that did not hire blacks, and for offenses such as spitting on the sidewalk. Blacks

were also arrested at the lunch-counter sit-ins in Little Rock in the early '60s, and

the State Police clubbed Philander Smith College students who came to the Capitol

during a legislative session in 1965 to eat in the Capitol cafeteria, which state

officials had made a private club, called the Capitol Club. U.S. District Judge J.

Smith Henley subsequently ruled that a private club in a public building violated

the Equal Protection Clause of the Fourteenth Amendment.

71.     Violence, or the threat of violence, continues to be used as a means of

racial superiority and discrimination in Arkansas and other states.

### *"Sundown Towns"*

72.     Between 1890 and the present, thousands of towns across the United

States drove out their black populations or took steps to forbid or discourage

African Americans from living in them. Thus were created "sundown towns," so

named because many marked their city limits with signs typically reading,

"Nigger, Don't Let The Sun Go Down On You In Alix"—an Arkansas town

in Franklin County that had such a sign around 1970.

32

73.     By 1970, when sundown towns were at their peak, more than half of all incorporated communities outside the traditional South probably excluded African Americans, including probably more than a hundred towns in the northwestern two-thirds of Arkansas. By 1930, three Arkansas counties had no African Americans at all, and another eight had fewer than ten, all in the Arkansas Ozarks. By 1960, six counties had no African Americans (Baxter, Fulton, Polk, Searcy, Sharp, and Stone), seven more had one to three, and yet another county had six. All fourteen were probably sundown counties; eight have been confirmed. (Source: Encyclopedia of Arkansas, February 19, 2022)

### *Electability of Black Political Candidates*

### <u>Federal Offices</u>

74.     No Black persons have ever been elected or appointed to the United States Senate or the United States House of Representatives from the State of Arkansas. The 2021 congressional redistricting plan, in removing a significant number of Black voters from the Second District, drastically diminishes the prospect of a Black being competitive for a Congressional seat in the foreseeable future.

75.     As noted above, in the November 2020 general election for Second District congressman, State Senator Joyce Elliott, a State Senator, received 44.6 percent of the votes to the incumbent congressman French Hill's 55.3 percent. The

33

Second District, with its substantial Black voting population, has been in recent years the only electorally competitive congressional district in the state, where the cohesive Black voting population and other ethnic minorities and their policy concerns were a major consideration for congressional candidates of both parties.

## State Constitutional Offices

76.    No Black person has ever been elected to the Office of Governor of the State of Arkansas.

77.    No Black person has ever been elected to the Office of Lieutenant Governor of the State of Arkansas.

78.    No Black person has ever been elected as a Chief Justice or Associate Justice of the Arkansas Supreme Court.

79.    No Black person has ever been elected to the Office of Attorney General of the State of Arkansas.

80.    No Black person has ever been elected to the Office of Secretary of State of the State of Arkansas.

81.    No Black person has ever been elected as Treasurer of the State of Arkansas.

82.    No Black person has ever been elected as Auditor of the State of Arkansas.

83.     No Black person has ever been elected as Land Commissioner of the State of Arkansas.

## History of Black Voting in Arkansas

84.     The Arkansas legislature in 1891 adopted an election law that imposed strict procedures for illiterate men to vote, and most Blacks and many White men were functionally illiterate. According to the law, each time an illiterate person came to vote, the precinct had to be cleared of voters and observers so that election judges could help the man fill out his ballot. The humiliation kept most Black men from the polls. The law was part of the Jim Crow laws enacted in the 1890s to restore segregation to all facets of life after the freedoms imposed during Reconstruction.

85.     In 1893, Arkansas joined most other Southern states in requiring the payment of a one-dollar poll tax to vote in any election. It was a substantial burden, because the average annual wage in Arkansas was $548, and far less for Blacks. To vote, a Black man had to produce a current receipt that he had paid the tax. A practice in many parts of the state, well into the second half of the 20th century, was for major landowners or other community leaders, such as the doctor, the mill owner, or commissary owner, to purchase poll taxes for their tenants or patients or regular customers and cast their votes—for whomever the purchaser favored for

public offices. It helped produce lopsided votes, nearly always for Democratic politicians favored by the county political machines and usually detrimental to the interests of the Black voters.

86.    The Arkansas Democratic Party early in the 20th century declared voting in its primaries to be restricted to White people of voting age. For all practical purposes, until late in the century, except for a few counties in northwest Arkansas, all public offices were filled in the Democratic primaries, which meant that except for presidential elections and ballot issues such as initiated acts and constitutional amendments, Blacks had no voice in determining public policy. They could purchase a poll tax receipt and vote in general elections, where most officeholders had already been decided in the Democratic primaries.

87.    Starting with *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), which declared white-only primaries illegal, the United States Supreme Court began to dismantle the voting impairments for minorities. Governor Homer M. Adkins (formerly a Ku Klux Klan leader in Pulaski County) declared: "If I cannot be nominated by the white voters of Arkansas, I do not want the office."

88.    One study reflected that in 1940 only 3 percent of Black adults (women were eligible to vote by then) had paid poll taxes and were eligible to vote in general elections. The percentage had increased to 21 percent in 1948, when

36

Blacks could vote in Democratic primaries and to only 33 percent in 1958, the year after the historic confrontation between the state and federal governments at Little Rock over judicially ordered racial integration of the schools.

89.     The country ratified the 24th Amendment in 1962, prohibiting states from imposing a poll tax as a requirement for voting in federal elections. In 1964, Arkansas ratified a State constitutional amendment, put on the ballot by initiative, prohibiting poll taxes and establishing a system of permanent voter registration for all elections in the state. People could register to vote and retain their voting eligibility for life in federal, state or local elections. The amendment prohibited the legislature or local governments from adding requirements for voting beyond the registration.

90.     That lasted until 2016, when the legislature proposed and voters ratified a constitutional amendment that altered the voter-registration law to permit the state to establish requirements for people to produce photo identifications at the polls to cast a ballot—an intimidating requirement for Blacks and the aged, especially women, who often had no driver's license or passport and who had to endure intimidating procedures to cast a ballot at the polling precinct and then to get the ballot counted.

91.     Owing to the poll tax, white primaries and other discriminatory procedures, no Black person was elected to the Arkansas Senate or House of

Representatives from 1894 until after the reapportionment in 1971, which for the first time created districts where Blacks were in the majority or near parity with Whites. That redistricting followed the U.S. Supreme Court's "one-man, one-vote" decision in 1964 and the 1970 census. The first minority legislators took office in 1973. That redistricting, led by Governor Dale Bumpers and Attorney General Ray Thornton, set out specifically to create majority-minority districts.

92.     Literacy tests were outlawed by the federal Voting Rights Act of 1965. Arkansas has been found by the courts to be in violation of the Voting Rights Act's prohibition of vote dilution "where a district was drawn, intentionally or not, so that minorities do not have an equal opportunity—as others—to elect a candidate of their choice." The U.S. Supreme Court's *Reynolds v. Sims* decision (377 US 533, 1964), which established the "one man, one vote" rule regarding state political districts, directly affected Arkansas voting.

93.     In 1981, Arkansas passed a statewide legislative apportionment plan under the Voting Rights Act. Black voters subsequently filed a suit in federal court in 1989 alleging that the state's plan violated the act, noting that no black legislator had been elected from a non-majority-Black district despite Blacks being approximately 16 percent of the state's population.

94.     In 1989, a federal court in *Jeffers v. Clinton* agreed and ordered several racial "majority-minority" districts for the Arkansas House of

Representatives and Arkansas Senate to be redrawn so that the minority populations would have a better opportunity to elect their preferred candidate. This new plan created seven more majority-Black House districts and two more majority-Black Senate districts. As a result, more Black candidates have been elected to House and Senate offices in Arkansas.

95.     In a 2012 Voting Rights Act case, the U.S. Attorney General stated that there was evidence of voting discrimination in jurisdictions not covered by the Voting Rights Act formula, including northern Florida, Tennessee, and Arkansas. In 2012, the *Jeffers v. Beebe* lawsuit challenged Arkansas's reapportioned state Senate district border lines because of alleged racial gerrymandering and violations of the Voting Rights Act.

96.     Arkansas's history of racial discrimination in voting has been thoroughly documented by historians and scholars. Indeed, "[t]he history of the state['s] segregation practice and laws at all levels has been rehashed so many times that the Federal Court, in *Jeffers v. Clinton*, took judicial notice of it.

97.     Arkansas, like other states of the Confederacy, has a history of racial discrimination at all levels. This discrimination was ratified into state constitutions, enacted into state statutes, and promulgated in state policy. Racism and race discrimination were apparent and conspicuous realities, the norm rather than the exception.

## Use of Racial Appeals in Political Campaigns

98.    In addition to Arkansas's history of discrimination against minorities

in voting, political campaigns in the state have often relied on both overt and subtle

racial appeals—both historically *and* during recent elections.

a.  In 1867, voting was held in the State of Arkansas on whether to adopt a constitution that Congress would approve and thus bring the state back into the union, Albert Pike opposed it, writing: "When our vote is worth no more than an ignorant negroe's [sic], it is not worth picking out of the gutter."

b.  In 1891, the State adopted the "Australian ballot", which served as a literacy test, giving rise to the limerick:

> The Australian ballot works like a charm
> It makes them think and scratch,
> And when a negro gets a ballot
> He has certainly got his match.

c.  In 1892, the State of Arkansas required proof of payment of a poll tax in order to vote.

d.  In 1906, the State of Arkansas enacted a law providing that only Whites could vote in the Democratic primary.

e.  In 1927, the U.S. Supreme Court gave Blacks the right to vote in Democratic primaries (*Nixon v. Herndon*, 273 U.S. 536, 47 S.Ct. 446 (Mem),  71 L.Ed. 759 (1927)

f.  However, when Arkansas Blacks made an effort to exercise their voting rights, the state Supreme Court, in *Robinson v. Holman*, 181 Ark. 428, 26 S.W.2d 66 (1930) ruled that although party primaries were legal elections, the state had no control over private bodies such as the Democratic Party.

40

g. In 1940, Congressman William F. Norrell, a former Ku Klux Klan leader in eastern Arkansas stated at a campaign rally:

> It matters not how great the financial need of white men and women and how much their need for employment, Southern people in their indignation will never bring themselves to permit such an outrage as to allow white men, women, and girls to be interviewed and supervised by Negroes.

h. In 1942, in a campaign for a vacant congressional seat against Democrat Brooks Hays, his opponent, Lieutenant Governor Bob Bailey, claimed that Hays favored racial equality, saying: "Well, we don't want any nigger votes, do we?"

i. In 1942, Blacks try to vote in the Democratic primary and are turned away.

j. 1946: Arkansas Governor Homer Adkins stated: "The Democratic Party in Arkansas is a white man's party." An oath for party membership required all persons to swear to support the permanent separation of the races.

k. In the case of *Branton v. State*, 214 Ark. 861 (1949), Wiley Branton of Pine Bluff, later to be a renowned civil rights attorney, was convicted of the crime of handing out mimeographed sheets at Jefferson County's Mount Zion Church listing the candidates in the upcoming election. A state law prohibited the distribution of ballots other than at the polls. The Arkansas Supreme Court held, over the dissent of Chief Justice Griffin Smith, that these sheets constituted ballots, although none of them were ever presented at the polls. A Grand Jury had been impaneled to investigate Black efforts to get out the vote before the election and concentrated on Branton. The U.S Supreme

41

Court declined to hear the appeal. The $300 fine was raised from the local Black community. The law was repealed in 1969 and this was apparently the only prosecution under it.

l.  In 1949, Ed McCuiston, state director of Negro education, showed that $4,250,000 had been diverted from Black schools to Whites in the previous year, and that West Memphis was spending $144.51 per White student and only $19.51 for each Black student.

m.  Following the U.S. Supreme Court's ruling in *Brown v. Board of Education,* nineteen U.S. senators and eighty-one congressmen, including all members from Arkansas, signed the "Southern Manifesto" denouncing the U.S. Supreme Court's decision and urging Southern states to resist it. The reaction to the decision in Arkansas is well-and-universally known. Arkansas Governor Orval Faubus on September 2, 1957, called out units of the Arkansas National Guard to prevent nine Black children from entering Central High School. He later closed the city's public high schools for the 1958–59 school year to prevent Black children from entering the schools under court orders.

n.  In 1956, the voters adopted Amendment 44 to the Arkansas Constitution, known as "the interposition amendment" written by State Senator Jim Johnson, a state legislator and future Justice of the Arkansas Supreme Court, which declared that integration was illegal, and instructing state officials to interpose the state's authority between the people and the federal government and take all steps necessary to block the enforcement of *Brown v. Board of Education in Arkansas*. Thirty-three years later (1988), the Arkansas Legislature proposed a constitutional amendment officially repealing Amendment 44, although it had already been declared null and void. The repealing amendment

(Amendment 69) barely passed in <u>1990</u>, with 273,527 for, and to 263,261 against.

o.  State lawmakers segregated everything from public schools to hospitals and graveyards. Black Arkansans were also precluded from sitting on juries, which effectively denied Black litigants equal justice under the law. Moreover, Black Arkansans were excluded from the most desirable manufacturing jobs, which limited their employment opportunities to primarily unskilled, low-paying labor. And in times of economic hardship, Black employees were the first to lose their jobs.

p.  More recently, Arkansas today remains as one of three states that does not have a Hate Crimes law, notwithstanding that it is home to 14 groups designated by the Southern Poverty Law Center as hate groups such as the Knights of the Klu Klux Klan.

q.  An Arkansas legislator has sponsored bills in the Arkansas General Assembly that would prohibit the teaching of critical race theory, which is a concept that seeks to critically examine the history of racial relations in the U.S., and the intersection of race and law. The current State Attorney General has issued an opinion stating that the teaching of critical race theory violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

r.  In August 2021, four Black inmates of the Washington County, Arkansas detention center who had contracted Covid-19 were given high doses of ivermectin, an anti-parasitic drug commonly used on livestock, without their consent, resulting in their having negative reactions such as vision problems, diarrhea, and stomach cramps, raising specters of the infamous Tuskegee Syphilis experiments conducted on Black men in the mid-1900s by American

43

government officials.

### Ongoing Effects of Arkansas's History of Discrimination

99.    Decades of Jim Crow and other forms of state-sponsored Discrimination – followed by continued segregation of public facilities well into the latter half of the 20th century, in defiance of federal law – has resulted in persistent socioeconomic disparities between Black and White Arkansans. These disparities hinder the ability of Black voters to participate effectively in the political process.

100.   Black Arkansas, for instance, have higher poverty rates than white Arkansans. According to the U.S. Census Bureau 28.9 percent of Black Arkansans have lived below the poverty line in the past 12 months, compared to 13.43 percent of White Arkansans.  Arkansas Report:"Talk Poverty," The Center for American Progress 2022.

101.   Relatedly, Black and Hispanic Arkansans have a lower *per capita* income than white Arkansans. The shows that White Arkansans had an average per capita income of $30,250 over the past 12 months, compared to $18,986 for Black Arkansans, and $18,867 for Hispanic Arkansans. Source: U.S. Census Bureau's American Community Survey, published by America's Health Rankings: United Health Foundation, Ed. 2021.

102.    Arkansas educational attainment by Race is also telling. The Arkansas population was 3,042,017 in 2020 with persons identifying as White as 1,542,183. Of those, 89 percent have completed high school and 25 percent have a bachelor's degree. 235,207 identify as Black. Of those, 84 percent have completed high school and 16 percent have a bachelor's degree. 109,930 identify as Hispanic. Of those, 58 percent have a high school education and 10 percent have a bachelor's degree. Arkansasedc.com.

