IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JACKIE WILLIAMS SIMPSON, *et al.*,　　　　　　　　　　　　　　　　　PLAINTIFFS,

v.　　　　　　Case No. 4:22-cv-00213-JM (three-judge court)

ASA HUTCHINSON, *et al.*,　　　　　　　　　　　　　　　　　　　　　DEFENDANTS.

**Defendants' Reply in Support of Motion to Dismiss**

TABLE OF CONTENTS

Introduction ................................................................................................................................... 1
Argument ...................................................................................................................................... 2
    I.   Sovereign immunity bars Plaintiffs' claims against Arkansas and the
        Governor. ................................................................................................................. 2
        A.  Sovereign immunity bars Plaintiffs' claims against the State of
            Arkansas. ........................................................................................................2
        B.  The Governor is not a proper *Ex parte Young* Defendant. .............................5
   II.  Plaintiffs fail to state a claim under federal or Arkansas law. ............................... 5
        A.  Plaintiffs' Article I, section 2 challenge fails because Arkansas's
            congressional map satisfies the "one person, one vote" rule. .........................6
        B.  Plaintiffs' First Amendment claim fails because that Amendment does
            not regulate redistricting.................................................................................7
        C.  Plaintiffs' Privileges or Immunities Clause claim is frivolous, and their
            failure to even defend it demonstrates as much. ............................................8
        D.  Plaintiffs' attempt to dress their partisan gerrymandering claim as a
            racial discrimination claim fails. ....................................................................9
        E.  The Fifteenth Amendment does not support Plaintiffs' vote-dilution
            claim. ............................................................................................................10
        F.  Plaintiffs' allegations demonstrate that their Voting Rights Act claim
            must be dismissed..........................................................................................10
Conclusion ................................................................................................................................. 15

**INTRODUCTION**

In this case, Plaintiffs claim that a partisan legislature acted with partisan motivations to protect congressional incumbents. Because the Supreme Court has foreclosed these sorts of challenges, they attempt to recharacterize their claim as race-based discrimination. They claim that, in acting to make it harder for a Democrat to win election in Arkansas's Second Congressional District, Arkansas's Republican legislature ran afoul of federal anti-discrimination law.

Plaintiffs' opposition brief offers little to no defense of their Complaint's dubious, often novel constitutional theories. They have backed away from any argument that they can meet the *Gingles* preconditions necessary to state a claim under Section 2 of the Voting Rights Act. The only claim Plaintiffs bother to defend on the merits is their equal-protection claim, which simply alleges without factual support that the General Assembly was motivated by race when it adopted the 2020 congressional maps. But they do not allege that race was the predominant motive behind the legislature's decision; indeed, their Complaint and brief make it pretty clear that they really believe that partisan concerns drove the General Assembly's decision-making.

These allegations do not suffice to save Plaintiffs' Complaint from dismissal. As explained in Arkansas's opening brief, only the Secretary of State is a plausible defendant in this lawsuit, and the bulk of Plaintiffs' claims are not cognizable in a vote-dilution challenge. And the only claim that Plaintiffs offer any defense of—intentional race discrimination—is simply a thinly veiled partisan gerrymandering claim that the Supreme Court has rejected. This Court should dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

**I.      Sovereign immunity bars Plaintiffs' claims against Arkansas and the Governor.**

This Court lacks jurisdiction as to the State of Arkansas and the Governor because they are immune from suit. Plaintiffs' claims against those defendants should be dismissed.

**A.      Sovereign immunity bars Plaintiffs' claims against the State of Arkansas.**

**1.      Federal claims**

While the *Ex parte Young* doctrine allows official-capacity suits against state officials for prospective injunctive relief, sovereign immunity generally bars suits against a State unless the State has consented to suit or Congress has abrogated the immunity. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 727-28 (1999). Congress has not abrogated sovereign immunity as to any of Plaintiffs' claims, and the State must be dismissed as a defendant.

