CASE NUMBER: 4:2002CV00213-JM-DRS-DPM DOCUMENT: _____        PAGE: _____
DATE FILED: FEBRUARY 23, 2023

No.: 41

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JACKIE WILLIAMS SIMPSON, REPRESENTATIVE DENISE ENNETT, WANDA KING, CHARLES E. BOLDEN, SENATOR LINDA CHESTERFIELD, AND DR. ANIKA WHITFIELD**
Plaintiffs,

v.

**ASA HUTCHINSON, IN HIS FORMER OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF ARKANSAS; AND JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS THE ARKANSAS SECRETARY OF STATE, AND THE STATE OF ARKANSAS**
Defendants.

## BRIEF OF FORMER DEMOCRATIC NOMINEE
## FOR THE
## 118TH CONGRESS (2023-2025)
## UNITED STATES HOUSE OF REPRESENTATIVES
## ARKANSAS' SECOND DISTRICT (AR-02)
## AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 2 3 2023

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

**DR. QUINTESSA HATHAWAY**
**P.O. BOX 6121**
**SHERWOOD, ARKANSAS 72124**

QUINTESSAHATHAWAY.COM                    DIRECT/CELLULAR (615) 473-3213
QUINTESSA_HATHAWAY@HOTMAIL.COM           FACSIMILE (615) 468-0853

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................…........ ii

INTEREST OF AMICUS CURIAE ..................................................…...... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................…..... 3

ARGUMENT ....................................................................................... 5

    **I.**    Statistical Argument ......................................................... 5

    **II.**    Argument On Section Two (2) of the Voting Rights Act And 14th Amendment ....... 6

    **III.**    Argument On Section Three (3)(c) of the Voting Rights Act ............................ 7

    **IV.**    Geographic Argument ....................................................…...... 9

    **V.**    Shape And Proportionality Argument ....................................…..... 9

    **VI.**    Executive Leadership Argument ............................................. 10

    **VII.**    Freedom Of Information Act Request ...................................... 10

CONCLUSION ............................................................................. 12

    *Politicians And The Courts* ...................................................….... 12

    *Composition Of Arkansas' Second Congressional District* ................................. 13

    *The Confederacy* ..................................................................... 15

    *Statistical Evaluation* ...........................................................…... 15

    *Resolution* ............................................................................…... 17

    *Recommendations* ..................................................................... 17

    *Closing Statement* ...............................................................…... 17

APPENDIX ...................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) ..................................................... 4

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ........................................................... 6

*Reynolds v. Sims*, 377 U.S. 533 (1964) ............................................................. 7

*Shelby County. v. Holder*, 133 S. Ct. 2612, 2631 (2013) ......................................... 7

*Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990) ............................................. 8

*Wesberry v. Sanders*, 376 U.S. 1 (1964) ............................................................ 9

*Moore v. Harper*, 142 S. Ct. 1089 (2022) .......................................................... 18

*Black Voters Matter Capacity Building Institute v. Byrd*, 339 So. 3d 1070 Fla. Dist. Ct. App. (2022) ............................................................................................ 18

*Merrill v. Milligan*, 595 U. S. ___ (2022) ......................................................... 18

*Ardoin v. Robinson*, 37 F.4th 208 5th Cir. (2022) ............................................... 18

### STATUTES

Article I, § II of the United States Constitution ................................................... 2

Article I, § II, Clause III ............................................................................. 5

Article IV, § II, Clause III ........................................................................... 5

52 U.S.C. §10301(a) .................................................................................. 7

52 U.S.C. § 10301(b) ................................................................................ 7

Section 3(c) of the Voting Rights Act ............................................................... 8

Apportionment Clause of Article I, § 2 of the United States Constitution ...................... 10

### OTHER AUTHORITIES

United States Census Bureau, Arkansas-South State Profile (August 25, 2021) ............ passim

United States Census Bureau, Race and Ethnicity in the United States: 2010 Census and 2020 Census (August 25, 2021) ........................................................................ passim

State Centers of Population 1880-2020: Arkansas (United States Census, 2020) ................... 9

United States Census Bureau, 117th Congress' My Congressional District: Arkansas 2021, American Community Survey 1-Year Estimates ........................................................... 9

Andrew DeMillo, *Arkansas Governor Oks House Map Splitting Little Rock Area*, AP News, (October 13, 2021) ...........................................................................................10

Secretary of State Election Division ...................................................................... 14

Cleburne County, Our History, www.cleburnecountyar.com/history, (2013) ..................... 15

**LIST OF TABLES ........................................................................... 21**

TABLE 1: ARKANSAS SENATE COMPOSTION BY RACE, GENDER, AND PARTY ..................................................................................................... 21

TABLE 2: ARKANSAS HOUSE COMPOSTION BY RACE, GENDER, AND PARTY ..................................................................................................... 22

TABLE 3: RACIAL DEMOGRAPHICS OF THE SECOND CONGRESSIONAL DISTRICT (NUMBER OF PEOPLE AND PERCENTAGE OF TOTAL POPULATION) ..................................................................................................... 25

TABLE 4: RACIAL DEMOGRAPHICS OF THE SECOND CONGRESSIONAL DISTRICT (PERCENTAGE OF TOTAL POPULATION INCREASE AND DECREASE IN NUMBER OF PEOPLE AND PERCENTAGE OF CHANGE FROM 2010 TO 2020) ..................................................................................................... 26

TABLE 5: DISTANCE DATA (STATE CENTER, CENTER OF PULASKI COUNTY SEAT, AND AFFECTED AREAS) .................................................... 27

**LETTER TO THE UNITED STATES DEPARTMENT OF JUSTICE ...................... 28**

Certificate Of Service Statement ...................................................................... 30

Motion For Leave: Permission To Enter Case ...................................................... 31

## INTEREST OF AMICUS CURIAE

Amicus Curiae Dr. Quintessa Hathaway is the former Democratic Nominee for the 118th Congress (2023-2025), United States House of Representatives for Arkansas' Second District (AR-02). Dr. Hathaway is highly learned and holds a Bachelor of Arts in Political Science from The Jackson State University, as well as Master of Education, Specialist in Education, and Doctor of Education from Tennessee State University. Her groundbreaking dissertation, *The Common Core State Standards Initiative And The Achievement Gap* was a national analysis on our country's educational policy. It is steeped in scholarship and her research supports better policymaking, practicum, and deeper engagement with those on the public square in its approach to pedagogy and curriculum when it comes to the shrinking the racial achievement gap.

She is a published author, poet, has an active research agenda, and several works in manuscript that discuss social justice, voting rights, and educational equality in America. For approximately ten (10) years, she has written an international political and educational blog, *A Talk With The Community: Politics, Education, And Other Social Issues.* One of her bestselling and seminal books was birthed from and took its name from the blog.

In 2006, Dr. Hathaway sought to be a member of the 105th Tennessee General Assembly in the House of Representatives serving District 53 (parts of South Nashville and Antioch). She made history being among the youngest and an African American woman candidate to ever seek the state legislative seat. Furthermore, since 2007, she has conducted voter registration drives in three states, Tennessee, Arkansas, and Georgia.

Dr. Quintessa Hathaway continues to serve the community as a distinguished educator and educational leader for over sixteen (16) years in various capacities and content areas coast-to-coast.