103.    Arkansas's poverty rate correlates with education. 27.14 percent of those in poverty have less than an 8th grade education, 15.64 percent have less than a high school education, 12.14 percent have some college, and only 4.69 percent of those who have a bachelor's degree or greater live in poverty. Arkansasedc.com.

104.    Black Arkansans also have lower homeownership rates than white Arkansans. 55.3 percent of Black Arkansans live in renter-occupied housing compared to 28.9 percent of White Arkansans. And Black Arkansans also spend a higher percentage of their income on rent than white Arkansans. The percent of income spent on rent is 51 percent for Black Arkansans compared to 48 percent for White Arkansans. State of Arkansas: Analysis of Impediments to Fair Housing Choice, Prepared for AEDC, November 6, 2016.

105.   These disparities impose hurdles to voter participation including working multiple jobs, working during polling place hours, lack of access to childcare, lack of access to transportation, and higher rates of illness and disability. All of these hurdles make it more difficult for poor and low-income voters to participate effectively in the political process.

## CAUSES OF ACTION

### COUNT I
### Defendants' Violation of Article 1, Section 2, of the Constitution of the United States

106.   Plaintiffs affirm, ratify and reallege all allegations contained in the previous paragraphs.

107.   Article I § 2, clause 1 of the Constitution of the United States provides in relevant part:

> The House of Representatives shall be composed of Members chosen every second Year by the People of the several States…

108.   This clause's command that representatives be chosen by people of the several states means that as nearly as practicable one man's vote in congressional election is to be worth as much as another's. *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

109.   Congressional redistricting plans do not satisfy the "as nearly as practicable" constitutional standard where the population variances among the districts are not unavoidable. *Kirkpatrick v. Preisler,* 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969), rehearing denied 395 U.S. 917, 89 S.Ct. 1737, 23 L.Ed.2d 231. However, even if the population variances are within constitutional limits, the districts may not be drawn to achieve an unconstitutional result.

110.   While the 2021 Arkansas Reapportionment Plan may meet constitutional standards regarding population variances among the districts, the General Assembly nevertheless adopted the 2021 Plan because it "cracked" or racially gerrymandered portions of the Second Congressional District from that District to the First and Fourth Congressional Districts in order to dilute the Black vote in the Second District.

111.   Such racial gerrymandering, or "cracking," is a violation of Article 1, Section 1, clause 2 of the Constitution of the United States, and the 2021 Arkansas Reapportionment Plan should thereby be voided, and the Arkansas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements. Alternatively, the Court should devise or select another Redistricting Plan that meets constitutional standards.

## COUNT II
### Defendants' Violation of the First Amendment
### To the Constitution of the United States

112.   Plaintiffs affirm, ratify and reallege all allegations contained in the previous paragraphs.

113.   The First Amendment to the Constitution of the United States provides in relevant part:

> Congress shall make no law * * * abridging * * * the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

114.   States, in exercising their powers of supervision over elections and in setting qualifications for voters, may not infringe upon rights to associate with others for common advancement of political beliefs and ideas protected by the First Amendment and Amend. 14.   *Communist Party of Indiana v. Whitcomb,* 94 S.Ct. 656, 38 L.Ed.2d 635 (1974), rehearing denied 415 U.S. 952, 94 S.Ct. 1476, 39 L.Ed.2d 568.

115.   When such fundamental rights as freedom to associate as a political party and right to cast votes effectively are at stake, the state must establish that its regulation of ballot is necessary to serve compelling interests.   *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979).   See, also, *Anderson v. Hooper*, 498 F.Supp. 898 (D.C.N.M.1980); *Bright v. Baesler*, 336 F.Supp. 527 (D.C. Ky. 1971).

48

116.   Substantial burdens on the right to vote or to associate for political purposes are constitutionally suspect and invalid under the First Amendment and Amendment 14, and under the equal protection clause unless essential to serve a compelling state interest. *Riddell v. National Democratic Party*, 508 F.2d 770 (C.A.5 1975).

117.   When it is claimed that a state's control over elections, including reapportionment of congressional districts, infringes on the right to vote and the right of association, the burden is then on the state to show that such infringement is the result of the state's enforcement of a compelling interest and that the state's interest could not be protected through less restrictive means. *Nagler v. Stiles*, 343 F.Supp. 415 (D.C.N.J.1972).

118.   The First Amendment prohibits election regulations that "restrict the speech of some elements of our society in order to enhance the relative voice of others." *Buckley v. Valeo*, 424 U.S. 1, 48–49, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). Partisan gerrymandering—"the drawing of legislative district lines to subordinate adherents of one political party and entrench a rival party in power," *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 135 S.Ct. 2652, 2658, 192 L.Ed.2d 704 (2015)—strikes at the heart of this foundational constitutional principle. By definition, partisan gerrymandering amounts to an effort to dictate electoral outcomes by favoring candidates of one

49

party and disfavoring candidates of another. *Thornton*, 514 U.S. at 833–34, 115 S.Ct. 1842; *Common Cause v. Rucho,* 318 F.Supp.3d 777 (M.D. N.C., 2018).

119.   In the adoption of the 2021 Arkansas Reapportionment Plan, the Republican majority in both houses of the Arkansas General Assembly "cracked" or racially gerrymandered portions of the Second Congressional District from the Second Congressional District to the First and Fourth Congressional Districts in order to dilute the Black vote in the Second District and to "dictate electoral outcomes by favoring candidates of one party and disfavoring candidates of another."

120.   Such racial gerrymandering, or "cracking," is a violation of the "Assembly Clause" and the "Petition Clause" of the First Amendment to the Constitution of the United States. The 2021 Arkansas Reapportionment Plan should thereby be voided, and the Arkansas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements.  Alternatively, the court should adopt one of the other redistricting bills produced at the legislative redistricting session that meet the guidelines spelled out in judicial orders cited herein, or another redistricting of its own making, such as the one described in this complaint removing White and Perry Counties from the Second District and absorbing Jefferson County into the Second District.

## COUNT III
### Defendants' Violation of the Privileges and Immunities Clause of
### The Fourteenth Amendment
### To the Constitution of the United States

121.   Plaintiffs affirm, ratify and reallege all allegations contained in the previous paragraphs.

122.   The "Privileges and Immunities Clause" of the Fourteenth Amendment to the United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

123.   Purposes of this amendment and of the civil rights statute, 42 U.S.C.A. §1983, are to preserve and enforce, as against state action, those rights, privileges and immunities secured by the Constitution and laws.   *Golden v. Biscayne Bay Yacht Club*, 530 F.2d 16 (C.A.5 (Fla.) 1976), *certiorari denied,* 429 U.S. 872, 97 S.Ct. 186, 50 L.Ed.2d 152.

124.   The right to vote in a federal election is a privilege of national citizenship derived from the United States Constitution. *U.S. by Katzenbach v. Original Knights of Ku Klux Klan*, 250 F.Supp. 330 (E.D.La.1965). The Fourteenth Amendment was designed to bar states from denying to some groups, on account of their race or color, any rights, privileges and opportunities accorded to other groups.   *Constantine v. Southwestern Louisiana Institute,* 120 F.Supp. 417 (W.D.La.1954).

51

125.   In the adoption of the 2021 Arkansas Reapportionment Plan, the Republican majority in both houses of the Arkansas General Assembly "cracked" or racially gerrymandered portions of the Second Congressional District from the Second Congressional District to the First and Fourth Congressional Districts in order to deny to Black voters in Arkansas, on account of their race or color, the rights, privileges and opportunities accorded to White voters in the Second District.

126.   Such racial gerrymandering, or "cracking," is a violation of the "Privileges and Immunities Clause" of the Fourteenth Amendment to the Constitution of the United States. The 2021 Arkansas Reapportionment Plan should thereby be voided, and the Arkansas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements. Alternatively, the court should devise or select another redistricting plan that meets constitutional standards.

## COUNT IV
Defendants' Violation of the Equal Protection Clause of
The Fourteenth Amendment
To the Constitution of the United States

127.   Plaintiffs affirm, ratify and reallege all allegations contained in the previous paragraphs.

128.   The "Equal Protection Clause" of the Fourteenth Amendment to the United States Constitution provides:

> No State shall ... deny to any person within its jurisdiction the equal protection of the laws.

129.   The harms that flow from racial sorting in drawing boundaries for electoral districts, for purposes of a racial gerrymandering claim under the Equal Protection Clause, include being personally subjected to a racial classification as well as being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group. *Bethune-Hill v. Virginia State Bd. of Elections*, ___ U.S. ____, 137 S.Ct. 788, 197 L.Ed.2d 85 (2017), on remand 326 F.Supp.3d 128.

130.   The Arkansas General Assembly's 2021 Congressional Redistricting Plan had the discriminatory effect of racially gerrymandering or "cracking" communities of Black voters in order to reduce or eliminate the potential and effectiveness of such communities of voters to elect candidates and pass issues that they favored.

131.   The adoption of such Plan resulted in the consistent and permanent degradation of Black citizens in their participation in Federal congressional political process and enhanced the consistent and permanent potential for continued success in electing White candidates to Congress from the Second Congressional District.

132.   The adoption of the 2021 Plan denied the Plaintiffs and other Blacks in Arkansas the equal protection of the laws as guaranteed under the "Equal

Protection Clause" of the Fourteenth Amendment.

133. The 2021 Arkansas Reapportionment Plan should thereby be voided, and the Aransas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements. Alternatively, the court should select or devise another redistricting plan that meets constitutional standards.

## COUNT V
### Defendants' Violation of the Fifteenth Amendment
### To the Constitution of the United States

134. Plaintiffs affirm, ratify and reallege all allegations contained in the previous paragraphs.

135. The Fifteenth Amendment to the United States Constitution provides:

> The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

136. This amendment nullifies onerous procedural requirements which effectively handicap exercise of the franchise by the colored race, although the abstract right to vote may remain unrestricted as to race. *Lane v. Wilson*, U.S. Okla.1939, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939) See, also, *Davis v. Schnell*, 81 F.Supp. 872 (D.C.Ala.1949), affirmed 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093. The Fourteenth Amendment, this Amendment and 42 U.S.C.A. §1971,

forbid any distinction in the voting process based upon race, irrespective of whether such distinction involves actual denial of the vote. *U.S. v. Bibb County Democratic Executive Committee*, 222 F. Supp. 493 (M.D.Ga.1962).

137.  A state government may not with impunity divide politically cohesive, geographically compact minority population between two single-member districts in which minority vote will be consistently minimized by white bloc voting merely because minority population does not exceed single district's population divided by two. *Armour v. State of Ohio,* 775 F. Supp. 1044 (N.D. Ohio 1991).

138.  The racially motivated drawing of redistricting lines, if intended to minimize or cancel voting strength of racial minority, violates both the Equal Protection Clause of Fourteenth Amendment and the Fifteenth Amendment. *Illinois Legislative Redistricting Commission v. LaPaille*, 786 F. Supp. 704 (N.D. Ill. 1992), motion to amend denied 792 F. Supp. 1110, affirmed 506 U.S. 948, 113 S. Ct. 399, 121 L.Ed.2d 325; *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S. Ct. 125, 5 L.Ed.2d 110 (1960).

139.  The Arkansas General Assembly's 2021 Congressional Redistricting Plan had the intended and deliberately discriminatory effect of racially gerrymandering or "cracking" communities of Black voters in order to reduce or eliminate the potential and effectiveness of such communities of voters to elect candidates and pass issues that they favored.

140.   A plan adopted by the General Assembly for reapportionment whereby predominantly Black populated communities are aggregated with predominantly White counties for sole purpose of preventing election of Blacks to house membership is unconstitutional. *Sims v. Baggett*, 247 F. Supp. 96 (M.D. Ala.1965).

141.   The adoption of the Arkansas 2021 Congressional Redistricting Plan by the Arkansas General Assembly resulted in the intended and deliberate abridgment of the right of Black citizens to fully and equally participate in the Federal congressional political process, and is intended to enhance the potential for continued success in electing Republican and White candidates to Congress from the Second Congressional District.

142.   The adoption of the 2021 Plan abridges the right of the Plaintiffs and other Blacks in Arkansas their rights as citizens of the United States that their vote not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude as provided by the Fifteenth Amendment to the U.S. Constitution.

143.   The 2021 Arkansas Reapportionment Plan should thereby be voided, and the Arkansas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements. Alternatively, the court should select or devise another redistricting plan that meets constitutional

standards.

## COUNT VI
### Acts 1114 and 116 Violate
### Section 2 of the Voting Rights Act

144.   Plaintiffs affirm, ratify and reallege all allegations contained in the

previous paragraphs.

145.   Section 2 of the Voting Rights Act prohibits the enforcement of any

"standard, practice, or procedure" that "results in a denial or abridgement of the right

of any citizen of the United States to vote on account of race or color, or"

membership in a language minority group. 52 U.S.C. § 10301(a).

146.   Arkansas's congressional district boundaries, as currently drawn,

"cracks" minority populations with the effect of diluting their voting strength, in

violation of Section 2 of the Voting Rights Act.

147.   Black voters in Arkansas, including in and around this area, are

politically cohesive. Elections in this area reveal a clear pattern of racially polarized

voting that allows blocs of white voters usually to defeat Black voters' preferred

candidates.

148.   The totality of the circumstances establishes that the enacted

congressional map has the effect of denying Black voters an equal opportunity to

participate in the political process and elect candidates of their choice, in violation

of Section 2 of the Voting Rights Act.

149.   By engaging in the acts and omissions alleged herein, Defendants have acted and continue to act to deny Plaintiffs' rights guaranteed by Section 2 of the Voting Rights Act. Defendants will continue to violate those rights absent relief granted by this Court.

150.   The 2021 Arkansas Reapportionment Plan should thereby be voided, and the Arkansas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements. Alternatively, the court should select or devise another redistricting measure that meets constitutional standards.

## COUNT VI
### Defendants' Violation of Article II, Section 3
### of the Constitution of the State of Arkansas

151.   Article II, Section 3 of the Constitution of the State of Arkansas provides:

> The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition.

152.   This provision of the Arkansas Constitution is very similar in wording and purpose as the equal protection clause of the Fourteenth Amendment to the

United States Constitution. Thus, the decisions of the Federal courts in interpreting that clause of the Fourteenth Amendment should largely be applicable to the interpretation of Article II, Section 3 of the Arkansas Constitution.

153.  The Arkansas General Assembly's 2021 Congressional Redistricting Plan had the discriminatory effect of racially gerrymandering or "cracking" communities of Black voters in order to reduce or eliminate the potential and effectiveness of such communities of voters to elect candidates and pass issues that they favored.

154.  The adoption of such Plan resulted in the consistent and permanent degradation of Black citizens in their participation in Federal congressional political process, and enhanced the consistent and permanent potential for continued success in electing White candidates to Congress from the Second Congressional District.

155.  The adoption of the 2021 Plan denied the Plaintiffs and other Blacks in Arkansas the equal protection of the laws as guaranteed under the "Equal Protection Clause" of the Fourteenth Amendment.

156.  The 2021 Arkansas Reapportionment Plan should thereby be voided, and the Arkansas General Assembly be ordered to reconsider such Plan and adopt one in keeping with constitutional and legal requirements. Alternatively, the court should select or devise a proposed redistricting measure that meets constitutional

standards.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

1. Declare that Acts 1114 and 1116 of the 2021 Arkansas General Assembly

violates:

>   (a) Article I § 2, clause 1 of the Constitution of the United States;
>
>   (b) The First Amendment to the Constitution of the United States;
>
>   (c) The "Privileges and Immunities Clause" of the Fourteenth Amendment to the United States Constitution;
>
>   (d) The "Equal Protection Clause" of the Fourteenth Amendment to the United States Constitution;
>
>   (e) The Fifteenth Amendment to the United States Constitution;
>
>   (f) Section 2 of the Voting Rights Act; and
>
>   (g) Article II, Section 3 of the Constitution of the State of Arkansas

2. Enjoin Defendants, as well as their agents and successors in office, from enforcing or giving any effect to the boundaries of the congressional districts as drawn in Acts 1114 and 1116, including an injunction barring Defendants from conducting any congressional elections under the enacted map;

3. Enjoin any further congressional election in Arkansas until the State of Arkansas has adopted a Congressional Reapportionment Plan that meets constitutional standards, or, alternatively

4. The Court select or devise a proposed redistricting measure that meets constitutional standards.

5. Grant such other or further relief the Court deems appropriate, including but not limited to an award of Plaintiffs' attorneys' fees and reasonable costs.