1. Plaintiffs correctly note that "Congress can abrogate state sovereign immunity pursuant to its Fourteenth Amendment enforcement powers to redress discriminatory state action." Br. at 9. But it does not follow that Congress has, in fact, done so here. As explained in the opening brief, Congress did not abrogate state sovereign immunity in in enacting Section 1983, the federal cause of action for Plaintiffs' constitutional claims, or any other statute. *See Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). While Plaintiffs may sue appropriate State officers for constitutional violations under the *Ex parte Young* doctrine (and, as explained below, the Governor is not an appropriate officer), that doctrine does not extend to suits against the State itself. Plaintiffs offer no argument in their opposition brief that they possess an avenue by which to sue the State of Arkansas for violations of Article I, section 2, or the First, Fourteenth, and Fifteenth Amendments. Thus, the State must be dismissed as a defendant as to Plaintiffs' constitutional claims.

2.  Plaintiffs also correctly note that the Supreme Court has held that the Voting Rights Act is a valid exercise of Congress' power under the Fifteenth Amendment. Br. at 11. But it does not follow that the Fifteenth Amendment authorizes Congress to abrogate state sovereign immunity. And as Arkansas explained in its opening brief, neither the Supreme Court nor the Eighth Circuit has held that Congress has the power to abrogate sovereign immunity under the Fifteenth Amendment. *See, e.g.*, *Mixon v. Ohio*, 193 F.3d 389, 399 (6th Cir. 1999) (noting that "the Supreme Court has not held" whether the Fifteenth Amendment grants the power to abrogate immunity).

But even assuming Congress could have abrogated sovereign immunity to allow suits against states and state entities, rather than only state officers, it has not done so. Abrogation of sovereign immunity requires statutory language that is "unmistakably clear." *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989). Section 2 contains no such language. This Court recently agreed. *See Christian Ministerial All. v. Arkansas*, No. 4:19-CV-402, 2020 WL 12968240, at *5 (E.D. Ark. Feb. 21, 2020) (Moody, J.) (holding that the "[Voting Rights] Act" did not "abrogate[] the states' sovereign immunity under the Eleventh Amendment" and granting Arkansas's motion to dismiss); *Smith v. Ark. Bd. of Election Comm'rs*, Case No. 4:15-CV-521-JM-BD, 2016 WL 1367771, at *4 (E.D. Ark. Mar. 18, 2016) (holding that the Board of Election Commissioners "is an agency of the State of Arkansas" and is "immune from suit"), *adopted*, 2016 WL 1357761 (Apr. 5, 2016) (Moody, J.).

Plaintiffs concede, as they must, that the VRA contains no explicit abrogation of sovereign immunity. Instead, they point to language at various points in the statute discussing a "proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision." Br. at 15-16. But this language is no different than

3

the "frequent reference to the States" in the statute at issue in *Delmuth*. 491 U.S. at 232. Suits may be brought challenging a state's election practices without the state itself being a defendant. Sovereign immunity merely requires that the state be dismissed and the suit proceed against the state officials charged with enforcing the challenged practice. That is the "kind of proceeding other than a lawsuit against the state" which "could be brought without a waiver of sovereign immunity." Br. at 18. Where Congress has wished to abrogate state sovereign immunity, there are clear examples of it doing so. *See, e.g.*, *Little Rock Sch. Dist. v. Mauney*, 183 F.3d 816 (8th Cir. 1999) (discussing the amendment to the IDEA providing: "A State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter."). Congress has not done so here.

As explained below, there is no right of action for any individual to sue under Section 2. But assuming the Court were to hold otherwise, the State of Arkansas is nevertheless immune from suit and must be dismissed as a defendant.

### 2. State claim

Plaintiffs' state-law claim against the State of Arkansas is barred by sovereign immunity. *See* Ark. Const. Art. 5, sec. 20 ("The State of Arkansas shall never be made defendant in any of her courts."). As explained in the opening brief, the Arkansas Supreme Court has recognized an exception similar to *Ex parte Young* as to plaintiffs seeking injunctive relief against illegal state action, but that exception does not allow suits against the State itself. *See Bd. of Trs. of Univ. of Ark. v. Burcham*, 2014 Ark. 61, at 3.

Plaintiffs' opposition brief entirely fails to address this argument. The Court should therefore dismiss Count VI of Plaintiffs' Complaint against the State of Arkansas.