She is the founder, chief executive officer, and lead consultant of Q. Hathaway & Associates, LLC, a national results-driven education consulting and professional development provider based in metropolitan Little Rock, Arkansas.

Dr. Quintessa Hathaway has an interest in the outcome of the cases regarding the racial and partisan gerrymandering of Arkansas' Second Congressional District (AR-02), as well as being an advocate for the citizenry. She supports the Plaintiffs as they challenge laws, practices, and policies that discriminate against African Americans and voter suppression.

Following Article I, § II of the United States Constitution of taking the census and reappointment statutes, the Arkansas legislature was tasked with redrawing its four (4) congressional electoral districts. The court ought to find that the state Republican supermajority legislature, former 46th Governor Asa Hutchinson, 34th Secretary of State John Thurston, and former 56th State Attorney General Leslie Rutledge, and the Arkansas Board of Apportionment unconstitutionally violated the Equal Protection Clause of the Fourteenth (14th) Amendment, the Fifteenth (15th) Amendment, the Arkansas Constitution, as well as the Voting Rights Act of 1965. The unconstitutionality of the current map and its manipulation has an overture of racism, discrimination, and a point of historic proportionality.

America continues to address race, gender, and age both implicitly and explicitly constitutionally and through federal and state statutes. It is time for the courts, this court to affirm and redress the African American vote for Arkansas' Second Congressional District (AR-02). This amicus curiae serves to urge the United States District Court, Eastern District of Arkansas (Central Division) to adjudicate favorably for the Plaintiff; as well as recognize a congressional map representative of the minority population of the District and Pulaski County, Arkansas.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Historian, Sociologist, and Co-Founder of the National Association for the Advancement of Colored People (NAACP) Dr. William Edward Burghardt DuBois stated, "The power of the ballot we need in sheer defense, else what shall save us from a second slavery?" With similar urgency and fervor, this amicus brief is based.

Founding Father, Third (3rd) President of the United States of America, and Slaveholder Thomas Jefferson's Declaration of Independence should have penned, "We hold these truths to be self-evident; that all men, women, and children are created equal." And, I will add that the awesome tragedies of our national history are:

(a) The Framers did not abolish enslavement of Africans and indigenous people while crafting the Constitution the Summer of 1787,

(b) Jim and Jan Crow Segregation was not overturned for approximately one hundred (100) years after the Civil War,

(c) A revised version of the Three-Fifths Compromise (a constitutional construct which slaveholders counted three-fifths (3/5) of their slaves as persons for political representation purposes) is alive and well;

(d) There is under-counting of the slaves' great-grandchildren and their offspring and those of Hispanic descent and over-counting of the slavers' great-grandchildren and their offspring. All of this is done in the notion and posture of a representative, constitutional, presidential democracy.

The promise of equality is rooted in our founding creed. Yet, it took a four yearlong Civil War, which in a regard, is still being fought in our state and federal legislative chambers in present-day, a decade of military occupation in the southern states, former Confederate States of America;

the Thirteenth, Fourteenth, and Fifteenth (13th, 14th, and 15th) Amendments, a Reconstruction Era, and hundreds (100s) of years of oppression, suppression, and repression to cause this nation to throw off its shackles of hypocrisy and latch on to a semblance of full democracy.

The African in America is the only group of people who were in bondage, gave citizenship, and granted freedom under the same United States Constitution and its interpretations. Yet, somehow, someway, someone expressed this same United States Constitution cannot grant minority-majority congressional district. It has limitations on excessive partisanship and its capacity of federal courts to settle such disputes, *Rucho v. Common Cause*. 139 S. Ct. 2484 (2019).

The racial layered with partisan gerrymandering of Arkansas' Second Congressional District (AR-02) is a reminder that Republicans of the 93rd State Legislature, who were one hundred twenty-one (121) whites combining both chambers of one hundred thirty-five (135), were desperate to hold on to or amplify power. They sought to thwart the efforts of African Americans having equitable federal representation.

This brief serves to supplement and supplant the Plaintiffs causes of action while speaking to the legal, theoretical, historical, and constitutional aspects of congressional racial gerrymandering nationwide. The Defendants and the Republican Party of Arkansas have allowed philosophy to overrun conscience and have walked away from public good. Their allegiance and beliefs are out-of-step with the racial demographic shift of the Second Congressional District and the country.

If America is to remain a global center of politics and a beacon of multiculturalism, we must grant quality of opportunity and greater representation under the law among and between the races. We shall not allow racism and inequality to continue to rip at the heart and fabric of America.

## ARGUMENT

Race-based politics is enshrined into our constitution via the 13th, 14th, and 15th Amendments, the Three-Fifth Clause (<u>Article I, § II, Clause III</u>), and the Fugitive Slave Clause (<u>Article IV, § II, Clause III</u>). The state of Arkansas has a long history and struggles still with the latter two (2) amendments, specifically in the areas of full citizenship, voter discrimination and suppression. Similar sentiments and facts are expressed consistently in each reapportionment case that has recently been brought before the courts.

Furthermore, the Arkansas legislature is grossly out-of-step with the diversity and pluralist direction of the state and their map manipulation affirms the previous statements. The Defendants' intent was to achieve incumbency protection, create and enhance a white voting bloc, and expand a Republican partisan advantage.

All entities and parties named in this amicus brief associated with diluting the African American vote, created liability and conflictuality with the Voting Rights Act of 1965. Section Three (3) of the Voting Rights Act should be instated. Section Five (5) preclearance of the Voting Rights Act (VRA) should have been applicable to the state of Arkansas given its rich legacy of enslavement, racial segregation, and voter suppression.

### I.   Statistical Argument

In the Second Congressional District and throughout the state, there is a strong positive relationship and correlation between political affiliation and racial identification. Based upon the 2010 and 2020 United States censuses for the state of Arkansas and voter turnout data from the Office of the Arkansas Secretary of State, the Second Congressional District was reapportioned to:

a) be whiter in racial composition,

b) more Republican,

c) argue there is a statistically significant relationship between whiteness and Republican Party affiliation, and

d) argue there is a statistically significant relationship between African Americans and Democratic Party affiliation,

e) be data collection of how many new voters were added by race and party affiliation in 2018, 2020, and 2022 and,

f) be data collection and analysis on migration by race and political party.

## II.     Argument On Section Two (2) of the Voting Rights Act And 14th Amendment

There was a violation of Section Two (2) of the Voting Rights Act. *Thornburg v. Gingles*, <u>478 U.S. 30 (1986)</u> argued, (1) the minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) the minority group must be "politically cohesive"; and (3) the majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate.

The Republican supermajority state legislature deliberately divided the state's most populous county and minority dominated hub, according to race, with surgical precision. The affected areas by the reapportionment are Wrightsville, Sweet Home, College Station, Woodson, and a portion of Little Rock. All these communities and municipalities are majority-minority in racial demographic and account for approximately 24,000 African American voters.

An argument for racial skewness should be made. A determination if and/or to what extent was the District skewed whiter. This data will aid to support or negate the "one person, one vote"

principle as outlined in the Equal Protection Clause of the Fourteenth (14th) Amendment and *Reynolds v. Sims*, <u>377 U.S. 533 (1964)</u>.