Respectfully submitted,

Richard H. Mays
Ark. Bar No. 61043
Attorney for Plaintiffs
**RICHARD MAYS LAW FIRM PLLC**
2226 Cottondale Lane – Suite 210
Little Rock, AR 72202
Tel: 501-891-6116
E-mail: rmays@richmayslaw.com
          njackson@richmayslaw.com

61

# EXHIBIT 1

Stricken language would be deleted from and underlined language would be added to present law.
Act 1114 of the Regular Session

1    State of Arkansas                     *As Engrossed: H10/6/21*
2    93rd General Assembly                 A Bill
3    Regular Session, 2021                                    HOUSE BILL 1982
4
5    By: Representative Speaks
6    By: Senator J. English
7
8                        **For An Act To Be Entitled**
9            AN ACT CONCERNING THE DEFINITION OF THE FOUR (4)
10           UNITED STATES CONGRESSIONAL DISTRICTS OF ARKANSAS; TO
11           DECLARE AN EMERGENCY; AND FOR OTHER PURPOSES.
12
13
14                             **Subtitle**
15           CONCERNING THE DEFINITION OF THE FOUR (4)
16           UNITED STATES CONGRESSIONAL DISTRICTS OF
17           ARKANSAS; AND TO DECLARE AN EMERGENCY.
18
19
20   BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
21
22        *SECTION 1.  Arkansas Code §§ 7-2-102 — 7-2-105 are amended to read as*
23   *follows:*
24        7-2-102.  First Congressional District.
25        (a)  The First Congressional District shall be composed of:
26                (1)  The counties of Arkansas, Baxter, Boone, Chicot, Clay,
27   Cleburne, Craighead, Crittenden, Cross, Desha, Fulton, Greene, Independence,
28   Izard, Jackson, Lawrence, Lee, Lincoln, Lonoke, Marion, Mississippi, Monroe,
29   Phillips, Prairie, Poinsett, Prairie, Randolph, St. Francis, Searcy, Sharp,
30   Stone, and Woodruff; and
31                (2)  The following voting districts precincts of Jefferson
32   Pulaski County as they existed on January 1, 2011 2021:
33                     (A)  19 (Dunnington) voting district 047;
34                     (B)  P15 (Dudley Lake) voting district;
35                     (C)  25 (Old River) voting district;
36                     (D)  57 (Villemont) voting district;





**EXHIBIT**

*/*

10-06-2021 12:09:33 MLD416

As Engrossed:  H10/6/21                                    HB1982

1           ~~(E)  P91 (Roberts) voting district;~~
2           ~~(F)  P851 (Humphrey) voting district; and~~
3           ~~(G)  P862 (Humphrey) voting district;~~
4           (B)  054; and
5           (C)  055
6           ~~(3)  The voting districts and voting precincts of Searcy County~~
7  ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~
8  ~~104(a)(4).~~
9      (b)  The qualified electors residing in the counties and ~~portion~~
10 portions of ~~Jefferson County and Searcy County~~ Pulaski County listed under
11 subsection (a) of this section shall elect one (1) member of the United
12 States House of Representatives.
13
14      7-2-103.  Second Congressional District.
15      (a)  The Second Congressional District shall be composed of:
16           (1)  ~~the~~ The counties of Cleburne, Conway, Faulkner, Perry,
17 ~~Pulaski,~~ Saline, Van Buren, and White; and
18           (2)  The voting precincts of Pulaski County as they existed on
19 January 1, 2021, that are not listed under § 7-2-102(a)(2) or § 7-2-
20 105(a)(2).
21      (b)  The qualified electors residing in the counties and portions of
22 Pulaski County listed under subsection (a) of this section shall elect one
23 (1) member of the United States House of Representatives.
24
25      7-2-104.  Third Congressional District.
26      (a)  The Third Congressional District shall be composed of:
27           (1)  The counties of Benton, ~~Boone,~~ Carroll, Crawford, Madison,
28 ~~Marion, Pope,~~ and Washington; and
29           (2)  ~~The voting districts and voting precincts of Crawford County~~
30 ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~
31 ~~105(a)(2);~~
32           ~~(3)  The following voting districts of Newton County as they~~
33 ~~existed on January 1, 2011:~~
34           ~~(A)  Big Creek voting district;~~
35           ~~(B)  Dogpatch voting district;~~
36           ~~(C)  Grove voting district;~~

                         2          10-06-2021 12:09:33 MLD416

1           (D)  ~~Hasty voting district;~~
2           (E)  ~~Polk voting district;~~
3           (F)  ~~Richland voting district; and~~
4           (G)  ~~White voting district;~~
5       ~~(4)  The Prairie voting district of Searcy County as it existed~~
6  ~~on January 1, 2011; and~~
7       ~~(5)~~  The ~~voting districts and~~ voting precincts of Sebastian
8  County as they existed on January 1, ~~2011~~ 2021, that are not listed under §
9  ~~7-2-105(a)(5)~~ § 7-2-105(a)(3).
10      (b)  The qualified electors residing in the counties and portions of
11 ~~Crawford County, Newton County, Searcy County, and~~ Sebastian County listed
12 under subsection (a) of this section shall elect one (1) member of the United
13 States House of Representatives.
14
15      7-2-105.  Fourth Congressional District.
16      (a)  The Fourth Congressional District shall be composed of:
17          (1)  The counties of Ashley, Bradley, Calhoun, Clark, Cleveland,
18 Columbia, Dallas, Drew, Franklin, Garland, Grant, Hempstead, Hot Spring,
19 *Howard, <u>Jefferson,</u> Johnson, Lafayette, Little River, Logan, ~~Madison,~~ Miller,*
20 Montgomery, Nevada, <u>Newton,</u> Ouachita, Pike, Polk, <u>Pope,</u> Scott, Sevier, Union,
21 and Yell;
22          (2)  The following voting ~~districts~~ precincts of ~~Crawford~~ Pulaski
23 County as they existed on January 1, ~~2011~~ 2021:
24              (A)  ~~*Alma # 1 voting district*~~ *103;*
25              (B)  ~~Alma # 4 voting district;~~
26              (C)  ~~Bidville voting district;~~
27              (D)  ~~Chester voting district;~~
28              (E)  ~~Dean Springs voting district;~~
29              (F)  ~~Dyer voting district;~~
30              (G)  ~~Eagle Crest voting district;~~
31              (H)  ~~Kibler voting district;~~
32              (I)  ~~Locke voting district;~~
33              (J)  ~~Mountain voting district;~~
34              (K)  ~~Mulberry # 1 voting district;~~
35              (L)  ~~Mulberry # 2 voting district;~~
36              (M)  ~~Mulberry # 3 voting district;~~

1              (N)  Porter voting district;
2              (O)  Vine Prairie voting district;
3              (P)  Whitley voting district; and
4              (Q)  Winfrey voting district;
5              (B)  104;
6              (C)  105;
7              (D)  124;
8              (E)  125;
9              (F)  126;
10             (G)  127;
11             (H)  131;
12             (I)  132;
13             (J)  133; and
14             (K)  135; and
15        (3)  The voting districts and voting precincts of Jefferson
16   County as they existed on January 1, 2011, that are not listed under § 7-2-
17   102(a)(2);
18        (4)  The voting districts and voting precincts of Newton County
19   as they existed on January 1, 2011, that are not listed under § 7-2-
20   104(a)(3); and
21        (5)  The following voting districts precincts of Sebastian County
22   as they existed on January 1, 2011 2021:
23             (A)  9-1-A voting district 9-2K;
24             (B)  9-1-B voting district 9-2L;
25             (C)  9-1-C voting district 9-3A;
26             (D)  9-1-D voting district 9-3B;
27             (E)  9-1-E voting district 9-3C;
28             (F)  9-1-Q voting district 9-3D;
29             (G)  9-2-E voting district;
30             (H)  9-3-E voting district 9-3E;
31             (I)(H)  9-3-F voting district; 9-3F;
32             (J)(I)  9-3-G voting district 9-3G;
33             (K)(J)  9-3-H voting district 9-3H;
34             (L)(K)  9-3-I voting district 9-3I;
35             (M)(L)  9-3-J voting district 9-3J;
36             (N)(M)  9-3-K voting district 9-3K;

1    ~~(O)~~(N)  ~~9-3-L voting district~~ 9-3L;

2    (O)  9-3M;

3    (P)  9-3N;

4    (Q)  9-3O;

5    (R)  9-3P; and

6    ~~(P)~~(S)  ~~9-3-M voting district~~ 9-4F.

7    (b)  The qualified electors residing in the counties and portions of

8    ~~Crawford County, Jefferson County, Newton County,~~ Pulaski County and

9    Sebastian County listed under subsection (a) of this section shall elect one

10   (1) member of the United States House of Representatives.

11

12   SECTION 2.  EMERGENCY CLAUSE.  It is found and determined by the

13   General Assembly of the State of Arkansas that the General Assembly is

14   responsible for establishing the four (4) United States Congressional

15   Districts in the state; that the four (4) United States Congressional

16   Districts are based on the information provided by the federal decennial

17   census by the United States Bureau of the Census; that the federal decennial

18   census data delivery was delayed; that the establishment of the four (4)

19   United States Congressional Districts is necessary to provide equal

20   representation of the citizens of Arkansas in the United States Congress; and

21   that this act is immediately necessary because the establishment of the four

22   (4) United States Congressional Districts must occur in adequate time for the

23   candidates to file for office and for the citizens of Arkansas to have a fair

24   election. Therefore, an emergency is declared to exist, and this act being

25   immediately necessary for the preservation of the public peace, health, and

26   safety shall become effective on:

27        (1)  The date of its approval by the Governor;

28        (2)  If the bill is neither approved nor vetoed by the Governor,

29   the expiration of the period of time during which the Governor may veto the

30   bill; or

31        (3)  If the bill is vetoed by the Governor and the veto is

32   overridden, the date the last house overrides the veto.

33

34                              */s/Speaks*

35        **APPROVED: BECAME LAW ON 10/13/21 WITHOUT THE GOVERNOR'S SIGNATURE.**

36

Stricken language would be deleted from and underlined language would be added to present law.
Act 1116 of the Regular Session

1   State of Arkansas          *As Engrossed:  S10/5/21 S10/6/21*
2   93rd General Assembly           A Bill
3   Regular Session, 2021                              SENATE BILL 743
4
5   By: Senator J. English
6   By: Representative Speaks
7
8                         **For An Act To Be Entitled**
9              AN ACT CONCERNING THE DEFINITION OF THE FOUR (4)
10             UNITED STATES CONGRESSIONAL DISTRICTS OF ARKANSAS; TO
11             DECLARE AN EMERGENCY; AND FOR OTHER PURPOSES.
12
13
14                              **Subtitle**
15              CONCERNING THE DEFINITION OF THE FOUR (4)
16              UNITED STATES CONGRESSIONAL DISTRICTS OF
17              ARKANSAS; AND TO DECLARE AN EMERGENCY.
18
19
20   BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
21
22       *SECTION 1.  Arkansas Code §§ 7-2-102 — 7-2-105 are amended to read as*
23   *follows:*
24       7-2-102.  First Congressional District.
25       (a)  The First Congressional District shall be composed of:
26              (1)  The counties of Arkansas, Baxter, Boone, Chicot, Clay,
27   ~~Cleburne,~~ Craighead, Crittenden, Cross, Desha, Fulton, Greene, Independence,
28   *Izard, Jackson, Lawrence, Lee, Lincoln, Lonoke,* Marion, *Mississippi, Monroe,*
29   Phillips, ~~Prairie,~~ Poinsett, Prairie, Randolph, St. Francis, Searcy, Sharp,
30   Stone, and Woodruff; and
31              (2)  The following voting ~~districts~~ precincts of ~~Jefferson~~
32   Pulaski County as they existed on January 1, ~~2011~~ 2021:
33                       (A)  ~~19 (Dunnington) voting district~~ 047;
34                       ~~(B)  P15 (Dudley Lake) voting district;~~
35                       ~~(C)  25 (Old River) voting district;~~
36                       ~~(D)  57 (Villemont) voting district;~~



10-06-2021 09:20:48 MLD414

1        ~~(E)  P91 (Roberts) voting district;~~
2        ~~(F)  P851 (Humphrey) voting district; and~~
3        ~~(G)  P862 (Humphrey) voting district;~~
4        (B)   054; and
5        (C)   055
6        ~~(3)  The voting districts and voting precincts of Searcy County~~
7   ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~
8   ~~104(a)(4).~~
9        (b)   The qualified electors residing in the counties and ~~portion~~
10  portions of ~~Jefferson County and Searcy County~~ Pulaski County listed under
11  subsection (a) of this section shall elect one (1) member of the United
12  States House of Representatives.
13
14       7-2-103.  Second Congressional District.
15       (a)   The Second Congressional District shall be composed of:
16            (1)  ~~the~~ The counties of Cleburne, Conway, Faulkner, Perry,
17  ~~Pulaski,~~ Saline, Van Buren, and White; and
18            (2)  The voting precincts of Pulaski County as they existed on
19  January 1, 2021, that are not listed under § 7-2-102(a)(2) or § 7-2-
20  105(a)(2).
21       (b)   The qualified electors residing in the counties and portions of
22  Pulaski County listed under subsection (a) of this section shall elect one
23  (1) member of the United States House of Representatives.
24
25       7-2-104.  Third Congressional District.
26       (a)   The Third Congressional District shall be composed of:
27            (1)  The counties of Benton, ~~Boone,~~ Carroll, Crawford, Madison,
28  ~~Marion, Pope,~~ and Washington; and
29            (2)  ~~The voting districts and voting precincts of Crawford County~~
30  ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~
31  ~~105(a)(2);~~
32            ~~(3)  The following voting districts of Newton County as they~~
33  ~~existed on January 1, 2011:~~
34            ~~(A)  Big Creek voting district;~~
35            ~~(B)  Dogpatch voting district;~~
36            ~~(C)  Grove voting district;~~

As Engrossed:  S10/5/21 S10/6/21                                   SB743

1                    (D)  Hasty voting district;
2                    (E)  Polk voting district;
3                    (F)  Richland voting district; and
4                    (G)  White voting district;
5            (4)  The Prairie voting district of Searcy County as it existed
6    on January 1, 2011; and
7            (5)  The voting districts and voting precincts of Sebastian
8    County as they existed on January 1, 2011 2021, that are not listed under §
9    7-2-105(a)(5) § 7-2-105(a)(3).
10       (b)  The qualified electors residing in the counties and portions of
11   Crawford County, Newton County, Searcy County, and Sebastian County listed
12   under subsection (a) of this section shall elect one (1) member of the United
13   States House of Representatives.
14
15       7-2-105.  Fourth Congressional District.
16       (a)  The Fourth Congressional District shall be composed of:
17            (1)  The counties of Ashley, Bradley, Calhoun, Clark, Cleveland,
18   Columbia, Dallas, Drew, Franklin, Garland, Grant, Hempstead, Hot Spring,
19   *Howard, Jefferson, Johnson, Lafayette, Little River, Logan, Madison, Miller,*
20   *Montgomery, Nevada, Newton, Ouachita, Pike, Polk, Pope, Scott, Sevier, Union,*
21   *and Yell;*
22            (2)  The following voting districts precincts of Crawford Pulaski
23   County as they existed on January 1, 2011 2021:
24                    (A)  *Alma # 1 voting district 103;*
25                    (B)  Alma # 4 voting district;
26                    (C)  Bidville voting district;
27                    (D)  Chester voting district;
28                    (E)  Dean Springs voting district;
29                    (F)  Dyer voting district;
30                    (G)  Eagle Crest voting district;
31                    (H)  Kibler voting district;
32                    (I)  Locke voting district;
33                    (J)  Mountain voting district;
34                    (K)  Mulberry # 1 voting district;
35                    (L)  Mulberry # 2 voting district;
36                    (M)  Mulberry # 3 voting district;