### B. The Governor is not a proper *Ex parte Young* Defendant.

As explained in Arkansas's opening brief, the Governor is immune from suit in federal court under the Eleventh Amendment. He is not a proper defendant under the *Ex parte Young* doctrine because he does not have any "'connection with the enforcement of the act[s]'" that reapportioned Arkansas's congressional districts. *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). Plaintiffs do not allege that the Governor has any specific enforcement authority with respect to the use of congressional districts approved by the General Assembly and instead point to his general executive authority. (*See* Compl. ¶¶ 9-10.) Yet the "executive authority of the [Arkansas] governor" under the Arkansas Constitution does not "extend to enforcement of the" congressional maps, and thus is not the sort of connection to a challenged state law or policy that *Ex parte Young* requires. *Dig. Recognition Network*, 803 F.3d at 960 (citing Ark. Const. art VI, secs. 2, 7).

Plaintiffs offer *no* response to this argument in their opposition brief. The Court should dismiss the Governor as a defendant.

## II. Plaintiffs fail to state a claim under federal or Arkansas law.

Plaintiffs offer little to no defense of the merits of their claims. Indeed, their opposition brief makes no mention of their claims under the Privileges or Immunities Clause and the Fifteenth Amendment. They offer no defense of the merits of their Article I, section 2 claim. And they all but abandon their vote-dilution claim under Section 2 of the VRA and don't even attempt to walk back their concessions that they cannot meet the *Gingles* preconditions. Finally, they attempt to solely press forward on the merits of their equal-protection challenge despite omitting

5

the central necessary allegation to bring such a claim (that race was the predominant motive for the adoption of the challenged maps).[1]

Nothing in Plaintiffs' opposition brief saves their Complaint from dismissal. They have failed to state a claim upon which relief can be granted, and this Court should dismiss the entire Complaint with prejudice.

> **A. Plaintiffs' Article I, section 2 challenge fails because Arkansas's congressional map satisfies the "one person, one vote" rule.**

Article I, section 2 of the Constitution requires that "each representative must be accountable to (approximately) the same number of constituents." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019). It is "a matter of math." *Id.* Plaintiffs don't claim that Arkansas's congressional districts violate that requirement. Instead, they claim that Article I, section 2 prohibits gerrymandering. The Supreme Court described such a theory as "a novel approach" and rejected it in *Rucho*. *Id.* at 2506. Plaintiffs offer no support for the notion that racial gerrymandering ought to be treated any differently than partisan gerrymandering.

Indeed, Plaintiffs' opposition brief at most argues that their racial gerrymandering claim under Article I, section 2 is "justiciable," as opposed to partisan gerrymandering claims that the Supreme Court has held are not. Br. at 24. But the Supreme Court has rejected the notion that Article I, section 2 imposes any limitations on redistricting outside of population equality. *See Rucho*, 139 S. Ct. at 2505 (stating that it was "unconvinced" by the argument that partisan gerrymandering "violated the Elections Clause and Article I, [section] 2"); *Vieth v. Jubelirer*, 541 U.S.

---

[1] Plaintiffs' opposition brief references a claim under the Thirteenth Amendment. *See* Br. at 24 (section heading claiming that Plaintiffs' "Thirteenth" Amendment claim is "justiciable"); *id.* at 33 (claiming to have "justiciable claims under Article 1, and the Thirteenth, Fourteenth and Fifteenth Amendments"); *id.* (stating that "Plaintiffs can rely upon their claims under the "Thirteenth, Fourteenth and Fifteenth Amendments"). But Plaintiffs' Complaint does not purport to bring a claim under the Thirteenth Amendment.

6

267, 305 (2004) ("We conclude that neither Article I, [section] 2, nor . . . Article I, [section] 4, provides a judicially enforceable limit on the political considerations that the States . . . may take into account when districting.").

Plaintiffs block-quote a portion of *Rucho* that discusses the "predominant intent" inquiry in cases involving racial discrimination, arguing that "the Court did not turn its back on review of cases involving racial gerrymandering[.]" Br. at 27. But the Court's discussion of the standard for proving racial discrimination under the Fourteenth Amendment in no way implied that a similar claim is available under Article I, section 2. *See Rucho*, 139 S. Ct. at 2503. To the contrary, the Court rejected the argument that the "predominant intent" inquiry could provide a workable limitation on the considerations legislatures may take into account under Article I, section 2.

No court has entertained Plaintiffs' Article I, section 2 theory, and this Court should not be the first. Count I of Plaintiffs' Complaint must be dismissed.