Section Two (2) of the Voting Rights Act established a "permanent, nationwide ban on racial discrimination in voting" and affirmed in *Shelby County. v. Holder*. <u>133 S. Ct. 2612, 2631 (2013)</u>. It prohibited any "voting qualification or prerequisite to voting or standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." [1] A violation of Section Two (2) established when members of a minority group "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." [2]

### III.   Argument On Section Three (3)(c) of the Voting Rights Act

On Tuesday, January 31, 2023, I sent a letter to the 86th United States Attorney General Merrick Garland requesting the support of the Department of Justice to challenge laws, practices, and policies that discriminate against African Americans and voter suppression which divided, "cracked" Pulaski County, Arkansas into three (3) congressional districts.

Legal assistance and oversight will determine the value of our democracy, and promote the progression of all races, ethnicities, colors, creeds, and national origins in the Second Congressional District (AR-02). Federal intervention can grant political legitimacy and allow it to

---

[1] 52 U.S.C. §10301(a) (No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

[2] 52 U.S.C. §10301(b) (A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population).

rule and abide in Arkansas. Furthermore, I seek for the Department of Justice to immediately investigate and scrutinize the map manipulation, racial discrimination, and voter suppression of Arkansas' Second Congressional District (AR-02).

Section 3(c) of the Voting Rights Act states, "If in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of such State or political subdivision, the court, in addition to such relief as it may grant, shall retain jurisdiction for such period as it may deem appropriate and during such period no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force or effect at the time the proceeding was commenced shall be enforced unless and until the court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the voting guarantees set forth in section 10303(f)(2) of this title:"

Arkansas has a history of African American vote dilution, as expressed in *Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990). A heavy lift from the Department of Justice is necessitated. It is time for federal superintendence to intervene on the behalf of the citizens of the Second Congressional District interest. The State of Arkansas is in defiance of Section 3(c) of the Voting Rights Act and should be placed in retention of jurisdiction to prevent commencement of new devices to deny or abridge the right to vote. The United States Department of Justice has the authority to execute this statute upon finding a violation.

## IV.    Geographic Argument

The state center of population according to the 2020 United States Census is 35°11'57.0" N 92°42'48.0" W, Welborn Township in Morrilton, Conway County, Arkansas according to the State Centers of Population 1880-2020: Arkansas (United States Census, 2020). [3] The redistricting process fell flat when it came to traditional reapportionment principles of compactness, contiguity, or preservation of counties, municipalities, or other political subdivisions.

In state Senate and House districts with a sizable and majority-minority population within the Second Congressional District, those voters tend to vote Democratic Senate Districts: 30, 31, and 32 and House Districts: 29, 30, 32, 33, 34, 35, 36, 37, and 42.

## V.    Shape And Proportionality Argument

The shape of the Second Congressional District is highly irregular. Instead of resembling a salamander, from the word "gerrymanders" origin, the District is shaped like a two (2) tailed goldfish. The political cartographer(s) and approvers of the congressional maps did not have to change the map at all. Pulaski County could have remained whole and the other six (6) counties could have been maintained.

There are four (4) congressional districts in Arkansas. *Wesberry v. Sanders,* 376 U.S. (1964) expressed districts must be as equal in population as possible. According to the 117th Congress' My Congressional District section of the 2020 United States Census, the populous of each district is as followed: 1st (714,143), 2nd (771,880), 3rd (851,053) and 4th (688,815). The average is 756,472.8 with a standard deviation of 62,354.2. The range is 162,238. The Third (3rd)

[3] United States Census Bureau, State Centers of Population 1880-2020: Arkansas, (October 29, 2021) https://www.census.gov/geographies/reference-files/time-series/geo/centers-population/historical-by-state/centers-of-pop-arkansas.html

Congressional District has seen the most rapid growth and is grossly out of balance with the case law. The population of the Third Congressional District (AR-03) challenges the <u>Apportionment Clause of Article I, § 2 of the United States Constitution</u>, each district is nearly equal in population.

## VI.     Executive Leadership Argument

Additionally, Gov. Asa Hutchinson could have done more than give lip service stating, "While the percentage of minority populations for three of the four congressional districts does not differ that much from the current percentages, the removal of minority areas in Pulaski County into two different congressional districts does raise concerns." [4] He could have taken on greater leadership, use the power of influence, and presented or selected a fairer congressional map to the legislature. Instead, he implemented a pocket veto and supported the status quo. He took no risks, utilized little political capital, or achieved a vision of diversity, equity, and inclusion which he perceives to espouse.

## VII.     Freedom Of Information Act Request

A Freedom of Information Act (FOIA) request ought to be made for copies of all correspondences, agenda, and etcetera pertaining to the creation of the congressional map and the legislative processes to the passage of it. Furthermore, there should be a discovery and made available all reports pertaining to the preparation of the congressional maps from the beginning to date. In addition, these materials ought to be made available to the public.

Any emails and exchanges sent to or from and between and among Arkansas's Bureau of Legislative Research, the Republican General Assemblymembers in both chambers, former Governor Asa Hutchinson, Secretary of State John Thurston, Congressmen Rick Crawford (AR-

---

[4] Andrew DeMillo, *Arkansas Governor Oks House Map Splitting Little Rock Area*, AP News, (October 13, 2021), https://apnews.com/article/congress-asa-hutchinson-arkansas-little-rock-elections ef96ca92ca6a5bd99f2e6beba715a6cb.

01), French Hill (AR-02), and Bruce Westerman (AR-04), United States Senators Thomas Cotton and John Boozman, State Senator Jane English (District 34) and State Representative Nelda Speaks (District 100), their staffers, the Arkansas Board of Apportionment, all agencies and/or entities who drafted maps, and the like. Correspondences of all individuals and entities who expressed interest, stated discontent, and supported the congressional maps should be made available in accordance with the Open Records Act and not to exceed three (3) business days. The documents should be received electronically.

## CONCLUSION

The United States and Arkansas constitutions and their codes establish a broad framework for elections and form a sound basis for the respect of fundamental political rights. Allegations of racial gerrymandering were the central focus of the Plaintiffs and are affirmed in this amicus brief.

The Second Congressional District was reapportioned in such a way that it became highly politicized and litigious action followed. An inquiry must be conducted as to what algorithm was used by a competent body to construct the Second District. Under current conditions, the map lacks competitiveness, representativeness, and the fair representation of minorities, which are at odds with the Voting Rights Act of 1965, the United States Constitution, and federal statutes. This case, like the others, question the aptitude of the cartographers and Defendants who supported crafting the Second Congressional District map adopted by state legislatures. The true linchpin before the court is whether there was use of racial demographics in redistricting and whether relief will be granted. That is in addition to providing fair representation, a minority perspective should be introduced and maintained.

The 1965 Voting Rights Act (VRA) enfranchised African Americans, minorities wholly, and naturalized citizens from Asian, Central and South American, and African nations. A thrust of the law became evident and had great stock, influence, and potency in the 2008 and 2012.

### *Politicians And The Courts*

Essentially, we are asking Republicans who are majority white stakeholders to behave against their self-interest. We are asking the court to strike down gerrymandered boundaries in order to create a just electoral system and move towards parity. We are asking for elected and appointed judges to scrutinize gerrymandering by the legislature.

The 93rd Republican supermajority legislature, the former governor, the current secretary of state, and the incumbent congressman (AR-02) believe they are protected from political repercussions. There is an inherent fear among this group that increased African American representation would result in progressive legislation and deter conservative laws, rules, and regulations, and that a real and historic investment will be voiced in education, enfranchisement, justice, and social matters. There may be an inherent fear of further appeal, and a correlation and argument for voting as a First (1st) Amendment claim that rises to the United States Supreme Court.