3                    10-06-2021 09:20:48 MLD414

1                          (N)  ~~Porter voting district;~~
2                          (O)  ~~Vine Prairie voting district;~~
3                          (P)  ~~Whitley voting district; and~~
4                          (Q)  ~~Winfrey voting district;~~
5                          *(B)  104;*
6                          *(C)  105;*
7                          *(D)  124;*
8                          *(E)  125;*
9                          *(F)  126;*
10                         *(G)  127;*
11                         *(H)  131;*
12                         *(I)  132;*
13                         *(J)  133; and*
14                         *(K)  135; and*
15             (3)  ~~The voting districts and voting precincts of Jefferson~~
16  ~~County as they existed on January 1, 2011, that are not listed under § 7-2-~~
17  ~~102(a)(2);~~
18             ~~(4)  The voting districts and voting precincts of Newton County~~
19  ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~
20  ~~104(a)(3); and~~
21             ~~(5)~~  The following voting ~~districts~~ *precincts* of Sebastian County
22  as they existed on January 1, ~~2011~~ *2021*:
23                          (A)  ~~*9-1-A voting district*~~ *9-2K;*
24                          (B)  ~~*9-1-B voting district*~~ *9-2L;*
25                          (C)  ~~*9-1-C voting district*~~ *9-3A;*
26                          (D)  ~~*9-1-D voting district*~~ *9-3B;*
27                          (E)  ~~*9-1-E voting district*~~ *9-3C;*
28                          (F)  ~~*9-1-Q voting district*~~ *9-3D;*
29                          (G)  ~~*9-2-E voting district;*~~
30                          ~~*(H)  9-3-E voting district*~~ *9-3E;*
31                          ~~*(I)*~~*(H)  9-3-F voting district;* *9-3F;*
32                          ~~*(J)*~~*(I)  9-3-G voting district*~~~~ *9-3G;*
33                          ~~*(K)*~~*(J)  9-3-H voting district*~~~~ *9-3H;*
34                          ~~*(L)*~~*(K)  9-3-I voting district*~~~~ *9-3I;*
35                          ~~*(M)*~~*(L)  9-3-J voting district*~~~~ *9-3J;*
36                          ~~*(N)*~~*(M)  9-3-K voting district*~~~~ *9-3K;*

As Engrossed:  S10/5/21 S10/6/21                                    SB743

| | |
|---|---|
| 1 | (O)(N)  9-3-L voting district 9-3L; |
| 2 | (O)  9-3M; |
| 3 | (P)  9-3N; |
| 4 | (Q)  9-3O; |
| 5 | (R)  9-3P; and |
| 6 | (P)(S)  9-3-M voting district 9-4F. |

7        (b)   The qualified electors residing in the counties and portions of
8  Crawford County, Jefferson County, Newton County, Pulaski County and
9  Sebastian County listed under subsection (a) of this section shall elect one
10  (1) member of the United States House of Representatives.
11
12        *SECTION 2.*   EMERGENCY CLAUSE.  It is found and determined by the
13  General Assembly of the State of Arkansas that the General Assembly is
14  responsible for establishing the four (4) United States Congressional
15  Districts in the state; that the four (4) United States Congressional
16  Districts are based on the information provided by the federal decennial
17  census by the United States Bureau of the Census; that the federal decennial
18  census data delivery was delayed; that the establishment of the four (4)
19  United States Congressional Districts is necessary to provide equal
20  representation of the citizens of Arkansas in the United States Congress; and
21  that this act is immediately necessary because the establishment of the four
22  (4) United States Congressional Districts must occur in adequate time for the
23  candidates to file for office and for the citizens of Arkansas to have a fair
24  election. Therefore, an emergency is declared to exist, and this act being
25  immediately necessary for the preservation of the public peace, health, and
26  safety shall become effective on:
27              (1)   The date of its approval by the Governor;
28              (2)   If the bill is neither approved nor vetoed by the Governor,
29  the expiration of the period of time during which the Governor may veto the
30  bill; or
31              (3)   If the bill is vetoed by the Governor and the veto is
32  overridden, the date the last house overrides the veto.
33
34                           */s/J. English*
35
36        **APPROVED: BECAME LAW ON 10/13/21 WITHOUT THE GOVERNOR'S SIGNATURE.**

# EXHIBIT 2

Congressional Plan

# HB 1982- As Amended Rep. Speaks 1

AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 10/5/2021 12:35:17 PM Last Edit:10/5/2021 12:35:01 PM

EDGE 2020 Professional Redistricting

Congressional Plan

# HB 1982- As Amended Rep. Speaks 2







AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 10/5/2021 12:40:42 PM    Last Edit:10/5/2021 12:37:34 PM



AutoBound Edge MAP HB 1982 - As Amended Rep. Speaks 3
Case 4:22-cv-00212-JM-DPS-PSH Document 1 Filed 03/07/22 Page 76 of 170
Plan Type and Name: Congressional:Copy of CD -

# Table of Contents

District: 1 ......................................................................................................................................................................................... 2
District: 2 ......................................................................................................................................................................................... 3
District: 3 ......................................................................................................................................................................................... 4
District: 4 ......................................................................................................................................................................................... 5

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:    10/5/2021 12:42:41 PM   Plan Last Edited on: 10/5/2021 12:37:34 PM        Page: 1



AutoBound Edge MAP HB 1982- As Amended Rep. Speaks 3
Case 4:22-cv-00213-JM-DRS-DPM Document 1 Filed 03/07/22 Page 77 of 170
Plan Type and Name: Congressional:Copy of CD -

# District: 1



Ideal Population: 752,881　　　Deviation:　　-0.05 %　　　Total Population: **752,509**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:　10/5/2021 12:42:41 PM　Plan Last Edited on: 10/5/2021 12:37:34 PM　　　Page: 2





**District: 2**

Ideal Population: 752,881          Deviation:      -0.02 %          Total Population: **752,710**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:   10/5/2021 12:42:42 PM   Plan Last Edited on: 10/5/2021 12:37:34 PM          Page: 3





AutoBound Edge MAP HB 1982- As Amended Rep. Speaks 3 Plan Type and Name: Congressional:Copy of CD -

Ideal Population: 752,881 Deviation: 0.04 % Total Population: **753,219**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/5/2021 12:42:42 PM Plan Last Edited on: 10/5/2021 12:37:34 PM Page: 4

EDGE 2020 Professional Redistricting





AutoBound Edge MAP HB 1982- As Amended Rep. Speaks 3 Plan Type and Name: Congressional:Copy of CD -

Ideal Population: 752,881 Deviation: 0.03 % Total Population: **753,086**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/5/2021 12:42:42 PM Plan Last Edited on: 10/5/2021 12:37:34 PM

EDGE 2020 Professional Redistricting



# EXHIBIT 3

**Stricken language would be deleted from and underlined language would be added to present law.**
**Act 1116 of the Regular Session**

| | |
|---|---|
| 1 | State of Arkansas |
| 2 | 93rd General Assembly |
| 3 | Regular Session, 2021 |

*As Engrossed:  S10/5/21 S10/6/21*

# A Bill

SENATE BILL 743

4
5 By: Senator J. English
6 By: Representative Speaks
7

## For An Act To Be Entitled

9      AN ACT CONCERNING THE DEFINITION OF THE FOUR (4)
10      UNITED STATES CONGRESSIONAL DISTRICTS OF ARKANSAS; TO
11      DECLARE AN EMERGENCY; AND FOR OTHER PURPOSES.
12
13

## Subtitle

15      CONCERNING THE DEFINITION OF THE FOUR (4)
16      UNITED STATES CONGRESSIONAL DISTRICTS OF
17      ARKANSAS; AND TO DECLARE AN EMERGENCY.
18
19
20 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
21
22      SECTION 1.  *Arkansas Code §§ 7-2-102 — 7-2-105 are amended to read as*
23 *follows:*
24      7-2-102.  First Congressional District.
25      (a)  The First Congressional District shall be composed of:
26           (1)  The counties of Arkansas, Baxter, Boone, Chicot, Clay,
27 Cleburne, Craighead, Crittenden, Cross, Desha, Fulton, Greene, Independence,
28 *Izard, Jackson, Lawrence, Lee, Lincoln, Lonoke,* Marion, *Mississippi, Monroe,*
29 Phillips, Prairie, Poinsett, Prairie, Randolph, St. Francis, Searcy, Sharp,
30 Stone, and Woodruff; and
31           (2)  The following voting districts precincts of Jefferson
32 Pulaski County as they existed on January 1, 2011 2021:
33                (A)  19 (Dunnington) voting district 047;
34                (B)  P15 (Dudley Lake) voting district;
35                (C)  25 (Old River) voting district;
36                (D)  57 (Villemont) voting district;





EXHIBIT
3

10-06-2021 09:20:48 MLD414

1                              (E)  P91 (Roberts) voting district;

2                              (F)  P851 (Humphrey) voting district; and

3                              (G)  P862 (Humphrey) voting district;

4                              *(B)  054; and*

5                              *(C)  055*

6                         (3)  The voting districts and voting precincts of Searcy County

7    as they existed on January 1, 2011, that are not listed under § 7-2-

8    104(a)(4).

9         (b)   The qualified electors residing in the counties and *portion*

10   *portions* of Jefferson County and Searcy County Pulaski County listed under

11   subsection (a) of this section shall elect one (1) member of the United

12   States House of Representatives.

13

14        7-2-103.  Second Congressional District.

15        (a)   The Second Congressional District shall be composed of:

16             (1)  the The counties of Cleburne, Conway, Faulkner, Perry,

17   Pulaski, Saline, Van Buren, and White; and

18             (2)  The voting precincts of Pulaski County as they existed on

19   January 1, 2021, that are not listed under § 7-2-102(a)(2) or § 7-2-

20   105(a)(2).

21        (b)   The qualified electors residing in the counties and portions of

22   Pulaski County listed under subsection (a) of this section shall elect one

23   (1) member of the United States House of Representatives.

24

25        7-2-104.  Third Congressional District.

26        (a)   The Third Congressional District shall be composed of:

27             (1)   The counties of Benton, Boone, Carroll, Crawford, Madison,

28   Marion, Pope, and Washington; and

29             (2)  The voting districts and voting precincts of Crawford County

30   as they existed on January 1, 2011, that are not listed under § 7-2-

31   105(a)(2);

32             (3)  The following voting districts of Newton County as they

33   existed on January 1, 2011:

34                    (A)  Big Creek voting district;

35                    (B)  Dogpatch voting district;

36                    (C)  Grove voting district;

As Engrossed:  S10/5/21 S10/6/21                                    SB743

1                         (D)  Hasty voting district;
2                         (E)  Polk voting district;
3                         (F)  Richland voting district; and
4                         (G)  White voting district;
5              (4)  The Prairie voting district of Searcy County as it existed
6   on January 1, 2011; and
7              (5)  The voting districts and voting precincts of Sebastian
8   County as they existed on January 1, 2011 2021, that are not listed under §
9   7-2-105(a)(5) § 7-2-105(a)(3).
10       (b)  The qualified electors residing in the counties and portions of
11  Crawford County, Newton County, Searcy County, and Sebastian County listed
12  under subsection (a) of this section shall elect one (1) member of the United
13  States House of Representatives.
14
15       7-2-105.  Fourth Congressional District.
16       (a)  The Fourth Congressional District shall be composed of:
17              (1)  The counties of Ashley, Bradley, Calhoun, Clark, Cleveland,
18  Columbia, Dallas, Drew, Franklin, Garland, Grant, Hempstead, Hot Spring,
19  *Howard,* Jefferson, *Johnson, Lafayette, Little River, Logan,* Madison, *Miller,*
20  *Montgomery, Nevada,* Newton, *Ouachita, Pike, Polk,* Pope, *Scott, Sevier, Union,*
21  *and Yell;*
22              (2)  The following voting districts precincts of Crawford Pulaski
23  County as they existed on January 1, 2011 2021:
24                         (A)  *Alma # 1 voting district* 103;
25                         (B)  Alma # 4 voting district;
26                         (C)  Bidville voting district;
27                         (D)  Chester voting district;
28                         (E)  Dean Springs voting district;
29                         (F)  Dyer voting district;
30                         (G)  Eagle Crest voting district;
31                         (H)  Kibler voting district;
32                         (I)  Locke voting district;
33                         (J)  Mountain voting district;
34                         (K)  Mulberry # 1 voting district;
35                         (L)  Mulberry # 2 voting district;
36                         (M)  Mulberry # 3 voting district;

                              3              10-06-2021 09:20:48 MLD414

As Engrossed:  S10/5/21 S10/6/21                                    SB743

1                         (N)  Porter voting district;
2                         (O)  Vine Prairie voting district;
3                         (P)  Whitley voting district; and
4                         (Q)  Winfrey voting district;
5                         *(B)  104;*
6                         *(C)  105;*
7                         *(D)  124;*
8                         *(E)  125;*
9                         *(F)  126;*
10                        *(G)  127;*
11                        *(H)  131;*
12                        *(I)  132;*
13                        *(J)  133; and*
14                        *(K)  135; and*
15            (3)   The voting districts and voting precincts of Jefferson
16  County as they existed on January 1, 2011, that are not listed under § 7-2-
17  102(a)(2);
18            (4)  The voting districts and voting precincts of Newton County
19  as they existed on January 1, 2011, that are not listed under § 7-2-
20  104(a)(3); and
21            (5)  The following voting districts precincts of Sebastian County
22  as they existed on January 1, 2011 2021:
23                        (A)  *9-1-A voting district* 9-2K;
24                        (B)  *9-1-B voting district* 9-2L;
25                        (C)  *9-1-C voting district* 9-3A;
26                        (D)  *9-1-D voting district* 9-3B;
27                        (E)  *9-1-E voting district* 9-3C;
28                        (F)  *9-1-Q voting district* 9-3D;
29                        (G)  *9-2-E voting district;*
30                        *(H)  9-3-E voting district* 9-3E;
31                        *(I)(H)  9-3-F voting district; 9-3F;*
32                        *(J)(I)  9-3-G voting district* 9-3G;
33                        *(K)(J)  9-3-H voting district* 9-3H;
34                        *(L)(K)  9-3-I voting district* 9-3I;
35                        *(M)(L)  9-3-J voting district* 9-3J;
36                        *(N)(M)  9-3-K voting district* 9-3K;