### B. Plaintiffs' First Amendment claim fails because that Amendment does not regulate redistricting.

In Count II of their Complaint, Plaintiffs urge this Court to be the first to entertain a First Amendment challenge to an alleged racial gerrymander. (*See* Compl. ¶ 120 (alleging that "racial gerrymandering, or 'cracking,' is a violation of the 'Assembly Clause' and the 'Petition Clause' of the First Amendment").) As explained in Arkansas's opening brief, the First Amendment does not regulate redistricting decisions, whether they are motivated by permissible partisan concerns or impermissible racial ones. And the heart of Plaintiffs' allegations—partisan gerrymandering—is nonjusticiable. *See Rucho*, 139 S. Ct. 2484.

Though Plaintiffs generally argue at times in their opposition brief that their claim isn't really about partisan gerrymandering, their First Amendment claim certainly is. In fact, their

7

Complaint defines a partisan gerrymander as "an effort to dictate electoral outcomes by favoring candidates of one party and disfavoring candidates of another." (Compl. ¶ 118 (quoting *Common Cause*, 317 F. Supp.3d at 800).)  And Plaintiffs assert that "the Republican majority in both houses of the Arkansas General Assembly" drew the 2020 congressional maps to 'dictate electoral outcomes by favoring candidates of one party and disfavoring candidates of another.'" (Compl. ¶ 119.)  Plaintiffs cannot seek to avoid the Supreme Court's rejection of partisan gerrymandering claims while at the same time complaining of an injury that is political.

Plaintiffs' only mention of the First Amendment in their opposition brief comes in its discussion of their Article I, section 2 claim, in which they block-quote two district-court cases involving partisan gerrymanders.  (*See* Doc. 18 at 26-28 (citing *Common Cause v. Rucho*, 318 F. Supp. 3d 777 (M.D.N.C. 2018), and *League of Women Voters of Mich. v. Benson*, 373 F. Supp. 3d 867 (E.D. Mich. 2019).)  Both of those cases considered partisan gerrymandering claims under the First Amendment, and both were vacated by the Supreme Court in *Rucho*.  *See* 139 S. Ct. at 2504 (holding that holding that partisan gerrymandering doesn't restrict "speech, association, or any other First Amendment activities").  They provide no support for Plaintiffs' assertion that the First Amendment says anything whatsoever about racial gerrymandering.  Count II of Plaintiffs' Complaint must therefore be dismissed.

### C. Plaintiffs' Privileges or Immunities Clause claim is frivolous, and their failure to even defend it demonstrates as much.

In their Complaint, Plaintiffs offer no supporting authority for their argument that racial gerrymandering violates the Fourteenth Amendment's "privileges or immunities" clause.  And in their opposition brief, Plaintiffs don't even bother to defend this claim.  The Court should dismiss Count III of Plaintiffs' Complaint.

> **D.   Plaintiffs' attempt to dress their partisan gerrymandering claim as a racial discrimination claim fails.**

1.  Plaintiffs claim that this not a partisan gerrymandering case. Yet Plaintiffs' Complaint and opposition brief are replete with references to underlying partisan motivations that are the purported bases of their claim. *See, e.g.*, Br. at 2 (describing the General Assembly's motivations as "the perpetuation of the election of white, *Republica*n members of Congress" (emphasis added)); *id.* at 4 (describing the purpose as "stem[ming] the increasing threat to the continued re-election of the *Republican* Congressional incumbent in the Second District" (emphasis added)). The allegations in Plaintiffs' Complaint are insufficient to state an equal-protection violation.

Plaintiffs' Complaint does not allege, nor does their opposition brief argue, that race was the "*predominant* factor motivating the legislature's districting decision." *Easley v. Cromartie*, 532 U.S. 234, 241 (2001). To be sure, read in the most favorable light to their claim's survival, Plaintiffs' Complaint can be read to allege that race was one factor among others, including partisanship, that motivated the General Assembly's adoption of the 2020 congressional maps. But a plaintiff must allege that race was not simply "*a* motivation for the drawing of a majority-minority district, but the *predominant* factor motivating the legislature's districting decision." *Id.* (citation and internal quotation marks omitted). Nor for that matter do Plaintiffs allege that the General Assembly "'subordinated' other factors—compactness, county splits, partisan advantage, etc.—to 'racial considerations,'" *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017). Instead, the heart of Plaintiffs' claim is that the majority-Republican Arkansas legislature enacted a congressional map that they thought would be more favorable to Republican candidates.