Judges must have the will to promote democracy. There are provisions in the state constitution, federal statutes, and court briefs that can be read, analyzed, and applied to eradicate partisan and racial gerrymandering and right wrongs.

The courts have a decision to make on interpreting federal and state laws which have the ability to change, modify, enhance, disapprove important aspects of the electoral process. The For the People Act of 2021 and the John R. Lewis Voting Rights Advancement Act of 2021 hang in the balance. Although the bills do not remedy centuries of disenfranchisement and discrimination, they comprehensively address several long-standing issues of American electoral politics.

### *Composition Of Arkansas' Second Congressional District*

The current composition of the Arkansas' Second Congressional District does not align to the standards, objectives, aims, and values of We, the People. The supermajority Republican legislature and its stakeholders targeted minorities with the intent of putting into practice voter suppression.

The current map intends is for a Republican (i.e., the incumbent) to fashion a long career in the United States House of Representatives. That is counter to the number of registered

Democratic voters in the Second District.

The African American population in Pulaski County, Arkansas is 143,548 (36.0%). This racial bloc votes overwhelmingly Democratic. Undermining a congressional challenger who is Democrat or African American and/or a person of color leaves those same groups underrepresented in the federal political systems.

Based on the <u>Secretary of State Election Division</u> data as of December 30, 2022, the Second Congressional District is Democratic:

(a) Cleburne County Registrants: 712 Democrats, 3,479 Republicans, 1,4215 Optional, Grand Total 18,411;

(b) Conway County Registrants: 326 Democrats, 577 Republicans, 10,877 Optional, Grand Total 11,781;

(c) Faulkner County Registrants: 2,233 Democrats, 3,628 Republicans, 71,990 Optional, Grand Total 77,872;

(d) Perry County Registrants: 213 Democrats, 383 Republicans, 5,967 Optional, Grand Total 6,567;

(e) Pulaski County Registrants: 25,505 Democrats, 12,921 Republicans, 203,463 Optional, Grand Total 242,091;

(f) Saline County Registrants: 3,064 Democrats, 5,859 Republicans, 70,094 Optional, Grand Total 79,051;

(g) Van Buren County Registrants: 493 Democrats, 1,121 Republicans, 11,235 Grand Total;

(h) White County Registrants: 1,896 Democrats, 3,751 Republicans, 39,498 Optional,

Grand Total 45,166; and

(i) Totals Registrants: 34,442 Democrats, 31,719 Republicans, 425,720 Optional, Grand
Total 492,174

Burden of proof ought to be placed on the Defendants to justify why they divided Pulaski
County, Arkansas into three (3) congressional districts (1, 2, and 4). Instead, a burden of evidence
and testimony has been placed on the Plaintiff to prove racial and partisan gerrymandering.

### *The Confederacy*

The Confederate attitude is still fighting in the Civil War and Arkansas is one of its last
battlegrounds. It is said full throated with the reminder that Cleburne County was named after
Confederate Major General Patrick R. Cleburne, who defended slavery.[5]

Cleburne County should not have been added to the Second District. Whiteness is choking
up the principles of democracy. Arkansas, America refuses to address the hard reality that it is
changing and becoming blacker, browner, redder, yellower, and less white. Elected leadership at
federal, state, and local government should follow suit.

### *Statistical Evaluation*

My affection and respect for the Second Congressional District, the state of Arkansas and
its people, and the South are my intellectual and legal thrust of the matter of gerrymandering.

There has been a self-education and conversations with Plaintiffs on this issue which
compelled me to record this amicus brief. Racial gerrymandering has no place in Arkansas or
America. Nevertheless, this weighted matter comes squarely to the table every decennial leading
to and after the census. There is potential political cost for current, aspiring, and future elected
official of the Second Congressional District, the state, and nation. Whether inferred or explicit

[5] Cleburne County. (2013). Our history. www.cleburnecountyar.com/history

this legal issue involves a most basic and difficult relationship, the social contract.

A statistical evaluation ought to be conducted of the following years: 2008 (election of President Barack Obama), 2010 (census year), 2012 (effect of implementation of reapportionment and midterm election year), 2016 (election of the 45th President), 2020 (census year and election of the 46th President Joe R. Biden, Jr.), and 2022 (effect of implementation of reapportionment and midterm election year). Such a measurement ought to display a breach.

The 2024 General Election is one the horizon. This is the moment to determine the value of democracy, to promote the progression of all races, colors, creeds, national origins, and faiths. This is the moment we; Arkansans should operate as a collective and hold true to our conviction of equality. This is the same region that integrated Little Rock Central High School in 1957 thanks to the heroism of nine African American students and their mentor, Mrs. Daisy L. Gatson-Bates. This is the moment we make the District over again, establish a new order, and believe in the power of possibilities. This is the moment where we push humanity to a higher plane.

It is time for the goalpost to stop being moved or get taller every time there is Washingtonian progress, but little in Arkansas on the statewide and federal levels. It is time for political legitimacy to rule and abide in Arkansas. It is time for Arkansas to come in line with the rest of the nation. The Second District is ready to demonstrate how a coalition of socially stratified citizens can shape federal politics at an opportune time. There is no birthright or property right to the ballot box. We are the people who love freedom, who walk in liberation, who stand on truth and attend houses of worship, who have a respect and recollection of history, and who lean on the United States Constitution as a founding and revolutionary document. We can break the seal of silence. We can restore sanity and humanity to the political process. Our diversity is our strength.

### *Resolution*

Resolutions to this case are redesigning the congressional maps or adopting a map suggested by the Plaintiffs. This court ought to reunite the African American community and Pulaski County into the Second Congressional District and disconnect Cleburne County.

### *Recommendations*

The State of Arkansas is in a limited class which it has not established a civil rights commission to examine minority voting rights or the enforcement of the Voting Rights Act of 1965. Such an entity ought to be in force. Secondly, every regional and national civil and voting rights organization should have a branch or chapter in the state. There are discriminatory laws and practices in place and there is a need for proactive and reactive measures and litigious spotlights.

Statistical data collection, disaggregation, analysis, and interpretation is mandated to determine pre- and post-reapportionment number of registered voters and turnout, as well as pre- and post-reapportionment voting age population. Additionally, the youth must be highly activated and engaged in the political process. Measurements ought to be taken from a baseline of the 2022 General Election and the forthcoming 2024 General Election once all racial and partisan gerrymandering legal disputes are settled. Data should drive political decisions and reforms. This court can aid the state in transforming institutions. This is a moment to meet the moral challenge.

### *Closing Statement*

According to Rev. Dr. Martin Luther King, Jr., in his work, *Why We Can't Wait*, he stated, "When such a people begin to move, they create their own theories, shape their own destinies, and choose the leaders who share their own philosophy. A leader that understands this kind of mandate knows that he must be sensitive to the anger, the impatience, the frustration, the resolution that

**17 | P a g e**

have been loosed in his people. Any leader who tries to bottle up these emotions is sure to be blown asunder in the ensuing explosion."

We the People of conscience ought to cultivate a path that creates opportunity for ourselves and shape a brighter destiny. We the People deserve universal and equal suffrage. We the People define how power is gained and exercised in this country. We the People are disenchanted with the regime which runs roughshod over our rights. We the People must push back against the multipronged assault on democracy and suffrage. We the People must hold elected officials accountable to the promises of free and fair elections. We the People must ensure our state and nation lives up to its highest ideals.