As Engrossed:   S10/5/21 S10/6/21                                    SB743

1           ~~(O)~~(N)  ~~9-3-L voting district~~ 9-3L;
2           (O)  9-3M;
3           (P)  9-3N;
4           (Q)  9-3O;
5           (R)  9-3P; and
6           ~~(P)~~(S)  ~~9-3-M voting district~~ 9-4F.
7      (b)   The qualified electors residing in the counties and portions of
8  ~~Crawford County, Jefferson County, Newton County,~~ Pulaski County and
9  Sebastian County listed under subsection (a) of this section shall elect one
10  (1) member of the United States House of Representatives.
11
12      *SECTION 2.*   EMERGENCY CLAUSE.  It is found and determined by the
13  General Assembly of the State of Arkansas that the General Assembly is
14  responsible for establishing the four (4) United States Congressional
15  Districts in the state; that the four (4) United States Congressional
16  Districts are based on the information provided by the federal decennial
17  census by the United States Bureau of the Census; that the federal decennial
18  census data delivery was delayed; that the establishment of the four (4)
19  United States Congressional Districts is necessary to provide equal
20  representation of the citizens of Arkansas in the United States Congress; and
21  that this act is immediately necessary because the establishment of the four
22  (4) United States Congressional Districts must occur in adequate time for the
23  candidates to file for office and for the citizens of Arkansas to have a fair
24  election. Therefore, an emergency is declared to exist, and this act being
25  immediately necessary for the preservation of the public peace, health, and
26  safety shall become effective on:
27           (1)   The date of its approval by the Governor;
28           (2)   If the bill is neither approved nor vetoed by the Governor,
29  the expiration of the period of time during which the Governor may veto the
30  bill; or
31           (3)   If the bill is vetoed by the Governor and the veto is
32  overridden, the date the last house overrides the veto.
33
34                              */s/J. English*
35
36      **APPROVED: BECAME LAW ON 10/13/21 WITHOUT THE GOVERNOR'S SIGNATURE.**

# EXHIBIT 4

Congressional Plan

# SB 743 - Senator English 1





EXHIBIT
4


EDGE 2020
Professional Redistricting

Congressional Plan

# SB 743  - Senator English 2







AutoBound Edge MAP - Based on:  2020 Census Geography, 2020 PL94-171

Map Date: 10/4/2021 5:45:52 PM     Last Edit:10/4/2021 5:42:17 PM



# Table of Contents

District: 1 ............................................................................................................................................................................ 2
District: 2 ............................................................................................................................................................................ 3
District: 3 ............................................................................................................................................................................ 4
District: 4 ............................................................................................................................................................................ 5

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:   10/4/2021 6:21:57 PM   Plan Last Edited on: 10/4/2021 6:21:30 PM        Page: 1





**AutoBound Edge MAP** SB 743 - Senator English 3 Plan Type and Name: Congressional:CD - 10-4-21

Ideal Population: 752,881 Deviation: -0.37 % Total Population: **750,110**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/4/2021 6:21:57 PM Plan Last Edited on: 10/4/2021 6:21:30 PM Page: 2

EDGE 2020 Professional Redistricting





**AutoBound Edge MAP** SB 743 - Senator English 3

Plan Type and Name: Congressional:CD - 10-4-21

Ideal Population: 752,881 Deviation: -0.33 % Total Population: **750,388**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/4/2021 6:21:57 PM Plan Last Edited on: 10/4/2021 6:21:30 PM

EDGE 2020 Professional Redistricting



# District: 3



| Ideal Population: 752,881 | Deviation: | 0.39 % | Total Population: **755,800** |
|---|---|---|---|

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:    10/4/2021 6:21:57 PM    Plan Last Edited on: 10/4/2021 6:21:30 PM          Page: 4





**AutoBound Edge MAP** SB 743 - Senator English 3 Plan Type and Name: Congressional:CD - 10-4-21

Ideal Population: 752,881 Deviation: 0.31 % Total Population: **755,226**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/4/2021 6:21:57 PM Plan Last Edited on: 10/4/2021 6:21:30 PM Page: 5

EDGE 2020 Professional Redistricting



## SB 743 – Senator English 4

Pulaski County Detail:



## SB 743 – Senator English 4

Sebastian County Detail:



# EXHIBIT 5



# EXHIBIT 6

Stricken language would be deleted from and underlined language would be added to present law.

1    State of Arkansas
2    93rd General Assembly                    **A Bill**
3    Regular Session, 2021                                        SENATE BILL 727
4
5    By: Senators C. Tucker, Elliott, L. Chesterfield
6
7                            **For An Act To Be Entitled**
8           AN ACT CONCERNING THE FEDERAL DECENNIAL CENSUS AND
9           THE BOUNDARIES OF CONGRESSIONAL DISTRICTS; AND FOR
10          OTHER PURPOSES.
11
12
13                                  **Subtitle**
14          CONCERNING THE FEDERAL DECENNIAL CENSUS
15          AND THE BOUNDARIES OF CONGRESSIONAL
16          DISTRICTS.
17
18
19   BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
20
21          SECTION 1.  Arkansas Code § 7-2-102 is amended to read as follows:
22          7-2-102.  First Congressional District.
23          (a)  The First Congressional District shall be composed of~~:~~
24               ~~(1)  The~~ the counties of ~~Arkansas,~~ Baxter, Boone, ~~Chicot,~~ Clay,
25   Cleburne, Craighead, ~~Crittenden,~~ Cross, ~~Desha,~~ Faulkner, Fulton, Greene,
26   Independence, Izard, Jackson, Lawrence, ~~Lee, Lincoln, Lonoke, Mississippi,~~
27   ~~Monroe, Phillips, Prairie,~~ Madison, Marion, Mississippi, Newton, Poinsett,
28   Randolph, ~~St. Francis,~~ Searcy, Sharp, Stone, White, and Woodruff~~;~~
29               ~~(2)  The following voting districts of Jefferson County as they~~
30   ~~existed on January 1, 2011:~~
31                       ~~(A)  19 (Dunnington) voting district;~~
32                       ~~(B)  P15 (Dudley Lake) voting district;~~
33                       ~~(C)  25 (Old River) voting district;~~
34                       ~~(D)  57 (Villemont) voting district;~~
35                       ~~(E)  P91 (Roberts) voting district;~~
36                       ~~(F)  P851 (Humphrey) voting district; and~~





EXHIBIT
6

09/24/2021 3:01:24 PM MLD390

1              (G) P862 (Humphrey) voting district; and
2         (3) The voting districts and voting precincts of Searcy County
3    as they existed on January 1, 2011, that are not listed under § 7-2-
4    104(a)(4).
5         (b)  The qualified electors residing in the counties and portion of
6    Jefferson County and Searcy County listed under subsection (a) of this
7    section shall elect one (1) member of the United States House of
8    Representatives.
9
10        SECTION 2.  Arkansas Code § 7-2-103 is amended to read as follows:
11        7-2-103.  Second Congressional District.
12        (a)  The Second Congressional District shall be composed of the
13   counties of Conway, Faulkner, Perry, Arkansas, Ashley, Bradley, Chicot,
14   Cleveland, Crittenden, Desha, Drew, Jefferson, Lee, Lincoln, Lonoke, Monroe,
15   Phillips, Prairie, Pulaski, Saline, Van Buren, and White and St. Francis.
16        (b)  The qualified electors residing in the counties listed under
17   subsection (a) of this section shall elect one (1) member of the United
18   States House of Representatives.
19
20        SECTION 3.  Arkansas Code § 7-2-104 is amended to read as follows:
21        7-2-104.  Third Congressional District.
22        (a)  The Third Congressional District shall be composed of:
23        (1) The the counties of Benton, Boone, Carroll, Crawford,
24   Sebastian, Marion, Pope, and Washington;
25        (2) The voting districts and voting precincts of Crawford County
26   as they existed on January 1, 2011, that are not listed under § 7-2-
27   105(a)(2);
28        (3) The following voting districts of Newton County as they
29   existed on January 1, 2011:
30              (A) Big Creek voting district;
31              (B) Dogpatch voting district;
32              (C) Grove voting district;
33              (D) Hasty voting district;
34              (E) Polk voting district;
35              (F) Richland voting district; and
36              (G) White voting district;

1           (4) The Prairie voting district of Searcy County as it existed
2  on January 1, 2011; and
3           (5) The voting districts and voting precincts of Sebastian
4  County as they existed on January 1, 2011, that are not listed under § 7-2-
5  105(a)(5).
6      (b)  The qualified electors residing in the counties and portions of
7  Crawford County, Newton County, Searcy County, and Sebastian County listed
8  under subsection (a) of this section shall elect one (1) member of the United
9  States House of Representatives.
10
11      SECTION 4.  Arkansas Code § 7-2-105 is amended to read as follows:
12      7-2-105.  Fourth Congressional District.
13      (a)  The Fourth Congressional District shall be composed of:
14           (1) The the counties of Ashley, Bradley, Calhoun, Clark,
15  Cleveland, Columbia, Conway, Dallas, Drew, Franklin, Garland, Grant,
16  Hempstead, Hot Spring, Howard, Johnson, Lafayette, Little River, Logan,
17  Madison, Miller, Montgomery, Nevada, Ouachita, Perry, Pike, Polk, Pope,
18  Saline, Scott, Sevier, Union, Van Buren, and Yell;
19           (2) The following voting districts of Crawford County as they
20  existed on January 1, 2011:
21                  (A) Alma # 1 voting district;
22                  (B) Alma # 4 voting district;
23                  (C) Bidville voting district;
24                  (D) Chester voting district;
25                  (E) Dean Springs voting district;
26                  (F) Dyer voting district;
27                  (G) Eagle Crest voting district;
28                  (H) Kibler voting district;
29                  (I) Locke voting district;
30                  (J) Mountain voting district;
31                  (K) Mulberry # 1 voting district;
32                  (L) Mulberry # 2 voting district;
33                  (M) Mulberry # 3 voting district;
34                  (N) Porter voting district;
35                  (O) Vine Prairie voting district;
36                  (P) Whitley voting district; and

SB727

```
1                      (Q)  Winfrey voting district;
2              (3)  The voting districts and voting precincts of Jefferson
3    County as they existed on January 1, 2011, that are not listed under § 7-2-
4    102(a)(2);
5              (4)  The voting districts and voting precincts of Newton County
6    as they existed on January 1, 2011, that are not listed under § 7-2-
7    104(a)(3); and
8              (5)  The following voting districts of Sebastian County as they
9    existed on January 1, 2011:
10                     (A)  9-1-A voting district;
11                     (B)  9-1-B voting district;
12                     (C)  9-1-C voting district;
13                     (D)  9-1-D voting district;
14                     (E)  9-1-E voting district;
15                     (F)  9-1-Q voting district;
16                     (G)  9-2-E voting district;
17                     (H)  9-3-E voting district;
18                     (I)  9-3-F voting district;
19                     (J)  9-3-G voting district;
20                     (K)  9-3-H voting district;
21                     (L)  9-3-I voting district;
22                     (M)  9-3-J voting district;
23                     (N)  9-3-K voting district;
24                     (O)  9-3-L voting district; and
25                     (P)  9-3-M voting district.
26        (b)  The qualified electors residing in the counties and portions of
27   Crawford County, Jefferson County, Newton County, and Sebastian County listed
28   under subsection (a) of this section shall elect one (1) member of the United
29   States House of Representatives.
30
31
32
33
34
35
36
```

Congressional Plan
# SB 727 Sen. Tucker 1







AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/23/2021 12:42:35 PM    Last Edit:9/23/2021 12:39:55 PM



Congressional Plan
# SB 727- Sen.Tucker 2





AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/23/2021 12:45:19 PM    Last Edit:9/23/2021 12:39:55 PM





SB 727- Sen. Tucker 3

# Table of Contents

District: 1 ................................................................................................................................................................................................................................... 2
District: 2 ................................................................................................................................................................................................................................... 3
District: 3 ................................................................................................................................................................................................................................... 4
District: 4 ................................................................................................................................................................................................................................... 5

**Based on: 2020 Census Geography, 2010 PL94-171**



SB 727- Sen. Tucker 3



**District: 1**

Ideal Population: 752,881     Deviation:    0.34 %     Total Population: **755,464**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:   9/23/2021 12:44:43 PM   Plan Last Edited on: 9/23/2021 12:39:55 PM     Page: 2


EDGE 2020
Professional Redistricting

AutoBound Edge MAP

# SB 727- Sen. Tucker 3

Plan Type and Name: Congressional:Sen. Tucker

Ideal Population: 752,881 Deviation: 0.69 % Total Population: **758,102**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/23/2021 12:44:43 PM Plan Last Edited on: 9/23/2021 12:39:55 PM

EDGE 2020 Professional Redistricting



AutoBound Edge MAP

# SB 727- Sen. Tucker 3

Plan Type and Name: Congressional:Sen. Tucker

Ideal Population: 752,881 Deviation: -0.86 % Total Population: **746,396**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/23/2021 12:44:43 PM Plan Last Edited on: 9/23/2021 12:39:55 PM

EDGE 2020 Professional Redistricting



# SB 727- Sen. Tucker 3

## District: 4



Ideal Population: 752,881     Deviation:    -0.18 %     Total Population: **751,562**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:   9/23/2021 12:44:43 PM   Plan Last Edited on: 9/23/2021 12:39:55 PM     Page: 5



# EXHIBIT 7

Stricken language would be deleted from and underlined language would be added to present law.

1    State of Arkansas
2    93rd General Assembly          **A Bill**
3    Regular Session, 2021                              SENATE BILL 728
4
5    By: Senators Elliott, L. Chesterfield, C. Tucker, K. Ingram
6    By: Representatives McCullough, Scott, Ennett, D. Garner
7
8                        **For An Act To Be Entitled**
9               AN ACT CONCERNING THE ESTABLISHMENT OF THE FOUR (4)
10              CONGRESSIONAL DISTRICTS IN ARKANSAS BASED UPON THE
11              MOST RECENT FEDERAL DECENNIAL CENSUS DATA; AND FOR
12              OTHER PURPOSES.
13
14
15                              **Subtitle**
16              CONCERNING THE ESTABLISHMENT OF THE FOUR
17              CONGRESSIONAL DISTRICTS IN ARKANSAS BASED
18              UPON THE MOST RECENT CENSUS DATA.
19
20
21   BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
22
23       SECTION 1.  Arkansas Code § 7-2-102 is amended to read as follows:
24       7-2-102.  First Congressional District.
25       (a)   The First Congressional District shall be composed of~~:~~
26              ~~(1)  The~~ the counties of ~~Arkansas, Baxter, Chicot,~~ Clay,
27   Cleburne, Conway, Craighead, ~~Crittenden,~~ Cross, ~~Desha,~~ Faulkner, Fulton,
28   Greene, Independence, Izard, Jackson, Lawrence, ~~Lee, Lincoln,~~ Lonoke,
29   Mississippi, ~~Monroe, Phillips, Prairie,~~ Poinsett, Prairie, Randolph, ~~St.~~
30   ~~Francis,~~ Searcy, Sharp, Stone, Van Buren, White, and  Woodruff~~;~~
31              ~~(2)  The following voting districts of Jefferson County as they~~
32   ~~existed on January 1, 2011:~~
33                      ~~(A)  19 (Dunnington) voting district;~~
34                      ~~(B)  P15 (Dudley Lake) voting district;~~
35                      ~~(C)  25 (Old River) voting district;~~
36                      ~~(D)  57 (Villemont) voting district;~~





**EXHIBIT**

7

PENGAD 800-631-6989

09/24/2021 4:19:41 PM MLD389

SB728

~~1          (E)  P91 (Roberts) voting district;~~

~~2          (F)  P851 (Humphrey) voting district; and~~

~~3          (G)  P862 (Humphrey) voting district; and~~

4          ~~(3)  The voting districts and voting precincts of Searcy County~~

5     ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~

6     ~~104(a)(4).~~

7          (b)  The qualified electors residing in the counties ~~and portion of~~

8     ~~Jefferson County and Searcy County~~ listed under subsection (a) of this

9     section shall elect one (1) member of the United States House of

10    Representatives.

11

12         SECTION 2.  Arkansas Code § 7-2-103 is amended to read as follows:

13         7-2-103.  Second Congressional District.