Nowhere in Plaintiffs' Complaint or opposition brief do they claim that race was the predominant motivation behind the 2020 congressional maps. That omission is fatal to their equal-protection claim, and this Court should therefore grant dismissal.

9

2. Plaintiffs make no mention of their claim under the state equal protection clause, Article 2, section 3 of the Arkansas Constitution. Because the standard for that claim is the same as under the Fourteenth Amendment (and Plaintiffs don't argue otherwise), this Court should likewise dismiss for failure to state a claim.

### E. The Fifteenth Amendment does not support Plaintiffs' vote-dilution claim.

As explained in Arkansas's opening brief, vote dilution is not a cognizable claim under the Fifteenth Amendment. *See Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000). ("W[e] have never held that vote dilution violates the Fifteenth Amendment . . . [and] we have never even 'suggested' as much.") (internal citations and quotations omitted). Indeed, the Supreme Court has "never [] held any legislative apportionment inconsistent with the Fifteenth Amendment." *Voinovich v. Quilter*, 507 U.S. 146, 159 (1993).

Plaintiffs do not address this argument in their opposition brief, and the Court should therefore dismiss Count V of Plaintiffs' Complaint.

### F. Plaintiffs' allegations demonstrate that their Voting Rights Act claim must be dismissed.

Plaintiffs' claims under Section 2 of the Voting Rights Act should be dismissed. They ask this Court to imply a private right of action to sue under Section 2 despite modern case law foreclosing that result. And they fail to even defend the merits of their vote-dilution claim, instead arguing that they can prevail on a discriminatory-intent theory. Plaintiffs are incorrect, and this Court should dismiss Count V of Plaintiffs' Complaint.

#### 1. Plaintiffs' Section 2 claim fails because private parties cannot bring actions to enforce that provision.

As another Court in this district recently held, Section 2 lacks a private right of action allowing suits brought by private parties to proceed in federal court. *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, No. 4:21-CV-01239-LPR, — F. Supp. 3d —, 2022 WL 496908, at

\*17 (E.D. Ark. Feb. 17, 2022) (concluding that only the United States Attorney General may sue to enforce Section 2).  Count V of Plaintiffs' Complaint must therefore be dismissed.

      The text of the VRA does not include a private right of action to enforce Section 2.  Plaintiffs don't argue otherwise, instead claiming that one may be implied, either from the text or other cases in which rights of action were found to enforce other sections of the VRA.  In arguing that Section 2 contains a private right of action, Plaintiffs fail to even address the Supreme Court's modern standard on implied rights of actions.  As Judge Rudofsky recently observed, under *Alexander v. Sandoval* and its progeny "judicially implied rights of actions are now extremely disfavored."  *Ark. State Conf. NAACP*, 2022 WL 496908, at \*10.  Although the Supreme Court has previously found rights of action to exist for Section 5 and Section 10 of the VRA under the pre-*Sandoval* standard, it has only "assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under [Section 2]."  *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring).  Indeed, both *Allen v. State Bd. of Elections*, and *Morse v. Republican Party of Virginia*, extensively block-quoted by Plaintiffs in their opposition brief, were decided prior to *Sandoval*.  Neither of these cases provide a persuasive justification for implying a private right of action to enforce Section 2.

      As Judge Rudofsky noted, "the Supreme Court has specifically identified *Allen* as a defective product of an outdated jurisprudence that too loosely implied private rights of action where Congress had created none."  *Ark. State Conf. NAACP*, 2022 WL 496908, at \*15 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017)).  And the Supreme Court has abandoned the approach it took in *Morse*, where it implied a right of action to enforce Section 10 of the VRA because the Court's right-of-action jurisprudence in 1965 was much more liberal.  *See Morse v. Republican Party of Va.*, 517 U.S. 186, 231 (1996) (plurality opinion)  (noting that even in 1996

11

when Morse was decided, modern right-of-action jurisprudence made the existence of a right of action under Section 10 dubious). But in *Sandoval*, the Court rejected the use of the "contemporary legal context" of a statute to imply a right of action that would not exist under modern standards. 532 U.S. 275, 287 (2001). Yet Plaintiffs ask this Court to do just that here, failing to even grapple with *Sandoval* and its progeny.

Plaintiffs' assertion that Section 2 contains a private right of action cannot be squared with modern precedent and should be rejected. The Court should therefore dismiss Count V of Plaintiffs' Complaint.