The Reverend Jesse L. Jackson, Sr., stated in Doha, Qatar in 2011, "We espouse democracy with theory and rhetoric. But we choose control and domination over growth. The United States evolved with slavery and an imperfect democracy coexisting; with an imperfect democracy and suppressing the rights of women coexisting; with an imperfect democracy and denying minorities a role coexisting. When African Americans rose up and brought freedom in America, it was not due to communism or foreign intervention or interference. It was born of our quest for dignity."

The racial and partisan gerrymandering that is happening in Arkansas and across the nation, in North Carolina's *Moore v. Harper*, 142 S. Ct. 1089 (2022) which the State of Arkansas supports the Petitioners), Florida's *Black Voters Matter Capacity Building Institute v. Byrd*, 339 So. 3d 1070 Fla. Dist. Ct. App. (2022), Alabama's *Merrill v. Milligan*, 595 U. S. _ (2022), and Louisiana's *Ardoin v. Robinson*, 37 F.4th 208 5th Cir. (2022) are demonstrations that Republican state legislatures nationally seeks to strip the strength of the African American vote. Our democracy cannot continue to coexist where minority voting rights are diminished, and their light dimmed

and dampened. African Americans are on a quest for dignity over division.

There is a systemic intent to erode the progress won during the American Civil Rights Movement of the 1950s and 1960s. Some courts are behaving counter to the interest of African American voters. This is no time to stand idly by. The black vote is the key to democracy. We must build a political coalition which resonates with the people in such a way that reflects Southern Democrats. The key is voter turnout in minorities communities and we must not wane or become apathetic or fatigue. For to take the region back, the offspring of former slaves must be brought into the political mainstream.

Quoting former Illinois Senator Barack Obama in his 2004 Democratic National Convention speech, "In the end, that is God's greatest gift to us, the bedrock of this nation; the belief in things not seen; the belief that there are better days ahead...I believe that as we stand on the crossroads of history, we can make the right choices, and meet the challenges that face us. America!

Ending racial gerrymandering is a part of the new freedom fight. We are living in a time which I call, "The Second Civil Rights Movement." We are called upon to defend our rights of full citizenship at the ballot box. Bipartisan legislation must go onward to fully restore all sections of the Voting Rights Act of 1965. We must lean forward and rectify race-based disparities. We must look upward to our federal government to examine racial discriminatory policies. We must be willing to grow outward and pass the Judiciary Act of 2021 to bring balance to the United States Supreme Court. Then, "we stand on the crossroads of history, we can make the right choices, and meet the challenges that face us. America!" Let's take Arkansas' Second Congressional District Onward, Forward, Upward, and Outward!

**APPENDIX**


**NOTES:**
**TABLES 1 AND 2 ARE BASED ON THE 93RD ARKANSAS STATE LEGISLATURE**
**TABLES 3 AND 4: BASED ON 2020 UNITED STATES CENSUS BUREAU DATA**
**COLLECTION**

**TABLE 1: ARKANSAS SENATE COMPOSTION BY RACE, GENDER, AND PARTY**

| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
|---|---|---|---|---|---|
| 1 | HESTER | SENATE | W | M | R |
| 2 | HENDREN | SENATE | W | M | I |
| 3 | BLEDSOE | SENATE | W | F | R |
| 4 | LEDING | SENATE | W | M | D |
| 5 | BALLINGER | SENATE | W | M | R |
| 6 | STUBBLEFIELD | SENATE | W | M | R |
| 7 | FULFER | SENATE | W | M | R |
| 8 | PITSCH | SENATE | W | M | R |
| 9 | RICE | SENATE | W | M | R |
| 10 | TEAGUE | SENATE | W | M | D |
| 11 | HICKEY, JR. | SENATE | W | M | R |
| 12 | BECKHAM | SENATE | W | M | R |
| 13 | *VACANT | SENATE | | | |
| 14 | SAMPLE | SENATE | W | M | R |
| 15 | JOHNSON | SENATE | W | M | R |
| 16 | DAVIS | SENATE | W | F | R |
| 17 | FLIPPO | SENATE | W | M | R |
| 18 | IRVIN | SENATE | W | F | R |
| 19 | STURCH | SENATE | W | M | R |
| 20 | JOHNSON | SENATE | W | M | R |
| 21 | SUULIVAN | SENATE | W | M | R |
| 22 | WALLACE | SENATE | W | M | R |
| 23 | CALDWELL | SENATE | W | M | R |
| 24 | INGRAM | SENATE | W | M | D |
| 25 | FLOWERS | SENATE | B | F | D |
| 26 | GILMORE | SENATE | W | M | R |
| 27 | GARNER | SENATE | W | M | R |
| 28 | DISMANG | SENATE | W | M | R |
| 29 | HILL | SENATE | W | M | R |
| 30 | CHESTERFIELD | SENATE | B | F | D |
| 31 | ELLIOTT | SENATE | B | F | D |
| 32 | TUCKER | SENATE | W | M | D |
| 33 | HAMMER | SENATE | W | M | R |
| 34 | ENGLISH | SENATE | W | F | R |
| 35 | RAPERT | SENATE | W | M | R |
| **TOTALS** | | | 31/34 (91.18%) W 3/34 (8.82%) B | 27/34 (79.41%) M 7/34 (20.59%) F | 1/34 (2.94%) I 7/34 (20.58%) D 26/34 (76.47%) R |

CONCLUSIONS:
  A. THERE ARE NO WHITE FEMALE SENATORS WHO ARE AFFILIATED AS DEMOCRAT
  B. THERE ARE NO AFRICAN AMERICAN MALES IN THE SENATE, IRRESPECTIVE OF PARTY

**TABLE 2: ARKANSAS HOUSE COMPOSTION BY RACE, GENDER, AND PARTY**

| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
|---|---|---|---|---|---|
| 1 | DALBY | HOUSE | W | F | R |
| 2 | JEAN | HOUSE | W | M | R |
| 3 | WATSON | HOUSE | W | M | R |
| 4 | VAUGHT | HOUSE | W | F | R |
| 5 | FIELDING | HOUSE | B | M | D |
| 6 | SHEPERD | HOUSE | W | M | R |
| 7 | BARKER | HOUSE | W | F | R |
| 8 | WARDLAW | HOUSE | W | M | R |
| 9 | BEATY, JR. | HOUSE | W | M | R |
| 10 | HOLCOMB | HOUSE | W | M | R |
| 11 | MCELROY | HOUSE | W | M | R |
| 12 | TOLLETT | HOUSE | W | M | R |
| 13 | HILLMAN | HOUSE | W | M | R |
| 14 | LYNCH | HOUSE | W | M | R |
| 15 | BRAGG | HOUSE | W | M | R |
| 16 | FERGUSON | HOUSE | B | M | D |
| 17 | FLOWERS | HOUSE | B | F | D |
| 18 | WOMACK | HOUSE | W | M | R |
| 19 | GONZALES | HOUSE | W | M | R |
| 20 | MADDOX | HOUSE | W | M | R |
| 21 | RICHMOND | HOUSE | W | M | R |
| 22 | MCGREW | HOUSE | W | M | R |
| 23 | FITE | HOUSE | W | M | R |
| 24 | COZART | HOUSE | W | M | R |
| 25 | WARREN | HOUSE | W | M | R |
| 26 | MCCLURE | HOUSE | W | M | R |
| 27 | MAYBERRY | HOUSE | W | F | R |
| 28 | FURMAN | HOUSE | W | M | R |
| 29 | LOVE | HOUSE | B | M | D |
| 30 | ALLEN | HOUSE | B | M | D |
| 31 | BROOKS | HOUSE | W | M | R |
| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
| 32 | HUDSON | HOUSE | W | F | D |
| 33 | MCCULLOUGH | HOUSE | W | F | D |
| 34 | SPRINGER | HOUSE | B | F | D |
| 35 | COLLINS | HOUSE | W | M | D |
| 36 | ENNETT | HOUSE | B | F | D |
| 37 | SCOTT | HOUSE | B | F | D |
| 38 | WING | HOUSE | W | M | R |
| 39 | LOWERY | HOUSE | W | M | R |
| 40 | RAY | HOUSE | W | M | R |
| 41 | BROWN | HOUSE | W | F | R |
| 42 | PERRY | HOUSE | W | M | D |
| 43 | EVANS | HOUSE | W | M | R |
| 44 | COOPER | HOUSE | W | M | R |

| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
|---|---|---|---|---|---|
| 45 | WOOTEN | HOUSE | W | M | R |
| 46 | EAVES | HOUSE | W | M | R |
| 47 | CHRISTIANSEN | HOUSE | W | M | R |
| 48 | MURDOCK | HOUSE | B | M | D |
| 49 | HOLLOWELL | HOUSE | W | M | R |
| 50 | NICKS, JR. | HOUSE | B | M | D |
| 51 | FERGUSON | HOUSE | W | F | D |
| 52 | TOSH | HOUSE | W | M | R |
| 53 | MILLIGAN | HOUSE | W | M | R |
| 54 | RYE | HOUSE | W | M | R |
| 55 | HODGES | HOUSE | B | M | D |
| 56 | JETT | HOUSE | W | M | R |
| 57 | GAZAWAY | HOUSE | W | M | R |
| 58 | SMITH | HOUSE | W | M | R |
| 59 | LADYMAN | HOUSE | W | M | R |
| 60 | CAVENAUGH | HOUSE | W | F | R |
| 61 | MARSH | HOUSE | W | M | R |
| 62 | GRAY | HOUSE | W | F | R |
| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
| 63 | SMITH | HOUSE | W | M | R |
| 64 | PAYTON | HOUSE | W | M | R |
| 65 | BECK | HOUSE | W | M | R |
| 66 | MILLER | HOUSE | W | M | R |
| 67 | MEEKS | HOUSE | W | M | R |
| 68 | BERRY | HOUSE | W | M | R |
| 69 | PILKINGTON | HOUSE | W | M | R |
| 70 | HAWKS | HOUSE | W | M | R |
| 71 | CLOUD | HOUSE | W | M | R |
| 72 | MAGIE | HOUSE | W | M | R |
| 73 | BENTLEY | HOUSE | W | F | R |
| 74 | EUBANKS | HOUSE | W | M | R |
| 75 | JOHNSON | HOUSE | W | M | R |
| 76 | CRAWFORD | HOUSE | W | F | R |
| 77 | BOYD | HOUSE | W | M | R |
| 78 | RICHARDSON | HOUSE | B | M | D |
| 79 | DEFFENBAUGH | HOUSE | W | M | R |
| 80 | FITE | HOUSE | W | F | R |
| 81 | COLEMAN | HOUSE | W | M | R |
| 82 | BERRY | HOUSE | W | M | R |
| 83 | SLAPE | HOUSE | W | M | R |
| 84 | GARNER | HOUSE | W | F | D |
| 85 | WHITAKER | HOUSE | W | M | D |
| 86 | CLOWNEY | HOUSE | W | F | D |
| 87 | LUNDSTRUM | HOUSE | W | F | R |
| 88 | PENZO | HOUSE | W | M | R |
| 89 | GODFREY | HOUSE | W | F | D |
| 90 | UNDERWOOD | HOUSE | W | M | R |

| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
|---|---|---|---|---|---|
| 91 | HAAK | HOUSE | W | F | R |
| 92 | MCKENZIE | HOUSE | W | F | R |
| 93 | DOTSON | HOUSE | W | M | R |
| DISTRICT # | NAME | CHAMBER | RACE | GENDER | PARTY |
| 94 | CARR | HOUSE | W | M | R |
| 95 | MCCOLLUM | HOUSE | W | M | R |
| 96 | BRYANT | HOUSE | W | M | R |
| 97 | BREAUX | HOUSE | W | M | R |
| 98 | MCNAIR | HOUSE | W | M | R |
| 99 | FORTNER | HOUSE | W | M | R |
| 100 | SPEAKS | HOUSE | W | F | R |
| TOTALS | | | 90/100 (90%) W  10/100 (10%) B | 24/100 (24%) F  76/100 (76%) M | 21/100 (21%) D  79/100 (79%) R |

CONCLUSIONS:

A. THERE ARE NO BLACK MALE REPRESENTATIVES WHO ARE AFFILIATED AS REPUBLICAN

B. EIGHT PERCENT (8%) OF HOUSE MEMBERS ARE BLACK MALES AND DEMOCRATS

C. FOUR PERCENT (4%) OF HOUSE MEMBERS ARE BLACK FEMALES AND DEMOCRATS

D. SIX PERCENT (6%) OF HOUSE MEMBERS ARE WHITE FEMALE AND DEMOCRATS

E. FOUR PERCENT (4%) OF HOUSE MEMBERS ARE WHITE MALE AND DEMOCRATS

F. SIXTY-THREE PERCENT (63%) OF HOUSE MEMBERS ARE WHITE MALE REPUBLICANS (A SUPERMAJORITY)

G. FOURTEEN PERCENT (14%) OF HOUSE MEMBERS ARE WHITE FEMALE REPUBLICANS

**TABLE 3: RACIAL DEMOGRAPHICS OF THE SECOND CONGRESSIONAL DISTRICT**
**NUMBER OF PEOPLE AND PERCENTAGE OF TOTAL POPULATION**