14         (a)  The Second Congressional District shall be composed of the

15    counties of ~~Conway, Faulkner, Perry,~~ <u>Arkansas, Ashley, Bradley, Calhoun,</u>

16    <u>Chicot, Cleveland, Crittenden, Dallas, Desha, Drew, Jefferson, Lee, Lincoln,</u>

17    <u>Monroe, Ouachita, Phillips,</u> Pulaski, ~~Saline, Van Buren, and White~~ <u>St.</u>

18    <u>Francis, and Union</u>.

19         (b)  The qualified electors residing in the counties listed under

20    subsection (a) of this section shall elect one (1) member of the United

21    States House of Representatives.

22

23         SECTION 3.  Arkansas Code § 7-2-104 is amended to read as follows:

24         7-2-104.  Third Congressional District.

25         (a)  The Third Congressional District shall be composed of~~:~~

26              ~~(1)  The~~ <u>the</u> counties of <u>Baxter,</u> Benton, Boone, Carroll,

27    Crawford, Franklin, Madison, Marion, <u>Newton,</u> ~~Pope,~~ and Washington~~;~~

28              ~~(2)  The voting districts and voting precincts of Crawford County~~

29    ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~

30    ~~105(a)(2);~~

31              ~~(3)  The following voting districts of Newton County as they~~

32    ~~existed on January 1, 2011:~~

33                   ~~(A)  Big Creek voting district;~~

34                   ~~(B)  Dogpatch voting district;~~

35                   ~~(C)  Grove voting district;~~

36                   ~~(D)  Hasty voting district;~~

2                      09/24/2021 4:19:41 PM MLD389

1              (E)  Polk voting district;
2              (F)  Richland voting district; and
3              (G)  White voting district;
4         (4)  The Prairie voting district of Searcy County as it existed
5    on January 1, 2011; and
6              (5)  The voting districts and voting precincts of Sebastian
7    County as they existed on January 1, 2011, that are not listed under § 7-2-
8    105(a)(5).
9       (b)   The qualified electors residing in the counties and portions of
10   Crawford County, Newton County, Searcy County, and Sebastian County listed
11   under subsection (a) of this section shall elect one (1) member of the United
12   States House of Representatives.
13
14      SECTION 4.  Arkansas Code § 7-2-105 is amended to read as follows:
15      7-2-105.  Fourth Congressional District.
16      (a)  The Fourth Congressional District shall be composed of:
17          (1)  The the counties of Ashley, Bradley, Calhoun, Clark,
18   Cleveland, Columbia, Dallas, Drew, Franklin, Garland, Grant, Hempstead, Hot
19   Spring, Howard, Johnson, Lafayette, Little River, Logan, Madison, Miller,
20   Montgomery, Nevada, Ouachita, Perry, Pike, Polk, Pope, Saline, Scott,
21   Sebastian, Sevier, Union, and Yell;
22          (2)  The following voting districts of Crawford County as they
23   existed on January 1, 2011:
24              (A)  Alma # 1 voting district;
25              (B)  Alma # 4 voting district;
26              (C)  Bidville voting district;
27              (D)  Chester voting district;
28              (E)  Dean Springs voting district;
29              (F)  Dyer voting district;
30              (G)  Eagle Crest voting district;
31              (H)  Kibler voting district;
32              (I)  Locke voting district;
33              (J)  Mountain voting district;
34              (K)  Mulberry # 1 voting district;
35              (L)  Mulberry # 2 voting district;
36              (M)  Mulberry # 3 voting district;

```
1                        (N)  Porter voting district;
2                        (O)  Vine Prairie voting district;
3                        (P)  Whitley voting district; and
4                        (Q)  Winfrey voting district;
5               (3)  The voting districts and voting precincts of Jefferson
6     County as they existed on January 1, 2011, that are not listed under § 7-2-
7     102(a)(2);
8               (4)  The voting districts and voting precincts of Newton County
9     as they existed on January 1, 2011, that are not listed under § 7-2-
10    104(a)(3); and
11              (5)  The following voting districts of Sebastian County as they
12    existed on January 1, 2011:
13                        (A)  9-1-A voting district;
14                        (B)  9-1-B voting district;
15                        (C)  9-1-C voting district;
16                        (D)  9-1-D voting district;
17                        (E)  9-1-E voting district;
18                        (F)  9-1-Q voting district;
19                        (G)  9-2-E voting district;
20                        (H)  9-3-E voting district;
21                        (I)  9-3-F voting district;
22                        (J)  9-3-G voting district;
23                        (K)  9-3-H voting district;
24                        (L)  9-3-I voting district;
25                        (M)  9-3-J voting district;
26                        (N)  9-3-K voting district;
27                        (O)  9-3-L voting district; and
28                        (P)  9-3-M voting district.
29         (b)    The qualified electors residing in the counties and portions of
30    Crawford County, Jefferson County, Newton County, and Sebastian County listed
31    under subsection (a) of this section shall elect one (1) member of the United
32    States House of Representatives.
33
34
35
36
```

Congressional Plan
# SB 728- Sen. Elliott 1





AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/23/2021 12:52:05 PM    Last Edit:9/23/2021 12:12:09 PM



Congressional Plan
# SB 728- Sen. Elliott 2





AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/23/2021 12:54:56 PM    Last Edit:9/23/2021 12:12:09 PM





**AutoBound Edge MAP**   SB 728- Sen. Elliott 3   Plan Type and Name: Congressional:Sen. Elliot

# Table of Contents

District: 1 ............................................................................................................................................................................................................... 2
District: 2 ............................................................................................................................................................................................................... 3
District: 3 ............................................................................................................................................................................................................... 4
District: 4 ............................................................................................................................................................................................................... 5

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:   9/23/2021 12:53:55 PM   Plan Last Edited on: 9/23/2021 12:12:09 PM          Page: 1



AutoBound Edge MAP    Case 4:22-cv-00213-JM-DRS-DPM   Document 1   Filed 03/07/22   Page 119 of 170   Plan Type and Name: Congressional:Sen. Elliot

SB 728- Sen. Elliott 3

# District: 1



Ideal Population: 752,881          Deviation:          0.24 %          Total Population: **754,700**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:    9/23/2021 12:53:55 PM   Plan Last Edited on: 9/23/2021 12:12:09 PM          Page: 2



**AutoBound Edge MAP**

# SB 728- Sen. Elliott 3

Plan Type and Name: Congressional:Sen. Elliot

Ideal Population: 752,881 Deviation: -0.55 % Total Population: **748,730**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/23/2021 12:53:55 PM Plan Last Edited on: 9/23/2021 12:12:09 PM

EDGE 2020 Professional Redistricting



**AutoBound Edge MAP** SB 728- Sen. Elliott 3                    Plan Type and Name: Congressional:Sen. Elliot



**District: 3**

Ideal Population: 752,881          Deviation:          0.32 %          Total Population: **755,266**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:     9/23/2021 12:53:55 PM   Plan Last Edited on: 9/23/2021 12:12:09 PM          Page: 4





AutoBound Edge MAP **SB 728- Sen. Elliott 3** Plan Type and Name: Congressional:Sen. Elliot

Ideal Population: 752,881 Deviation: -0.01 % Total Population: **752,828**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/23/2021 12:53:56 PM Plan Last Edited on: 9/23/2021 12:12:09 PM Page: 5

EDGE 2020 Professional Redistricting



# EXHIBIT 8

**Stricken language would be deleted from and underlined language would be added to present law.**

| | |
|---|---|
| 1 | State of Arkansas |
| 2 | 93rd General Assembly |
| 3 | Regular Session, 2021 |

# A Bill

SENATE BILL 720

5   By: Senator M. Johnson

### For An Act To Be Entitled

AN ACT TO AMEND THE FOUR CONGRESSIONAL DISTRICTS OF
ARKANSAS; AND FOR OTHER PURPOSES.

### Subtitle

TO AMEND THE FOUR CONGRESSIONAL DISTRICTS
OF ARKANSAS.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:

SECTION 1.  Arkansas Code § 7-2-102 is amended to read as follows:

7-2-102.  First Congressional District.

(a)  The First Congressional District shall be composed of:

(1)  The the counties of Arkansas, Baxter, Chicot, Clay,
Cleburne, Craighead, Crittenden, Cross, Desha, Fulton, Greene, Independence,
Izard, Jackson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe,
Phillips, Prairie, Poinsett, Prairie, Randolph, St. Francis, Sharp, St.
Francis, Stone, White, and Woodruff;

(2)  The following voting districts of Jefferson County as they
existed on January 1, 2011:

(A)  19 (Dunnington) voting district;

(B)  P15 (Dudley Lake) voting district;

(C)  25 (Old River) voting district;

(D)  57 (Villemont) voting district;

(E)  P91 (Roberts) voting district;

(F)  P851 (Humphrey) voting district; and

(G)  P862 (Humphrey) voting district; and

(3)  The voting districts and voting precincts of Searcy County




EXHIBIT
8

09/09/2021 8:09:04 AM MLD373

1  as they existed on January 1, 2011, that are not listed under § 7-2-
2  104(a)(4).
3      (b)  The qualified electors residing in the counties and portion of
4  Jefferson County and Searcy County listed under subsection (a) of this
5  section shall elect one (1) member of the United States House of
6  Representatives.
7
8      SECTION 2.  Arkansas Code § 7-2-103 is amended to read as follows:
9      7-2-103.  Second Congressional District.
10     (a)  The Second Congressional District shall be composed of the
11  counties of Conway, Faulkner, Perry, Pope, Pulaski, Saline, and Van Buren,
12  and White.
13     (b)  The qualified electors residing in the counties listed under
14  subsection (a) of this section shall elect one (1) member of the United
15  States House of Representatives.
16
17     SECTION 3.  Arkansas Code § 7-2-104 is amended to read as follows:
18     7-2-104.  Third Congressional District.
19     (a)  The Third Congressional District shall be composed of:
20         (1)  The the counties of Benton, Boone, Carroll, Marion, Pope,
21  Crawford, Franklin, Johnson, Madison, Marion, Newton, Searcy, and Washington;
22         (2)  The voting districts and voting precincts of Crawford County
23  as they existed on January 1, 2011, that are not listed under § 7-2-
24  105(a)(2);
25         (3)  The following voting districts of Newton County as they
26  existed on January 1, 2011:
27             (A)  Big Creek voting district;
28             (B)  Dogpatch voting district;
29             (C)  Grove voting district;
30             (D)  Hasty voting district;
31             (E)  Polk voting district;
32             (F)  Richland voting district; and
33             (G)  White voting district;
34         (4)  The Prairie voting district of Searcy County as it existed
35  on January 1, 2011; and
36         (5)  The voting districts and voting precincts of Sebastian

1  ~~County as they existed on January 1, 2011, that are not listed under § 7-2-~~
2  ~~105(a)(5).~~
3       (b)   The qualified electors residing in the counties ~~and portions of~~
4  ~~Crawford County, Newton County, Searcy County, and Sebastian County~~ listed
5  under subsection (a) of this section shall elect one (1) member of the United
6  States House of Representatives.
7
8       SECTION 4.   Arkansas Code § 7-2-105 is amended to read as follows:
9       7-2-105.   Fourth Congressional District.
10      (a)   The Fourth Congressional District shall be composed of~~:~~
11            ~~(1)  The~~ the counties of Ashley, Bradley, Calhoun, <u>Chicot,</u> Clark,
12  Cleveland, Columbia, Dallas, <u>Desha,</u> Drew, ~~Franklin,~~ Garland, Grant,
13  Hempstead, Hot Spring, Howard, <u>Jefferson,</u> ~~Johnson,~~ Lafayette, <u>Lincoln,</u> Little
14  River, Logan, ~~Madison,~~ Miller, Montgomery, Nevada, Ouachita, Pike, Polk,
15  Scott, <u>Sebastian,</u> Sevier, Union, and Yell~~:~~
16            ~~(2)  The following voting districts of Crawford County as they~~
17  ~~existed on January 1, 2011:~~
18                  ~~(A)  Alma # 1 voting district;~~
19                  ~~(B)  Alma # 4 voting district;~~
20                  ~~(C)  Bidville voting district;~~
21                  ~~(D)  Chester voting district;~~
22                  ~~(E)  Dean Springs voting district;~~
23                  ~~(F)  Dyer voting district;~~
24                  ~~(G)  Eagle Crest voting district;~~
25                  ~~(H)  Kibler voting district;~~
26                  ~~(I)  Locke voting district;~~
27                  ~~(J)  Mountain voting district;~~
28                  ~~(K)  Mulberry # 1 voting district;~~
29                  ~~(L)  Mulberry # 2 voting district;~~
30                  ~~(M)  Mulberry # 3 voting district;~~
31                  ~~(N)  Porter voting district;~~
32                  ~~(O)  Vine Prairie voting district;~~
33                  ~~(P)  Whitley voting district; and~~
34                  ~~(Q)  Winfrey voting district;~~
35            ~~(3)  The voting districts and voting precincts of Jefferson~~
36  ~~County as they existed on January 1, 2011, that are not listed under § 7-2-~~

SB720

1      ~~102(a)(2);~~
2              ~~(4)  The voting districts and voting precincts of Newton County~~
3      ~~as they existed on January 1, 2011, that are not listed under § 7-2-~~
4      ~~104(a)(3); and~~
5              ~~(5)  The following voting districts of Sebastian County as they~~
6      ~~existed on January 1, 2011:~~
7                      ~~(A)  9-1-A voting district;~~
8                      ~~(B)  9-1-B voting district;~~
9                      ~~(C)  9-1-C voting district;~~
10                     ~~(D)  9-1-D voting district;~~
11                     ~~(E)  9-1-E voting district;~~
12                     ~~(F)  9-1-Q voting district;~~
13                     ~~(G)  9-2-E voting district;~~
14                     ~~(H)  9-3-E voting district;~~
15                     ~~(I)  9-3-F voting district;~~
16                     ~~(J)  9-3-G voting district;~~
17                     ~~(K)  9-3-H voting district;~~
18                     ~~(L)  9-3-I voting district;~~
19                     ~~(M)  9-3-J voting district;~~
20                     ~~(N)  9-3-K voting district;~~
21                     ~~(O)  9-3-L voting district; and~~
22                     ~~(P)  9-3-M voting district.~~
23         (b)   The qualified electors residing in the counties ~~and portions of~~
24     ~~Crawford County, Jefferson County, Newton County, and Sebastian County~~ listed
25     under subsection (a) of this section shall elect one (1) member of the United
26     States House of Representatives.
27
28
29
30
31
32
33
34
35
36

                                    4              09/09/2021 8:09:04 AM MLD373

Congressional Plan

# SB 720- Sen. Johnson 2







AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/22/2021 3:26:14 PM    Last Edit:8/31/2021 2:54:48 PM



Congressional Plan
# SB 720- Sen. Johnson 2





AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171



Map Date: 9/22/2021 3:26:14 PM    Last Edit:8/31/2021 2:54:48 PM



# EXHIBIT 9

Stricken language would be deleted from and underlined language would be added to present law.

| | |
|---|---|
| 1 | State of Arkansas |
| 2 | 93rd General Assembly |
| 3 | Regular Session, 2021 |

# A Bill

SENATE BILL 729

5   By: Senator M. Johnson

## For An Act To Be Entitled

AN ACT TO CHANGE THE FOUR (4) CONGRESSIONAL DISTRICTS
AS A RESULT OF THE MOST RECENT FEDERAL DECENNIAL
CENSUS DATA; TO DECLARE AN EMERGENCY; AND FOR OTHER
PURPOSES.