### 2. Plaintiffs' Section 2 claim fails on the merits.

As explained in Arkansas's opening brief, Plaintiffs do not claim to be able to meet the *Gingles* preconditions which are necessary to state a vote-dilution claim under Section 2. They admit that the number of black voters in Arkansas are not "sufficiently large and geographically compact to constitute a majority in a single-member district." *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986). They instead claim that black voters could only elect a candidate of their choice in District 2 with sufficient white crossover voting. (*See* Compl. ¶¶ 35-36.) That does not satisfy *Gingles* 1, and Plaintiffs don't argue otherwise. *See Bartlett v. Strickland,* 556 U.S. 1, 23 (2009) (plurality opinion) ("[Section] 2 does not mandate creating or preserving crossover districts."). Nor do Plaintiffs claim that "that the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 50. Actually, they allege the opposite. (*See* Compl. ¶ 36 ("Recent elections, including those in the Second Congressional District, suggest strongly that many Whites will support and vote for a Black candidate, and a racial majority is not required for that to happen.").) That means they fail to satisfy *Gingles* 3. *See Bartlett*, 556 U.S. at 16 ("It is difficult to see how the majority-bloc-voting

12

requirement could be met in a district where, by definition, white voters join in sufficient numbers with minority voters to elect the minority's preferred candidate.").

Plaintiffs offer no argument in their opposition brief that they can meet the *Gingles* requirements, and the Court should thus dismiss any vote-dilution claim under the VRA's results test. Instead, they claim that they can prevail under Section 2 if they show discriminatory intent in the General Assembly's adoption of the 2020 congressional maps. For the reasons explained above, their Complaint does not plausibly allege intentional racial discrimination, and those claims ought to be dismissed.

Plaintiffs are also wrong that they can prevail under Section 2 merely by showing discriminatory intent. Plaintiffs rely on the Ninth Circuit's decision in *Garza v. County of Los Angeles* to argue that they can pursue an intent claim under Section 2 without meeting the *Gingles* requirements for a results claim, but *Garza* didn't hold that. Indeed, the Eighth Circuit cited *Garza* in "reject[ing]" the "argument that a [section] 2 'intent' claim does not require proof of a discriminatory effect." *African Am. Voting Rts. Legal Def. Fund, Inc. v. Villa*, 54 F.3d 1345, 1357 n.18 (8th Cir. 1995). The court went on to say that the Supreme Court's post-*Garza* decision in *Voinovich v. Quilter*, 507 U.S. 146 (1993), is a "ringing endorsement of the requirement of a discriminatory effect." *Villa*, 54 F.3d at 1357 n.18. There, the Supreme Court held that Section 2 "focuses exclusively on the consequences of an apportionment," and "where such an effect has not been demonstrated, [Section] 2 simply does not speak to the matter." *Voinovich*, 507 U.S. at 155. Given that language, the Eighth Circuit agreed that it was "'no longer clear that intent plays any role in a suit under section 2.'" *Villa*, 54 F.3d at 1357 n.18 (quoting *Barnett v. Daley*, 32 F.3d 1196, 1202 (7th Cir.1994)). The Eleventh Circuit has agreed, holding that Section 2 "expressly requires a showing of discriminatory results, and it admits of no exception for

13

situations in which there is discriminatory intent but no discriminatory results." *Johnson v. DeSoto Cty. Bd. of Comm'rs*, 72 F.3d 1556, 1563 (11th Cir. 1996).

Thus, Plaintiffs' failure to sufficiently allege any of the *Gingles* preconditions is fatal to their claim under Section 2, whether they attempt to proceed under an results or intent theory. Count V of Plaintiffs' Complaint should therefore be dismissed.

.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated:  May 23, 2022                                    Respectfully submitted,

                                                      LESLIE RUTLEDGE
                                                        Arkansas Attorney General
                                                      NICHOLAS J. BRONNI (2016097)
                                                        Solicitor General
                                                      DYLAN L. JACOBS (2016167)
                                                        Deputy Solicitor General
                                                      OFFICE OF THE ARKANSAS
                                                        ATTORNEY GENERAL
                                                      323 Center Street, Suite 200
                                                      Little Rock, Arkansas 72201
                                                      (501) 682-2007
                                                      (501) 682-2591 (fax)
                                                      Dylan.Jacobs@arkansasag.gov

                                                      *Counsel for Defendants*