| COUNTY | TOTAL POPULATION 2020 | WHITE ONLY | BLACK OR AFRICAN AMERICAN | AMERICAN INDIAN AND ALASKA NATIVE ALONE | ASIAN ONLY | NATIVE HAWAIIAN AND OTHER PACIFIC ISLANDER ALONE | SOME OTHER RACE ALONE | TWO (2) OR MORE RACES |
|---|---|---|---|---|---|---|---|---|
| PULASKI | 399.128 | 199.197 (49.9%) | 143.548 (36.0%) | 2.226 (0.6%) | 10.035 (2.5%) | 225 (0.1%) | 18.600 (4.7%) | 25.294 (6.3%) |
| FAULKNER | 123.498 | 94.088 (76.2%) | 14.384 (11.6%) | 719 (0.6%) | 1.475 (1.2%) | 73 (0.1%) | 3.337 (2.7%) | 9.422 (7.6%) |
| SALINE | 123.416 | 98.388 (79.7%) | 10.414 (8.4%) | 833 (0.7%) | 1.467 (1.2%) | 71 (0.1%) | 4.268 (3.5%) | 7.975 (6.5%) |
| WHITE | 76.822 | 65.237 (84.9%) | 3.728 (4.9%) | 368 (0.5%) | 623 (0.8%) | 31 (0.0%) | 1.737 (2.3%) | 5.098 (6.6%) |
| CLEBURNE | 24.711 | 22.953 (92.9%) | 69 (0.3%) | 133 (0.5%) | 102 (0.4%) | 11 (0.0%) | 232 (0.9%) | 1.211 (4.9%) |
| CONWAY | 20.715 | 16.367 (79.0%) | 2.209 (10.7%) | 167 (0.8%) | 90 (0.4%) | 8 (0.0%) | 433 (2.1%) | 1.441 (7.0%) |
| VAN BUREN | 15.796 | 14.485 (91.7%) | 77 (0.5%) | 133 (0.8%) | 56 (0.4%) | 0 (0.0%) | 200 (1.3%) | 845 (5.3%) |
| PERRY | 10.019 | 9.165 (91.5%) | 107 (1.1%) | 54 (0.5%) | 12 (0.1%) | 1 (0.1%) | 113 (1.1%) | 567 (5.7%) |
| TOTAL | 794.105 | 519.880 (66.3%) | 174.536 (22.0%) | 4.500 (0.6%) | 13.860 (1.8%) | 420 (0.0%) | 28.920 (3.6%) | 51.853 (6.5%) |

**TABLE 4: RACIAL DEMOGRAPHICS OF THE SECOND CONGRESSIONAL DISTRICT**
**PERCENTAGE OF TOTAL POPULATION**
**INCREASE AND DECREASE IN NUMBER OF PEOPLE AND PERCENTAGE OF CHANGE FROM 2010 TO 2020**

| COUNTY | TOTAL POPULATION 2010 | WHITE ONLY | BLACK OR AFRICAN AMERICAN | AMERICAN INDIAN AND ALASKA NATIVE ALONE | ASIAN ONLY | NATIVE HAWAIIAN AND OTHER PACIFIC ISLANDER ALONE | SOME OTHER RACE ALONE | TWO (2) OR MORE RACES |
|---|---|---|---|---|---|---|---|---|
| PULASKI | 382.748 | 57.5% -20.854 (-9.5%) | 35.0% +9.690 (-7.2%) | 0.4% -671 (-43.2%) | 2.0% -2.530 (+33.7%) | 0.1% -47 (-17.3%) | 3.0% -6.954 (-59.7%) | 2.1% +17.433 (-221.8%) |
| FAULKNER | 123.237 | 84.3% -1.332 (-1.4%) | 10.2% +2.816 (+24.3%) | 0.6% -61 (-9.3%) | 1.2% -198 (+15.5%) | 0.0% +25 (+52.1%) | 1.8% -1.340 (-67.1%) | 2.0% -7.153 (+315.2%) |
| SALINE | 107.118 | 90.5% -1.410 (+1.5%) | 4.7% +5.420 (-108.5%) | 0.5% -291 (-53.7%) | 0.9% -536 (+57.6%) | 0.0% +54 (-317.6%) | 2.0% 2.143 (+100.8%) | 1.4% -6.444 (+420.9%) |
| WHITE | 77.067 | 91.4% -5.188 (-7.4%) | 4.0% -654 (+21.3%) | 0.6% -81 (-18.0%) | 0.5% -204 (+48.7%) | 0.0% -5 (-13.9%) | 1.6% +478 (-38.0%) | 1.8% -3.684 (+260.5%) |
| CLEBURNE | 25.970 | 96.8% -2.177 (-8.7%) | 0.3% -3 (-4.2%) | 0.5% -8 (-5.7%) | 0.4% +50 (+96.2%) | 0.0% -4 (+57.1%) | 0.8% +29 (-14.3%) | 4.4% +846 (+231.8%) |
| CONWAY | 21.273 | 84.2% -1.550 (-8.7%) | 11.2% -176 (-7.4%) | 0.7% -15 (+9.9%) | 0.4% +7 (+8.4%) | 0.0% -4 (-100) | 1.5% 122 (-39.2%) | 2.0% -1.020 (+242.3%) |
| VAN BUREN | 17.295 | 96.0% -2.113 (-12.7%) | 0.4% -9 (+13.2%) | 0.7% -14 (-11.8%) | 0 0 (0.0%) | 0.0% -2 (-100%) | 0.7% -87 (-77.0%) | 2.0% +506 (+149.3%) |
| PERRY | 10.445 | 95.2% -774 (-7.8%) | 1.9% -89 (-45.4%) | 0.7% -16 (-22.9%) | 0.2% -5 (-29.4%) | 0.0% -1 (-50%) | 0.5% +62 (+121.6%) | 1.6% +397 (+233.5%) |
| TOTAL | 765.153 | -32.578 (-61.5%) | -18.321 (-132.2%) | -947 (-91.5%) | -3.520 (-259.5%) | +22 (-388.8%) | -1.215 (+582.4%) | +37.483 (-2.185.5%) |

## TABLE 5: DISTANCE DATA
## (STATE CENTER, CENTER OF PULASKI COUNTY SEAT, AND AFFECTED AREAS)

| City | City And County | Shortest Distance |
|---|---|---|
| 35°11'57.0"N 92°42'48.0"W Welborn Township Morrilton Conway County | Morrilton, Conway* | 4.8 Miles |
| | Perryville, Perry County* | 17.0 Miles |
| | Conway, Faulkner County* | 21.9 Miles |
| | Clinton, Van Buren County* | 37.6 Miles |
| | Heber Springs, Cleburne County* | 53.6 Miles |
| | College Station, Pulaski County | 53.5 Miles |
| | Little Rock, Pulaski County* | 54.1 Miles |
| | Sweet Home, Pulaski County | 54.6 Miles |
| | Wrightsville, Pulaski County | 61.5 Miles |
| | Woodson, Pulaski County | 67.3 Miles |
| | Benton, Saline County* | 67.7 Miles |
| | Searcy, White County* | 69.0 Miles |
| | | |
| Little Rock* Pulaski County | College Station, Pulaski County | 5.2 Miles |
| | Sweet Home, Pulaski County | 6.2 Miles |
| | Wrightsville, Pulaski County | 13.0 Miles |
| | Woodson, Pulaski County | 18.8 Miles |
| | Benton, Saline County* | 25.4 Miles |
| | Conway, Faulkner County* | 34.0 Miles |
| | Perryville, Perry County* | 44.2 Miles |
| | Searcy, White County* | 51.2 Miles |
| | Morrilton, Conway* | 53.5 Miles |
| | Heber Springs, Cleburne County* | 65.0 Miles |
| | Clinton, Van Buren County* | 72.1 Miles |
| | | |
| Heber Springs* Cleburne County | College Station, Pulaski County | 64.2 Miles |
| | Sweet Home, Pulaski County | 67.9 Miles |
| | Wrightsville, Pulaski County | 75.8 Miles |
| | Woodson, Pulaski County | 81.5 Miles |

*COUNTY SEAT
CONCLUSIONS:
1. THE AVERAGE DISTANCE FROM THE CENTER OF THE STATE TO THE COUNTY SEATS IS 29.0 MILES (EXCLUDING HEBER SPRINGS, CLEBURNE COUNTY).
2. THE AVERAGE DISTANCE FROM THE CENTER OF THE STATE TO THE COUNTY SEATS IS 32.1 MILES (INCLUDING HEBER SPRINGS, CLEBURNE COUNTY).
3. THE AVERAGE DISTANCE FROM LITTLE ROCK (THE COUNTY SEAT OF PULASKI COUNTY AND THE STATE CAPITOL) TO THE COUNTY SEATS ARE 46.7 MILES (EXCLUDING HEBER SPRINGS, CLEBURNE COUNTY).