## Subtitle

AN ACT TO CHANGE THE FOUR (4)
CONGRESSIONAL DISTRICTS AS A RESULT OF
THE MOST RECENT FEDERAL DECENNIAL CENSUS
DATA; AND TO DECLARE AN EMERGENCY.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:

SECTION 1.  Arkansas Code § 7-2-102 is amended to read as follows:
7-2-102.  First Congressional District.
(a)  The First Congressional District shall be composed of~~:~~
~~(1) The~~ the counties of Arkansas, Baxter, Chicot, Clay,
Cleburne, Craighead, Crittenden, Cross, Desha, Fulton, Greene, Independence,
Izard, Jackson, Lawrence, Lee, ~~Lincoln,~~ Lonoke, Mississippi, Monroe,
Phillips, ~~Prairie,~~ Poinsett, Prairie, Randolph, St. Francis, Sharp, Stone,
White, and Woodruff~~;~~
~~(2)  The following voting districts of Jefferson County as they~~
~~existed on January 1, 2011:~~
~~(A)  19 (Dunnington) voting district;~~
~~(B)  P15 (Dudley Lake) voting district;~~
~~(C)  25 (Old River) voting district;~~
~~(D)  57 (Villemont) voting district;~~





EXHIBIT
9

09/27/2021 10:13:03 AM MLD396

```
 1                    (E)  P91 (Roberts) voting district;
 2                    (F)  P851 (Humphrey) voting district; and
 3                    (G)  P862 (Humphrey) voting district; and
 4               (3)  The voting districts and voting precincts of Searcy County
 5     as they existed on January 1, 2011, that are not listed under § 7-2-
 6     104(a)(4).
 7          (b)   The qualified electors residing in the counties and portion of
 8     Jefferson County and Searcy County listed under subsection (a) of this
 9     section shall elect one (1) member of the United States House of
10     Representatives.
11
12          SECTION 2.  Arkansas Code § 7-2-103 is amended to read as follows:
13          7-2-103.  Second Congressional District.
14          (a)   The Second Congressional District shall be composed of the
15     counties of Conway, Faulkner, Perry, Pope, Pulaski, Saline, and Van Buren,
16     and White.
17          (b)   The qualified electors residing in the counties listed under
18     subsection (a) of this section shall elect one (1) member of the United
19     States House of Representatives.
20
21          SECTION 3.  Arkansas Code § 7-2-104 is amended to read as follows:
22          7-2-104.  Third Congressional District.
23          (a)   The Third Congressional District shall be composed of:
24               (1)  The the counties of Benton, Boone, Carroll, Marion, Pope,
25     Crawford, Franklin, Johnson, Madison, Marion, Newton, Searcy, and Washington;
26               (2)  The voting districts and voting precincts of Crawford County
27     as they existed on January 1, 2011, that are not listed under § 7-2-
28     105(a)(2);
29               (3)  The following voting districts of Newton County as they
30     existed on January 1, 2011:
31                    (A)  Big Creek voting district;
32                    (B)  Dogpatch voting district;
33                    (C)  Grove voting district;
34                    (D)  Hasty voting district;
35                    (E)  Polk voting district;
36                    (F)  Richland voting district; and
```

```
 1                    (C)  White voting district;
 2              (4)  The Prairie voting district of Searcy County as it existed
 3   on January 1, 2011; and
 4              (5)  The voting districts and voting precincts of Sebastian
 5   County as they existed on January 1, 2011, that are not listed under § 7-2-
 6   105(a)(5).
 7        (b)   The qualified electors residing in the counties and portions of
 8   Crawford County, Newton County, Searcy County, and Sebastian County listed
 9   under subsection (a) of this section shall elect one (1) member of the United
10   States House of Representatives.
11
12        SECTION 4.  Arkansas Code § 7-2-105 is amended to read as follows:
13        7-2-105.  Fourth Congressional District.
14        (a)   The Fourth Congressional District shall be composed of:
15              (1)  The the counties of Ashley, Bradley, Calhoun, Clark,
16   Cleveland, Columbia, Dallas, Drew, Franklin, Garland, Grant, Hempstead, Hot
17   Spring, Howard, Jefferson, Johnson, Lafayette, Lincoln, Little River, Logan,
18   Madison, Miller, Montgomery, Nevada, Ouachita, Pike, Polk, Scott, Sebastian,
19   Sevier, Union, and Yell;
20              (2)  The following voting districts of Crawford County as they
21   existed on January 1, 2011:
22                    (A)  Alma # 1 voting district;
23                    (B)  Alma # 4 voting district;
24                    (C)  Bidville voting district;
25                    (D)  Chester voting district;
26                    (E)  Dean Springs voting district;
27                    (F)  Dyer voting district;
28                    (G)  Eagle Crest voting district;
29                    (H)  Kibler voting district;
30                    (I)  Locke voting district;
31                    (J)  Mountain voting district;
32                    (K)  Mulberry # 1 voting district;
33                    (L)  Mulberry # 2 voting district;
34                    (M)  Mulberry # 3 voting district;
35                    (N)  Porter voting district;
36                    (O)  Vine Prairie voting district;
```

SB729

1            (P)  Whitley voting district; and
2            (Q)  Winfrey voting district.
3        (3)  The voting districts and voting precincts of Jefferson
4    County as they existed on January 1, 2011, that are not listed under § 7-2-
5    102(a)(2);
6        (4)  The voting districts and voting precincts of Newton County
7    as they existed on January 1, 2011, that are not listed under § 7-2-
8    104(a)(3); and
9        (5)  The following voting districts of Sebastian County as they
10   existed on January 1, 2011:
11            (A)  9-1-A voting district;
12            (B)  9-1-B voting district;
13            (C)  9-1-C voting district;
14            (D)  9-1-D voting district;
15            (E)  9-1-E voting district;
16            (F)  9-1-Q voting district;
17            (G)  9-2-E voting district;
18            (H)  9-3-E voting district;
19            (I)  9-3-F voting district;
20            (J)  9-3-G voting district;
21            (K)  9-3-H voting district;
22            (L)  9-3-I voting district;
23            (M)  9-3-J voting district;
24            (N)  9-3-K voting district;
25            (O)  9-3-L voting district; and
26            (P)  9-3-M voting district.
27       (b)   The qualified electors residing in the counties and portions of
28   Crawford County, Jefferson County, Newton County, and Sebastian County listed
29   under subsection (a) of this section shall elect one (1) member of the United
30   States House of Representatives.
31
32       SECTION 5.   EMERGENCY CLAUSE.  It is found and determined by the
33   General Assembly of the State of Arkansas that the General Assembly is
34   responsible for establishing the four (4) United States Congressional
35   Districts in the state; that the United States Congressional Districts are
36   based on the information provided by the federal decennial census by the

1    United States Bureau of the Census; that the federal decennial census data
2    delivery was delayed; that the establishment of the four (4) United States
3    Congressional Districts is necessary to provide equal representation of the
4    citizens of Arkansas in the United States Congress; and that this act is
5    immediately necessary because the establishment of the four (4) United States
6    Congressional Districts must occur in adequate time for the candidates to
7    file for office and for the citizens of Arkansas to have a fair election.
8    Therefore, an emergency is declared to exist, and this act being immediately
9    necessary for the preservation of the public peace, health, and safety shall
10    become effective on:
11           (1)  The date of its approval by the Governor;
12           (2)  If the bill is neither approved nor vetoed by the Governor,
13    the expiration of the period of time during which the Governor may veto the
14    bill; or
15           (3)  If the bill is vetoed by the Governor and the veto is
16    overridden, the date the last house overrides the veto.
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36

Congressional Plan
# SB 729- Sen. Johnson 1







AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/27/2021 8:04:21 AM     Last Edit:9/24/2021 4:55:36 PM



Congressional Plan

# SB 720- Sen. Johnson 2







AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/22/2021 3:26:14 PM     Last Edit:8/31/2021 2:54:48 PM



Congressional Plan
# SB 729- Sen. Johnson 2





AutoBound Edge MAP - Based on: 2020 Census Geography, 2010 PL94-171

Map Date: 9/27/2021 8:06:30 AM    Last Edit:9/24/2021 4:55:36 PM



Case 4:22-cv-00213-JM-DRS-DPM   Document 1   Filed 03/07/22   Page 139 of 170

Plan Type and Name: Congressional:CD - Sen. M.

## Table of Contents

District: 1 ........................................................................................................................................................................................... 2
District: 2 ........................................................................................................................................................................................... 3
District: 3 ........................................................................................................................................................................................... 4
District: 4 ........................................................................................................................................................................................... 5

**Based on:** **2020 Census Geography, 2010 PL94-171**

Map Date:    9/27/2021 8:05:24 AM    Plan Last Edited on: 9/24/2021 4:55:36 PM        Page: 1





**AutoBound Edge MAP** SB 729- Sen. Johnson 3 Plan Type and Name: Congressional:CD - Sen. M.

# District: 1

Ideal Population: 752,881 Deviation: 2.34 % Total Population: **770,462**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/27/2021 8:05:24 AM Plan Last Edited on: 9/24/2021 4:55:36 PM

EDGE 2020 Professional Redistricting



# District: 2

Ideal Population: 752,881          Deviation:          0.41 %          Total Population: **755,950**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:   9/27/2021 8:05:24 AM     Plan Last Edited on: 9/24/2021 4:55:36 PM          Page: 3



AutoBound Edge MAP SB 729- Sen. Johnson 3 Plan Type and Name: Congressional:CD - Sen. M.

Ideal Population: 752,881 Deviation: -0.75 % Total Population: **747,216**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/27/2021 8:05:24 AM Plan Last Edited on: 9/24/2021 4:55:36 PM Page: 4

EDGE 2020 Professional Redistricting



**AutoBound Edge MAP** SB 729- Sen. Johnson 3

Plan Type and Name: Congressional:CD - Sen. M.

Ideal Population: 752,881 Deviation: -1.99 % Total Population: **737,896**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 9/27/2021 8:05:24 AM Plan Last Edited on: 9/24/2021 4:55:36 PM

EDGE 2020 Professional Redistricting



# EXHIBIT 10

Stricken language would be deleted from and underlined language would be added to present law.

1   State of Arkansas
2   93rd General Assembly                    A Bill
3   Regular Session, 2021                                        HOUSE BILL 1978
4
5   By: Representative Love
6
7                         **For An Act To Be Entitled**
8           AN ACT TO ESTABLISH THE GEOGRAPHIC BOUNDARIES OF THE
9           FOUR (4) UNITED STATES CONGRESSIONAL DISTRICTS IN
10          ARKANSAS FOR 2021-2030; TO DECLARE AN EMERGENCY; AND
11          FOR OTHER PURPOSES.
12
13
14                              **Subtitle**
15              TO ESTABLISH THE GEOGRAPHIC BOUNDARIES OF
16              THE FOUR (4) UNITED STATES CONGRESSIONAL
17              DISTRICTS IN ARKANSAS FOR 2021-2030; AND
18              TO DECLARE AN EMERGENCY.
19
20
21  BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
22
23          SECTION 1.  Arkansas Code § 7-2-102 is amended to read as follows:
24          7-2-102.  First Congressional District.
25          (a)  The First Congressional District shall be composed of~~:~~
26              ~~(1)  The~~ the counties of Arkansas, ~~Baxter,~~ Ashley, Bradley,
27  Chicot, Clay, ~~Cleburne,~~ Cleveland, Craighead, Crittenden, Cross, Desha, Drew,
28  Fulton, Grant, Greene, Independence, ~~Izard,~~ Jackson, Jefferson, Lawrence,
29  Lee, Lincoln, ~~Lonoke,~~ Mississippi, Monroe, Phillips, ~~Prairie,~~ Poinsett,
30  Prairie, Randolph, St. Francis, Sharp, ~~Stone,~~ White and Woodruff~~:~~
31              ~~(2)  The following voting districts of Jefferson County as they~~
32  ~~existed on January 1, 2011:~~
33                      ~~(A)  19 (Dunnington) voting district;~~
34                      ~~(B)  P15 (Dudley Lake) voting district;~~
35                      ~~(C)  25 (Old River) voting district;~~
36                      ~~(D)  57 (Villemont) voting district;~~




10/01/2021 8:52:58 AM MLD408

HB1978

```
1                          (E)  P91 (Roberts) voting district;
2                          (F)  P851 (Humphrey) voting district; and
3                          (G)  P862 (Humphrey) voting district; and
4               (3)  The voting districts and voting precincts of Searcy County
5    as they existed on January 1, 2011, that are not listed under § 7-2-
6    104(a)(4).
7          (b)   The qualified electors residing in the counties and portion of
8    Jefferson County and Searcy County listed under subsection (a) of this
9    section shall elect one (1) member of the United States House of
10   Representatives.
11
12         SECTION 2.  Arkansas Code § 7-2-103 is amended to read as follows:
13         7-2-103.  Second Congressional District.
14         (a)   The Second Congressional District shall be composed of the
15   counties of Conway, Faulkner, Lonoke, Perry, Pulaski, and Saline, Van Buren,
16   and White.
17         (b)   The qualified electors residing in the counties listed under
18   subsection (a) of this section shall elect one (1) member of the United
19   States House of Representatives.
20
21         SECTION 3.  Arkansas Code § 7-2-104 is amended to read as follows:
22         7-2-104.  Third Congressional District.
23         (a)   The Third Congressional District shall be composed of:
24              (1)  The the counties of Baxter, Benton, Boone, Carroll,
25   Cleburne, Izard, Madison, Marion, Newton, Pope, Searcy, Stone, Van Buren, and
26   Washington;
27              (2)  The voting districts and voting precincts of Crawford County
28   as they existed on January 1, 2011, that are not listed under § 7-2-
29   105(a)(2);
30              (3)  The following voting districts of Newton County as they
31   existed on January 1, 2011:
32                     (A)  Big Creek voting district;
33                     (B)  Dogpatch voting district;
34                     (C)  Grove voting district;
35                     (D)  Hasty voting district;
36                     (E)  Polk voting district;
```

1           (F)  Richland voting district; and
2           (G)  White voting district;
3       (4)  The Prairie voting district of Searcy County as it existed
4    on January 1, 2011; and
5           (5)  The voting districts and voting precincts of Sebastian
6    County as they existed on January 1, 2011, that are not listed under § 7-2-
7    105(a)(5).
8       (b)   The qualified electors residing in the counties and portions of
9    Crawford County, Newton County, Searcy County, and Sebastian County listed
10   under subsection (a) of this section shall elect one (1) member of the United
11   States House of Representatives.
12
13       SECTION 4.   Arkansas Code § 7-2-105 is amended to read as follows:
14       7-2-105.   Fourth Congressional District.
15       (a)   The Fourth Congressional District shall be composed of:
16           (1)  The the counties of Ashley, Bradley, Calhoun, Clark,
17   Cleveland, Columbia, Crawford, Dallas, Drew, Franklin, Garland, Grant,
18   Hempstead, Hot Spring, Howard, Johnson, Lafayette, Little River, Logan,
19   Madison, Miller, Montgomery, Nevada, Ouachita, Pike, Polk, Pope, Scott,
20   Sebastian, Sevier, Union, and Yell;
21           (2)  The following voting districts of Crawford County as they
22   existed on January 1, 2011:
23                   (A)  Alma # 1 voting district;
24                   (B)  Alma # 4 voting district;
25                   (C)  Bidville voting district;
26                   (D)  Chester voting district;
27                   (E)  Dean Springs voting district;
28                   (F)  Dyer voting district;
29                   (G)  Eagle Crest voting district;
30                   (H)  Kibler voting district;
31                   (I)  Locke voting district;
32                   (J)  Mountain voting district;
33                   (K)  Mulberry # 1 voting district;
34                   (L)  Mulberry # 2 voting district;
35                   (M)  Mulberry # 3 voting district;
36                   (N)  Porter voting district;