4. THE AVERAGE DISTANCE FROM LITTLE ROCK TO THE REDISTRICTING AFFECTED AREAS (COLLEGE STATION, SWEET HOME, WRIGHTSVILLE, AND WOODSON) IS 10.8 MILES

5. THE AVERAGE DISTANCE FROM LITTLE ROCK (THE COUNTY SEAT OF PULASKI COUNTY AND THE STATE CAPITOL) TO THE COUNTY SEATS ARE 49.3 MILES (INCLUDING HEBER SPRINGS, CLEBURNE COUNTY).

6. THE AVERAGE DISTANCE FROM CENTER OF THE STATE TO THE REDISTRICTING AFFECTED AREAS (COLLEGE STATION, SWEET HOME, WRIGHTSVILLE, AND WOODSON) IS 59.2 MILES

7. THE AVERAGE DISTANCE FROM HEBER SPRINGS (CLEBURN COUNTY), AND AFFECTED AREA AND OTHER AFFECTS AREAS OF PULASKI COUNTY (COLLEGE STATION, SWEET HOME, WRIGHTSVILLE, AND WOODSON) IS 72.4 MILES



**DR. QUINTESSA HATHAWAY**
**FORMER DEMOCRATIC NOMINEE**
**118TH CONGRESS (2023-2025)**
**U.S. HOUSE OF REPRESENTATIVES**
**ARKANSAS' SECOND DISTRICT (AR-02)**
**P.O. OX 6121**
**SHERWOOD, ARKANSAS 72124**

QuintessaHathaway.com                               Direct/Cellular (615) 473-3213
Quintessa_Hathaway@hotmail.com                     Facsimile (615) 468-0853

Tuesday, January 31, 2023

The Honorable Merrick Garland
86th United States Attorney General
Department of Justice
950 Pennsylvania Avenue Northwest
Washington, District of Columbia 20530

Dear Attorney General Merrick Garland:

It is with honor I record this letter to the highest law enforcement agency in the United States of America. It is a demonstration that our country is on a pathway to a more perfect union.

My name is Dr. Quintessa Hathaway, former Democratic Nominee for the 118th Congress (2023-2025), United States House of Representatives in Arkansas' Second District (AR-02) and an advocate for the citizenry. I am writing requesting your scrutiny and investigation regarding the racial gerrymandering of the Arkansas' Second Congressional District (AR-02). The support of the Department of Justice will challenge laws, practices, and policies that discriminate against African Americans and voter suppression which divided Pulaski County, Arkansas into three (3) congressional districts.

The decennial reapportionment process and outcome were grossly out-of-step with the diversity and pluralist direction of the state and their map manipulation affirms the previous statements. The intent was to achieve incumbency protection, create and enhance a white voting bloc under the guise of a partisan advantage. All entities and parties associated, diluted the African American vote and created liability and conflictuality with the Voting Rights Act of 1965, Fourteenth (14th) Amendment, and Fifteenth (15th) Amendment.

The racial gerrymandering of Arkansas' Second Congressional District is a reminder that Republicans of the 93rd State Legislature, who are one hundred twenty-one (121) whites of one hundred thirty-five (135) combining both chambers were desperate to hold on to or amplify power. They sought to thwart the efforts of African Americans having equitable federal representation.

It is time for the goalpost to stop being moved or get taller every time there is Washingtonian progress, but little in our federal representation. Arkansas is the only state which has never elected an African American to federal office, as well as has a population with over ten (10) percent *which does not* have such a representative.

This is a moment to establish a new order and believe in the power of possibilities. The Second District is ready to demonstrate how a coalition of socially stratified citizens can shape federal politics at an opportune time. There is no racial birthright or property right to the ballot box. We are a people who love liberation, who stand on truth, who respect and recollect history, and who lean on the United States Constitution as a foundational and revolutionary document. We can break the seal of silence and restore sanity and humanity to Arkansas' political processes.

Your legal assistance and oversight will determine the value of our democracy, and promote the progression of all races, ethnicities, colors, creeds, and national origins in the Second Congressional District. Federal intervention will grant political legitimacy and allow it to rule and abide in Arkansas. I ask for the Department of Justice to immediately investigate the map manipulation, racial discrimination, and voter suppression of Arkansas' Second Congressional District (AR-02).

Sincerely,

Dr. Quintessa Hathaway

Cc: Civil Rights Division

*minor modification from original*

## CERTIFICATE OF SERVICE

I, Dr. Quintessa Hathaway, the former Democratic Nominee for the 118th United States Congress (2023-2025), House of Representatives in Arkansas' Second District (AR-02); hereby certify that I served one (1) copy of the foregoing amicus curiae supporting the Plaintiffs to parties and Defendants separately and will be delivered via first class mail to the counsel of record:

Attorney Richard H. Mays
Richard Mays Law Firm, PLLC
2226 Cottondale Lane
Suite #210
Little Rock, Arkansas 72202
(501) 891-6116
mays@richmayslaw.com

Arkansas Secretary Of State John Thurston
500 Woodlane Avenue
Suite #256
Little Rock, Arkansas 72201

Office Of Arkansas Attorney General
Catlett-Prien Tower Building
323 Center Street
Suite #200
Little Rock, Arkansas 72201

_____
Dr. Quintessa Hathaway

_____
Date



## DR. QUINTESSA HATHAWAY
### FORMER DEMOCRATIC (D) NOMINEE
### 118TH UNITED STATES CONGRESS (2023-2025)
### HOUSE OF REPRESENTATIVES
### ARKANSAS' SECOND DISTRICT (AR-02)
### P.O. BOX 6121
### SHERWOOD, ARKANSAS 72124

QUINTESSAHATHAWAY.COM           DIRECT/CELLULAR (615) 473-3213
QUINTESSA_HATHAWAY@HOTMAIL.COM      FACSIMILE (615) 468-0853

### TUESDAY, FEBRUARY 14, 2023

### MOTION FOR PERMISSION TO ENTER CASE

### CASE NUMBER: 4:2022CV00213-JM-DRS-DPM

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

### JACKIE WILLIAMS SIMPSON, REPRESENTATIVE DENISE ENNETT, WANDA KING, CHARLES E. BOLDEN, SENATOR LINDA CHESTERFIELD, AND DR. ANIKA WHITFIELD
### Plaintiffs,

### v.

### ASA HUTCHINSON, IN HIS FORMER OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF ARKANSAS; AND JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS THE ARKANSAS SECRETARY OF STATE, AND THE STATE OF ARKANSAS
### Defendants.

I, Dr. Quintessa Hathaway, Amicus Curiae; respectfully ask this Court to allow me to file my paper amicus brief supporting the Plaintiffs. I certify that an original and two (2) copies were given to the Courts upon date filed and forthcoming mail service and email will be sent to Plaintiffs' attorney and Defendants.

_____
Dr. Quintessa Hathaway

_____
Date

**32 |** P a g e