HB1978

1           (O)  Vine Prairie voting district;
2           (P)  Whitley voting district; and
3           (Q)  Winfrey voting district;
4       (3)  The voting districts and voting precincts of Jefferson
5   County as they existed on January 1, 2011, that are not listed under § 7-2-
6   102(a)(2);
7           (4)  The voting districts and voting precincts of Newton County
8   as they existed on January 1, 2011, that are not listed under § 7-2-
9   104(a)(3); and
10          (5)  The following voting districts of Sebastian County as they
11  existed on January 1, 2011:
12              (A)  9-1-A voting district;
13              (B)  9-1-B voting district;
14              (C)  9-1-C voting district;
15              (D)  9-1-D voting district;
16              (E)  9-1-E voting district;
17              (F)  9-1-Q voting district;
18              (G)  9-2-E voting district;
19              (H)  9-3-E voting district;
20              (I)  9-3-F voting district;
21              (J)  9-3-G voting district;
22              (K)  9-3-H voting district;
23              (L)  9-3-I voting district;
24              (M)  9-3-J voting district;
25              (N)  9-3-K voting district;
26              (O)  9-3-L voting district; and
27              (P)  9-3-M voting district.
28      (b)  The qualified electors residing in the counties and portions of
29  Crawford County, Jefferson County, Newton County, and Sebastian County listed
30  under subsection (a) of this section shall elect one (1) member of the United
31  States House of Representatives.
32
33      SECTION 5.  EMERGENCY CLAUSE.  It is found and determined by the
34  General Assembly of the State of Arkansas that the General Assembly is
35  responsible for establishing the four (4) United States Congressional
36  Districts in the state; that the United States Congressional Districts are

1    based on the information provided by the federal decennial census by the
2    United States Bureau of the Census; that the federal decennial census data
3    delivery was delayed; that the establishment of the four (4) United States
4    Congressional Districts is necessary to provide equal representation of the
5    citizens of Arkansas in the United States Congress; and that this act is
6    immediately necessary because the establishment of the four (4) United States
7    Congressional Districts must occur in adequate time for the candidates to
8    file for office and for the citizens of Arkansas to have a fair election.
9    Therefore, an emergency is declared to exist, and this act being immediately
10   necessary for the preservation of the public peace, health, and safety shall
11   become effective on:
12            (1)  The date of its approval by the Governor;
13            (2)  If the bill is neither approved nor vetoed by the Governor,
14   the expiration of the period of time during which the Governor may veto the
15   bill; or
16            (3)  If the bill is vetoed by the Governor and the veto is
17   overridden, the date the last house overrides the veto.
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36

# EXHIBIT 11

**Stricken language would be deleted from and underlined language would be added to present law.**

1 State of Arkansas
2 93rd General Assembly                    **A Bill**
3 Regular Session, 2021                                                HOUSE BILL 1980
4
5 By: Representatives V. Flowers, Murdock, M. Hodges
6
7                         **For An Act To Be Entitled**
8              AN ACT TO IDENTIFY AND DEFINE THE FOUR (4) UNITED
9              STATES CONGRESSIONAL DISTRICTS OF ARKANSAS FOR 2021-
10             2030; TO DECLARE AN EMERGENCY; AND FOR OTHER
11             PURPOSES.
12
13
14                              **Subtitle**
15              TO IDENTIFY AND DEFINE THE FOUR (4)
16              UNITED STATES CONGRESSIONAL DISTRICTS OF
17              ARKANSAS FOR 2021-2030; AND TO DECLARE AN
18              EMERGENCY.
19
20
21 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
22
23       SECTION 1.  Arkansas Code § 7-2-102 is amended to read as follows:
24       7-2-102.  First Congressional District.
25       (a)  The First Congressional District shall be composed of:
26             (1)  The the counties of Arkansas, Baxter, Boone, Chicot, Clay,
27 Cleburne, Craighead, Crittenden, Cross, Desha, Faulkner, Fulton, Greene,
28 Independence, Izard, Jackson, Lawrence, Lee, Lincoln, Lonoke, Marion,
29 Mississippi, Monroe, Phillips, Prairie, Poinsett, Prairie, Randolph, St.
30 Francis, Sharp, Stone, and Woodruff, White
31             (2)  The following voting districts of Jefferson County as they
32 existed on January 1, 2011:
33                   (A)  19 (Dunnington) voting district;
34                   (B)  P15 (Dudley Lake) voting district;
35                   (C)  25 (Old River) voting district;
36                   (D)  57 (Villemont) voting district;





10/04/2021 4:10:48 PM MLD411

```
 1                    (E)  P91 (Roberts) voting district;
 2                    (F)  P851 (Humphrey) voting district; and
 3                    (G)  P862 (Humphrey) voting district; and
 4              (3)  The voting districts and voting precincts of Searcy County
 5   as they existed on January 1, 2011, that are not listed under § 7-2-
 6   104(a)(4).
 7       (b)   The qualified electors residing in the counties and portion of
 8   Jefferson County and Searcy County listed under subsection (a) of this
 9   section shall elect one (1) member of the United States House of
10   Representatives.
11
12       SECTION 2.  Arkansas Code § 7-2-103 is amended to read as follows:
13       7-2-103.  Second Congressional District.
14       (a)   The Second Congressional District shall be composed of the
15   counties of Conway, Faulkner, Perry, Pulaski, Saline, Van Buren, and White
16   Arkansas, Ashley, Bradley, Calhoun, Chicot, Cleveland, Crittenden, Desha,
17   Drew, Jefferson, Lee, Lincoln, Mississippi, Monroe, Ouachita, Phillips,
18   Pulaski, St. Francis, and Woodruff.
19       (b)   The qualified electors residing in the counties listed under
20   subsection (a) of this section shall elect one (1) member of the United
21   States House of Representatives.
22
23       SECTION 3.  Arkansas Code § 7-2-104 is amended to read as follows:
24       7-2-104.  Third Congressional District.
25       (a)   The Third Congressional District shall be composed of:
26              (1)  The the counties of Benton, Boone, Carroll, Marion, Pope,
27   Crawford, Scott, Sebastian, and Washington;
28              (2)  The voting districts and voting precincts of Crawford County
29   as they existed on January 1, 2011, that are not listed under § 7-2-
30   105(a)(2);
31              (3)  The following voting districts of Newton County as they
32   existed on January 1, 2011:
33                    (A)  Big Creek voting district;
34                    (B)  Dogpatch voting district;
35                    (C)  Grove voting district;
36                    (D)  Hasty voting district;
```

2              10/04/2021 4:10:48 PM MLD411

1              (E)  Polk voting district;
2              (F)  Richland voting district; and
3              (G)  White voting district.
4          (4)  The Prairie voting district of Searcy County as it existed
5   on January 1, 2011; and
6          (5)  The voting districts and voting precincts of Sebastian
7   County as they existed on January 1, 2011, that are not listed under § 7-2-
8   105(a)(5).
9      (b)  The qualified electors residing in the counties and portions of
10  Crawford County, Newton County, Searcy County, and Sebastian County listed
11  under subsection (a) of this section shall elect one (1) member of the United
12  States House of Representatives.
13
14      SECTION 4.  Arkansas Code § 7-2-105 is amended to read as follows:
15      7-2-105.  Fourth Congressional District.
16      (a)  The Fourth Congressional District shall be composed of:
17          (1)  The the counties of Ashley, Bradley, Calhoun, Clark,
18  Cleveland, Columbia, Conway, Dallas, Drew, Franklin, Garland, Grant,
19  Hempstead, Hot Spring, Howard, Johnson, Lafayette, Little River, Logan,
20  Madison, Miller, Montgomery, Nevada, Ouachita, Newton, Perry, Pike, Polk,
21  Pope, Saline, Searcy, Scott, Sevier, Stone, Union, Van Buren, and Yell;
22          (2)  The following voting districts of Crawford County as they
23  existed on January 1, 2011:
24                  (A)  Alma # 1 voting district;
25                  (B)  Alma # 4 voting district;
26                  (C)  Bidville voting district;
27                  (D)  Chester voting district;
28                  (E)  Dean Springs voting district;
29                  (F)  Dyer voting district;
30                  (G)  Eagle Crest voting district;
31                  (H)  Kibler voting district;
32                  (I)  Locke voting district;
33                  (J)  Mountain voting district;
34                  (K)  Mulberry # 1 voting district;
35                  (L)  Mulberry # 2 voting district;
36                  (M)  Mulberry # 3 voting district;

1           (N)   Porter voting district;
2           (O)   Vine Prairie voting district;
3           (P)   Whitley voting district; and
4           (Q)   Winfrey voting district;
5       (3)   The voting districts and voting precincts of Jefferson
6   County as they existed on January 1, 2011, that are not listed under § 7-2-
7   102(a)(2);
8       (4)   The voting districts and voting precincts of Newton County
9   as they existed on January 1, 2011, that are not listed under § 7-2-
10   104(a)(3); and
11       (5)   The following voting districts of Sebastian County as they
12   existed on January 1, 2011:
13           (A)   9-1-A voting district;
14           (B)   9-1-B voting district;
15           (C)   9-1-C voting district;
16           (D)   9-1-D voting district;
17           (E)   9-1-E voting district;
18           (F)   9-1-Q voting district;
19           (G)   9-2-E voting district;
20           (H)   9-3-E voting district;
21           (I)   9-3-F voting district;
22           (J)   9-3-G voting district;
23           (K)   9-3-H voting district;
24           (L)   9-3-I voting district;
25           (M)   9-3-J voting district;
26           (N)   9-3-K voting district;
27           (O)   9-3-L voting district; and
28           (P)   9-3-M voting district.
29       (b)   The qualified electors residing in the counties and portions of
30   Crawford County, Jefferson County, Newton County, and Sebastian County listed
31   under subsection (a) of this section shall elect one (1) member of the United
32   States House of Representatives.
33
34       SECTION 5.   EMERGENCY CLAUSE.   It is found and determined by the
35   General Assembly of the State of Arkansas that the General Assembly is
36   responsible for establishing the four (4) United States Congressional

1  Districts in the state; that the four (4) United States Congressional
2  Districts are based on the information provided by the federal decennial
3  census by the United States Bureau of the Census; that the federal decennial
4  census data delivery was delayed; that the establishment of the four (4)
5  United States Congressional Districts is necessary to provide equal
6  representation of the citizens of Arkansas in the United States Congress; and
7  that this act is immediately necessary because the establishment of the four
8  (4) United States Congressional Districts must occur in adequate time for the
9  candidates to file for office and for the citizens of Arkansas to have a fair
10  election. Therefore, an emergency is declared to exist, and this act being
11  immediately necessary for the preservation of the public peace, health, and
12  safety shall become effective on:
13         (1)   The date of its approval by the Governor;
14         (2)   If the bill is neither approved nor vetoed by the Governor,
15  the expiration of the period of time during which the Governor may veto the
16  bill; or
17         (3)   If the bill is vetoed by the Governor and the veto is
18  overridden, the date the last house overrides the veto.
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36

Congressional Plan

# HB 1980 - Representative Flowers 1







AutoBound Edge MAP - Based on: 2020 Census Geography, 2020 PL94-171

Map Date: 10/4/2021 7:30:57 AM     Last Edit:10/4/2021 7:23:58 AM



Congressional Plan

# HB 1980 - Representative Flowers 2





AutoBound Edge MAP - Based on: 2020 Census Geography, 2020 PL94-171



Map Date: 10/4/2021 7:29:28 AM    Last Edit:10/4/2021 7:23:58 AM



## Table of Contents

District: 1 ............................................................................................................................................................................................................................ 2
District: 2 ............................................................................................................................................................................................................................ 3
District: 3 ............................................................................................................................................................................................................................ 4
District: 4 ............................................................................................................................................................................................................................ 5

**Based on:  2020 Census Geography, 2010 PL94-171**

Map Date:     10/4/2021 7:50:02 AM     Plan Last Edited on: 10/4/2021 7:49:41 AM          Page: 1





# District: 1

Ideal Population: 752,881        Deviation:    -0.80 %        Total Population: **746,874**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:    10/4/2021 7:50:02 AM    Plan Last Edited on: 10/4/2021 7:49:41 AM        Page: 2

EDGE 2020
Professional Redistricting



**AutoBound Edge MAP** HB 1980 - Representative Flowers 3 Plan Type and Name: Congressional:CD - Rep

Ideal Population: 752,881 Deviation: -0.36 % Total Population: **750,148**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/4/2021 7:50:02 AM Plan Last Edited on: 10/4/2021 7:49:41 AM

EDGE 2020 Professional Redistricting



# District: 3

Ideal Population: 752,881        Deviation:        0.45 %        Total Population: **756,232**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date:    10/4/2021 7:50:02 AM    Plan Last Edited on: 10/4/2021 7:49:41 AM        Page: 4

EDGE 2020
Professional Redistricting



**AutoBound Edge MAP** HB 1980 - Representative Flowers 3 Plan Type and Name: Congressional:CD - Rep

# District: 4

Ideal Population: 752,881 Deviation: 0.72 % Total Population: **758,270**

**Based on: 2020 Census Geography, 2010 PL94-171**

Map Date: 10/4/2021 7:50:02 AM Plan Last Edited on: 10/4/2021 7:49:41 AM Page: 5

EDGE 2020 Professional Redistricting

# EXHIBIT 12

# Total Population; Arkansas by County: 2020



Source: U.S. Census Bureau, 2020 Census State Redistricting Data (Public Law 94-171)



EXHIBIT
12

# EXHIBIT 13

# White Alone Population, Number and Percent of County Total Population; Arkansas by County: 2020



Source: U.S. Census Bureau, 2020 Census State Redistricting Data (Public Law 94-171)



EXHIBIT

13

# EXHIBIT 14

# Black Alone Population, Number and Percent of County Total Population; Arkansas by County: 2020



Source: U.S. Census Bureau, 2020 Census State Redistricting Data (Public Law 94-171)

State: 453,783 (15.1%)

- 5 - 5,683
- 5,684 - 18,473
- 18,474 - 37,835
- 37,836 - 143,548



EXHIBIT
14
PENGAD 800-631-6989

# EXHIBIT 15

# WITH OFFICERS MAKING NO ATTEMPT AT RESTRAINT, MOB BURNS NEGRO'S BODY AND CREATES A REIGN OF TERROR

## BODY DRAGGED THROUGH MAIN STREET OF CITY

### Then is Burned on Car Tracks at Ninth Street and Broadway.

### BLACK MAN IS BEATEN

#### Frenzied Crowd Barely Restrained From Burning Him Alive.

### GUARD RESTORES ORDER

## ORDER QUICKLY IS RESTORED BY GUARD

### State Soldiers Act Firmly and Encounter No Resistance.

### THEN THE POLICE APPEAR

Bluecoats, Heavily Armed, Hurry to Scene as Soon as Mob Has Been Dispersed.

**Guard Protects Police.**

## (AN EDITORIAL)
### LAW AND ORDER BETRAYED

## ALL NORTHEASTERN LOUISIANA FLOODED

### Mississippi Rapidly Inundating Nine Counties of State.

### BREAKS TWO MORE DIKES

Thousands Making Orderly Journey to Red Cross Relief Camps and Levees.

#### Flood Summary.

## LOCAL RECORD YESTERDAY

## Pulaski County Flood Relief Contributors

## BRITISH CHALLENGE MELLON'S FIGURES

### Secretary's Statement on War Debt Is Declared Inaccurate.

### ESTRANGEMENT DEPLORED

London Government Objects to Allegation That Payment Will Not Strain Nation's Resources.

### U. S. Will Not Reply.

## MOB'S LYNCHING OF NEGRO BRUTE STARTS TROUBLE

### Black Attacks Mother and Daughter West of City.

### IS HANGED TO POLE

#### Captured After Long Search Through Wooded Region.

### CONFESSES HE IS GUILTY

## GOVERNOR EXPECTED HERE EARLY TODAY

Notified of Mob's Action, He Leaves Van Buren on Special Train.

## $1,042 IS ADDED TO RELIEF FUND

Gazette Has Raised Total of $48,427 for Flood Sufferers.

EXHIBIT
15

EXHIBIT

EXHIBIT